*Prods., Inc. v. Albright* further explained that a "Defendant's conduct is culpable if he has received *actual or constructive notice* of the filing of the action and intentionally failed to answer." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d. at 1392 (emphasis added). At this stage of the proceedings, it is impossible to know with certainty whether Defendants' failure to answer is intentional. However, because Defendants were each properly served with the Summons and Complaint and received actual or constructive notice of the filing of the present action, PharmaStem is entitled to a presumption that Defendants' totally unresponsive conduct is culpable and not excusable. On this basis, PharmaStem is entitled to an entry of default judgment of liability in its favor.

    D.    **An entry of default judgment of liability against Defendants is the only effective sanction at this stage in the proceedings.**

Default judgments are proper where the defendant has never appeared in the action, its failure to defend is unexplained, and plaintiff would suffer prejudice if the default were not entered. *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983). "Furthermore, the possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy." *H. F. Livermore Corp.*, 432 F.2d at 691. Compare *Advanced Communication Design, Inc. v. Premier Retail Networks, Inc.*, 186 F. Supp. 2d 1009, 1015 (D. Minn. 2002)("Both the default entry and judgment play an important role in the maintenance of an orderly, efficient judicial system. They are significant weapons for enforcing compliance with the rules of procedure and therefore facilitate the speedy determination of litigation. The default procedure offers a useful remedy to a good faith litigant who is confronted by an obstructionist adversary.... [I]f default is to be an effective sanction, relief under Rule 55(c) [the procedure to set aside default] cannot be granted too readily" (internal cites omitted), *aff'd in part rev'd in part on other grounds*, 46 Fed. Appx. 964 (Fed. Cir. 2002)(unpublished)). At this stage in the proceedings, anything less than default judgment would only serve to condone, if not reward,

Defendants' playing possum. On this basis, an entry of default judgment of liability against Defendants would be the only effective sanction. Thus for these and all of the foregoing reasons, PharmaStem is entitled to an entry of default judgment of liability in its favor.

V.    **PharmaStem Is Entitled To Injunctive Relief.**

Every patent grants to the patentee "the right to exclude others from making, using, selling or offering for sale" the invention of the patent. 35 U.S.C. § 154; *see also Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577 (Fed. Cir. 1983). "[A] patent is, at its heart, the right to exclude another" from practicing the patented invention. *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F.Supp.2d 348, 402 (D. Del. 2002). Notice to Defendants and this lawsuit notwithstanding, Defendants continue to infringe PharmaStem '427 Patent in violation of 35 U.S.C. §271 through their collection of Cord Blood for storage and processing at Unlicensed Cord Blood Banks and their promotion the Cord Blood services offered by the Unlicensed Cord Blood Banks. Accordingly, the Court has the authority to halt infringement of patents through injunctive relief. 35 U.S.C. §283 (Courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by a patent, on such terms as the court deems reasonable.")

In patent cases, "[i]t is the general rule that an injunction will issue when infringement has been adjudged, absent a sound reason for denying it." *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989); *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir. 1988) (reversing lower court's decision to refuse injunction, stating that "injunctive relief against an adjudged infringer is usually granted.") Furthermore, where there has been a determination that the claims of a patent are infringed, "the decision to grant an injunction ... is ordinarily quite straightforward." *Wesley Jessen*, 209 F.Supp.2d at 403 (permanent injunction granted).

Here PharmaStem is seeking to exercise its statutory right to exclude following the entry of default judgment by the clerk of this Court in favor of PharmaStem on its claims of willful infringement. No sound reason exists in the present case to deny a permanent injunction against the Defendants from continuing their unauthorized infringement of the '427 Patent.

A. The Principles of Equity Support An Injunction.

1. Grant Of Injunctive Relief Is In The Public Interest.

There is a strong public interest in protecting a patentee's right to exclude others under the patent laws. See *E.I. du Pont de Nemours v. Polaroid Graphics Imaging, Inc.*, 706 F.Supp. 1135, 1146 (D.Del.)("[i]f inventors cannot depend on their patents to exclude others, we fear that research and development budgets in the science and technology based industries would shrink, resulting in the public no longer benefiting from the labors of these talented people."), *aff'd* 887 F.2d 1095 (Fed. Cir. 1989); *Smith*, 718 F.2d at 1581 ("public policy favors protection of the rights secured by valid patents"). The Federal Circuit has explained that, once "[i]nfringement ha[s] been established, it is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from use of his property." *Richardson*, 868 F.2d at 1247.

Furthermore, it is also in the public interest to issue an injunction against Defendants because there are currently sixteen licensees of the '427 Patent (the "Licensed Cord Blood Banks")[1] whose interests, as well as that of the public, will be best served if the Court supports the rights of the patentee

---

[1] The sixteen Licensed Cord Blood Banks include: Alpha Cord, California Cryobank, CureSource, Inc. Cryobank for Oncologic and Reproductive Donors, Cord Partners, Cryobanks International, GeneAngel, HemaStem Therapeutics, LifeBank USA, Lifestor, New England Cord Blood Bank, Newborn Blood Banking, Norton Hospitals/Family Link, Securacell, StemBanc and StemCyte (Cord Blood Family Trust). Exhibit F to LiPuma Decl.

091604/0013318[brf re default]

10

in this case to prevent the unlicensed practice of the invention. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F.Supp. 1205, 1228 (D.Del. 1989)(permanent injunction granted).

In addition, because PharmaStem's sixteen licensees practice the inventions claimed in the '427 Patent, this case is not one of the "rare instances" in which a permanent injunction would "frustrate an important public need for the invention." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995)(en banc)(stating that a permanent injunction may be denied in rare instances when the patentee did not practice the claimed invention or the accused product served an important public need). The Licensed Cord Blood Banks offer to collect, cryopreserve, and store umbilical cord blood stem cells for future therapeutic use. To the extent there is any public need for the invention, Defendants may collect Cord Blood in connection with any of the Licensed Cord Blood Banks, and promote the Cord Blood services of any of the Licensed Cord Blood Banks (as well as any future licensees), in order to provide the patented technology to the public.

    2. **PharmaStem Is Suffering Irreparable Harm And Has No Adequate Legal Remedy.**

The principles of equity support protecting PharmaStem's patents, including the '427 Patent, from continued infringement because PharmaStem is suffering irreparable harm and has no adequate legal remedy. *See Boehringer*, 106 F.Supp. 2d at 700; *E.I. du Pont*, 711 F.Supp. at 1227-28. As a matter of law, PharmaStem is entitled to a presumption of irreparable harm because the default judgment when entered establishes that Defendants are willfully infringing valid and enforceable claims of the '427 Patent. *See Richardson*, 868 F.2d at 1247 (once a party establishes that a patent is infringed and not invalid, irreparable harm is presumed); *Polymer Techs. v. Bridwell*, 103 F.3d 970, 975 (Fed. Cir. 1996)("[b]ecause of the very nature of a patent, which provides the right to exclude, infringement of a valid patent inherently causes irreparable harm"). "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the

passage of time can work irremediable harm." *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987)(affirmed grant of injunctive relief).

### a. PharmaStem Is Being Irreparably Harmed In The Marketplace.

Another critical fact in establishing irreparable harm is that Defendants' continued infringement will have "market effects never fully compensable in money." *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed. Cir. 1985)("The patent statute further provides injunctive relief to preserve the legal interests of the parties *against future infringement* which may have market effects never fully compensable in money."); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F.Supp.2d 526 (D.Del. 2003)(permanent injunction granted). Since PharmaStem's business relies upon its ability to enforce and license its patents, including the '427 Patent, Defendants' continued infringement will have immeasurable effects on its ability to continue its business, including undermining PharmaStem's ability to obtain additional licenses to its patents. PharmaStem's existing licensees currently face the difficulty of directly competing with the Unlicensed Cord Blood Banks that are not burdened with the licensing fees required of the Licensed Cord Blood Banks. Defendants should therefore be enjoined from collecting Cord Blood and promoting the Cord Blood services of such Unlicensed Cord Blood Banks.

### b. Money Cannot Compensate PharmaStem.

PharmaStem also seeks an injunction against Defendants because money damages cannot make PharmaStem whole for the same reasons discussed above. Because the primary right afforded by a patent is the right to exclude others from practicing the claimed invention, and because that right is only of a limited duration, *see* 35 U.S.C. § 154, "the nature of the patent grant ... weighs against holding that monetary damages will always suffice to make the patentee whole." *H.H. Robertson*, 820 F.2d at 387-88. Thus, "[w]hile monetary relief is often the sole remedy for past infringement, it does

not follow that a money award is also the sole remedy against future infringement." *Atlas Powder*, 773 F.2d at 1233 (affirming injunctive relief). In fact, an injunction is the appropriate remedy for preventing *future* infringement. *See H.H. Robertson*, 820 F.2d at 387-88; *DuPont*, 711 F.Supp. at 1227.

Faced with such circumstances, courts have recognized that, absent the ability to obtain injunctive relief, "the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution, to promote the progress of the useful arts, would be seriously undermined. The patent owner would lack much of the leverage, afforded by the right to exclude, to enjoy the full value of his invention in the market place." *Smith*, 718 F.2d 1573, 1578 (Fed. Cir. 1983). Accordingly, "[w]ithout the right to obtain an injunction, the patentee's right to exclude would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research." *Id.* No sound reasons exist for denying PharmaStem's right to exclude Defendants from infringing its property in light of the irreparable harm that PharmaStem is suffering and the lack of an adequate legal remedy available to it.

B. **The Balance of Hardships Tip in PharmaStem's Favor.**

PharmaStem has a strong interest in protecting its right to exclude Defendants from the continued unauthorized infringement of its '427 Patent. PharmaStem's primary source of income presently is the licensing revenues from its patents, including the '427 Patent. As described above, the health of its business is largely based on its ability to enjoy all the rights it is entitled to by virtue of its Patents, including its statutory right to exclude Defendants from infringement. *See Atlas Powder*, 773 F.2d at 1233 ("statutory right to exclude others from making, using or selling the patented invention")

In contrast, if enjoined, Defendants will simply be required to cease collection of Cord Blood for, and the promotion of, the four Unlicensed Cord Blood Banks, but will be able to collect Cord Blood for storage and processing with any of the sixteen Licensed Cord Blood Banks, as well as promote the Cord Blood services of the Licensed Cord Blood Banks. Moreover, PharmaStem is narrowly tailoring the scope of injunctive relief to reflect this. The injunction merely prevents Defendants from (1) collecting umbilical cord blood stem cells for processing and storage with the Unlicensed Cord Blood Banks and (2) promoting the Cord Blood services of the Unlicensed Cord Blood Banks. PharmaStem is limiting the scope of the injunction because it wants families to have access to a potentially life saving service offered by Defendants when offered in connection with one of the sixteen Licensed Cord Blood Banks.

Furthermore, the principles of equity favor a grant of injunctive relief because, as noted earlier, the '427 Patent does not have many more years to run. *See H.H. Robertson*, 802 F.2d at 391 (noting the lower court's observation that since the patent did not have many more years to run, the "equities weigh heavily against the wrongdoer")(internal citations omitted); *Richardson*, 868 F.2d at 1247 (noting that the patent will expire in less than four years). Here, the majority of the term for the '427 Patent has passed as the remaining life of the '427 Patent is about six years. Accordingly, the principles of equities weigh in favor of granting PharmaStem injunctive relief for the remainder of the life of the '427 Patent. For these reasons, the principles of equity favor permitting PharmaStem to exercise its statutory right to exclude.

C.  The Proposed Injunction Is Appropriate.

A permanent injunction must be of sufficient scope to prevent further infringement of the asserted claims of the '427 Patent. PharmaStem respectfully submits that the attached injunction will be adequate to prevent further infringement and, at the same time, provide clear notice to the defendants of the type of conduct that is prohibited.

The injunction language is in accordance with Rule 65(d) of the Federal Rules of Civil Procedure because it states with particularity the proscribed conduct. The language also comports with 35 U.S.C. § 283 because it prohibits the defendants' conduct only to the extent necessary to "prevent the violation" of the '427 Patent.

Based on the foregoing, PharmaStem requests an order from the Court that Defendants are enjoined from collecting Cord Blood in connection with any Unlicensed Cord Blood Banks and from promoting the service offered by the Unlicensed Cord Blood Banks.

VI.  PharmaStem Is Entitled To Its Attorney's Fees and Costs.

The Clerk of the Court entered default against Defendants on September 8, 2004. Given the entry of default, the facts alleged in the Complaint by Plaintiff are to be accepted by this Court as true. *See Geddes, supra,* 559 F.2d at 560. Because Defendants' liability and the factual allegations in the Complaint are accepted as true and PharmaStem seeks as damages only its attorney's fees and costs incurred in filing this action, serving Defendants and bringing this application for default judgment. An award of attorney's fees is warranted in this case based on Defendants' willful infringement of PharmaStem's '427 Patent. 35 U.S.C. §285. Upon entry of judgment, Plaintiff will submit a cost bill and application to the Clerk to tax costs in accordance with Fed.R.Civ.P. 54

## CONCLUSION

A permanent injunction is appropriate because Defendants have infringed, and continue to intentionally infringe the '427 Patent, causing irreparable injury to PharmaStem. Attorneys' fees are also appropriate in this case of willful infringement. PharmaStem respectfully requests that this Court grant its Application for Default Judgment against Defendants, award PharmaStem the requested attorneys' fees and enter an order of permanent injunction enjoining Defendants from infringing on PharmaStem's '427 Patent.

DATED: September 16, 2004

By: _____
Michael D. LiPuma, Atty. I.D. #74790
Law Office of Michael LiPuma
Two Penn Center, Suite 200
Philadelphia, PA 19102
Attorneys for Plaintiff
PharmaStem Therapeutics, Inc.

OF COUNSEL:
PAUL J. ANDRE, Bar No. 196585
LISA KOBIALKA, Bar No. 191404
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

16

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC., a
Delaware corporation,

        Plaintiff,

v.

CORCELL, INC., a Delaware corporation,
MOLLY MCBRIDE, MD, an individual, and
CARLO M. CROCE, MD, an individual,

        Defendants.

Civil Action No.:04-CV-03651-RK

## DECLARATION OF MICHAEL LIPUMA IN SUPPORT OF PLAINTIFF PHARMASTEM THERAPEUTICS, INC.'S MOTION FOR DEFAULT JUDGMENT

I, Michael LiPuma, declare as follows:

1. I am an attorney licensed to practice in the State of Pennsylvania and before this Court. I am counsel for plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem" or "Plaintiff") in this action. I make this declaration in support of Plaintiff PharmaStem's Motion for Default Judgment. I have personal knowledge of the facts set forth herein except as otherwise stated, and if called upon I could and would testify to the following facts:

2. On July 28, 2004, I caused to be filed in this Court a complaint (the "Complaint") for damages and injunctive relief for patent infringement against defendants Molly McBride ("McBride") and Carlo M. Croce ("Croce") (collectively, "Defendants"), among others.

3. A true and complete copy of the Return of Service which indicates that the summons, complaint, and related papers were served on defendant Croce on August 12, 2004 is attached hereto as Exhibit A.

4. A true and complete copy of the Return of Service which indicates that the summons, complaint, and related papers were served on defendant McBride on August 13, 2004 is attached hereto as Exhibit B.

5. Pursuant to Federal Rule of Civil Procedure 4(e)(1) and 12(a)(1)(A), defendant Croce's response to the Complaint was due on September 1, 2004.

6. Pursuant to Federal Rule of Civil Procedure 4(e)(1) and 12(a)(1)(A), defendant McBride's response to the Complaint was due on September 2, 2004.

7. Defendants have not appeared in this action and have not responded to the Complaint.

8. On September 8, 2004, the clerk entered default against defendants Croce and McBride. A true and complete copy of such default orders are attached hereto as Exhibits C and D, respectively.

9. A true and complete copy of certain pages from CorCell, Inc.'s website are attached as Exhibit E.

10. A true and complete copy of certain pages from PharmaStem Therapeutics, Inc.'s website are attached as Exhibit F.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: September 10, 2004         By: _____
                                  Michael D. LiPuma, Atty. I.D. #74790
                                  Law Office of Michael LiPuma
                                  Two Penn Center, Suite 200
                                  Philadelphia, PA 19102
                                  Attorneys for Plaintiff
                                  PharmaStem Therapeutics, Inc.

2

DECLARATION OF MICHAEL LIPUMA IN SUPPORT OF PLAINTIFF PHARMASTEM THERAPEUTICS, INC.'S APPLICATION FOR DEFAULT JUDGMENT BY COURT