#9
9/20/04

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC.,        )
                                       )        0 5 -   1 5 6
            Plaintiff,                 )
                                       )
      v.                               )    Civil Action No. 2:04-CV-03561-RK
                                       )
CORCELL, INC., MOLLY McBRIDE, M.D.     )
and CARLO M. CROCE, M.D.               )
                                       )
            Defendants.                )
                                       )
CORCELL, INC.,                         )
                                       )
            Counterclaim-Plaintiff,    )
      v.                               )
                                       )
PHARMASTEM THERAPEUTICS, INC.,         )
NICHOLAS DIDIER, and STEMBANC, INC.    )
                                       )
            Counterclaim-Defendants.   )

### ANSWER OF DEFENDANTS CORCELL, INC. AND CARLO M. CROCE, M.D. TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM OF CORCELL, INC.

Defendants CorCell, Inc. ("CorCell") and Carlo M. Croce, M.D. ("Croce") (sometimes collectively referred to herein as "Answering Defendants") hereby answer the complaint of plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") as follows:

### Parties

1.      Answering Defendants admit that PharmaStem purports to be a Delaware corporation with a principal place of business in Larchmont, NY.

2.      Admitted.

3.      Denied.

556386_1

4.    Answering Defendants admit that defendant Croce is a doctor of medicine and that he is Director of the Kimmel Cancer Institute and Kimmel Cancer Center at the Thomas Jefferson University in Philadelphia, and that he is a member of the Scientific and Medical Advisory Board of CorCell. Defendants deny that Croce is a physician licensed to practice in Pennsylvania, or anywhere else in the United States.

## Jurisdiction and Venue

5.    Admitted.

6.    Answering Defendants admit that this Court has personal jurisdiction over them, and that venue is properly laid in this district as to them, but they deny that they have committed any acts of infringement in this district or otherwise.    Answering Defendants deny that this Court has personal jurisdiction over defendant Molly McBride, M.D. ("McBride") or that venue properly lies against her in this district.

## Plaintiff's Patents

7.    Answering Defendants admit that PharmaStem is the registered assignee of the '645 patent, and that the copy of the patent as appended to the Complaint sets forth the dates alleged in paragraph 7 of the Complaint.

8.    Answering Defendants admit that PharmaStem is the registered assignee of the '427 patent, and that the copy of the patent as appended to the Complaint sets forth the dates alleged in paragraph 8 of the Complaint.

9.    Answering Defendants state that the patents are official documents in writing which speak for themselves, and thus denies any characterizations thereof.

### Alleged Patent Infringement

10.    Answering Defendants admit that CorCell provides to customers collection kits to facilitate the collection of blood from the umbilical cord or placenta of a newborn child. Answering Defendants deny that CorCell processes, cryopreserves and/or stores cord blood, but admit that CorCell arranges for those activities to be performed by a fully accredited and state-licensed facility. Answering Defendants admit that CorCell collects fees from its customers for services relating to the processing and storage of cord blood.

11.    Answering Defendants admit that defendant McBride has collected cord blood which has been processed and cryopreserved through an agent or contractor for CorCell.

12.    Denied.

### First Cause of Action

13.    Answering defendants incorporate herein by reference the responses to paragraphs 1 through 12 set forth above.

14.    Denied.

15.    Denied.

16.    Denied.

### Second Cause of Action

17.    Answering defendants incorporate herein by reference the responses to paragraphs 1 through 16 set forth above.

18.    Denied.

19.    Denied.

20.    Denied.

## Additional Defenses

### First Additional Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Additional Defense

On information and belief, the '645 patent and the '427 patent are invalid for failure to comply with one or more of the following provisions: 35 U.S.C. §§ 101, 102, 103 and/or 112.

### Third Additional Defense

On information and belief, PharmaStem is barred from presenting or seeking an interpretation of the claims necessary to find infringement of either the '645 patent or the '427 patent by the manufacture, use, or sale of any CorCell product, process, or activity, either literally or under the Doctrine of Equivalents, by virtue of representations and concessions made to the U.S. PTO during the prosecution of the applications that matured into the '645 patent or the '427 patent, or related patent applications, and to the United States District Court for the District of Delaware.

### Fourth Additional Defense

PharmaStem is barred by 35 U.S.C. §287 from recovering damages for any alleged infringement of the '645 patent and the '427 patent that occurred before the filing of the Complaint and notification to the Answering Defendants alleging infringement of the patents.

### Fifth Additional Defense

PharmaStem's claims are barred under the doctrine of unclean hands.

556386_1                                    4

### Sixth Additional Defense

The '645 patent and the '427 patent are unenforceable because PharmaStem failed to name the correct inventor(s) of the '645 patent and '427 patent with intent to deceive the U.S. PTO to obtain issuance of those patents and patents issued on related applications.

### Seventh Additional Defense

The '645 and '427 patents are unenforceable for inequitable conduct because the named inventors and/or prosecuting attorney of the '645 and '427 patents withheld material information from the U.S. PTO with intent to deceive the U.S. PTO to obtain issuance of those patent and patents issued on related applications.

### Eighth Additional Defense

PharmaStem's claims are barred by the doctrines of issue preclusion and claim preclusion.

### Ninth Additional Defense

PharmaStem's claims are barred by the doctrine of patent misuse, by virtue of PharmaStem's efforts to enforce and threats to enforce its patents against persons and activities that are beyond the scope of its patents, and to require persons to refuse from engaging in conduct not covered by the patents as a condition of refraining from suit thereon, as well as by virtue of PharmaStem's efforts to enforce patents that it knows to be invalid and unenforceable.

Through further investigation and the discovery process CorCell may develop information and knowledge sufficient to raise additional defenses to the claims brought against it and will raise those additional defenses at that time.

## COUNTERCLAIM

Defendant and Counterclaim-plaintiff CorCell asserts the following Counterclaim against PharmaStem, Nicholas Didier ("Didier") and Stembanc, Inc.

1.    CorCell is a corporation with its principal place of business at 1411 Walnut Street, Suite 300, Philadelphia, Pennsylvania.

2.    PharmaStem purports to be a Delaware corporation with its principal place of business in Larchmont, New York.

3.    Counterclaim-defendant Nicholas Didier is an individual residing at 69 Prospect Avenue, Larchmont, New York 10538.  Didier is the Chief Executive Officer of PharmaStem.

4.    Counterclaim-defendant Stembanc, Inc. ("Stembanc") purports to be an Ohio corporation with its principal place of business at 100 Seventh Avenue, Chardon, Ohio 44024, and which purports to do business throughout the United States.  Stembanc is a licensee under PharmaStem's patents, including the '645 patent and the '427 patent.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 1367.  This Court also has personal jurisdiction over PharmaStem with respect to these Counterclaims by virtue, *inter alia*, of PharmaStem submitting to the jurisdiction of this Court by filing the Complaint and over all counterclaim-defendants because a substantial number of the communications that underlie some of the claims asserted in these Counterclaims were directed to recipients in this district.

6.    Venue is proper in this district pursuant 28 U.S.C. §1391 because a substantial part of the false and misleading communications and interference with contractual or other economic relationships complained of herein has occurred in this district, and because CorCell

has suffered and continues to suffer injury in this district as a result of the matters complained of herein.

### GENERAL ALLEGATIONS

7.    CorCell is in the business of private banking of umbilical cord blood. By collecting and storing cord blood upon the birth of an infant, it is preserved as a potentially life saving asset. CorCell primarily markets its services to expectant parents and obstetricians.

8.    PharmaStem is the assignee of U.S. patents 5,004,681 ("the '681 patent"), 5,192,553 ("the '553 patent"), 6,461,645, 6,569,427 and 6,605,275 ("the PharmaStem Patents").

9.    In February 2002, PharmaStem filed suit in the United States District Court for the District of Delaware against CorCell and several other companies, alleging infringement of the '681 patent and the '553 patent, *Pharmastem Therapeutics, Inc. v. ViaCell, Inc., et al.*, Civil Action No. 02-148-GMS ("the Delaware Action").

10.    After a trial in October, 2003, a jury verdict was returned in favor of PharmaStem and against CorCell and three other companies in the Delaware Action finding the '681 patent and the '553 patent valid and infringed, and awarding damages to PharmaStem in the form of a royalty.

11.    All parties filed timely post-trial motions in the Delaware Action, including a motion by PharmaStem for entry of a permanent injunction and motions by the defendants for judgment as a matter of law or for a new trial. Those motions were fully briefed as of early February, 2004. On September 15, 2004, the District Court, the Hon. Gregory M. Sleet, entered a Memorandum Opinion and Order granting in part defendants motions, entering judgment as a matter of law that defendants do not infringe the '553 patent and granting a new trial on

infringement of the '681 patent. The Court denied all of PharmaStem's motions, including its motion for an injunction.

12.    On or about June 1, 2004, Didier, on behalf of PharmaStem, began sending to obstetricians, and perhaps to others, letters substantially in the form attached hereto as Exhibit A ("the PharmaStem June letter"). The letter was sent to over 25,000 obstetricians.

13.    By Order dated July 2, 2004, Judge Sleet found that the PharmaStem June letter contained false and misleading statements. A copy of the Court's Order is attached hereto as Exhibit B. In particular, Judge Sleet found, in pertinent part, that:

1.    PharmaStem's June 1, 2004 letter to Obstetricians (the "PharmaStem Letter") contains false and misleading statements concerning this Court's rulings to date. In particular, the Court finds the following statements in this PharmaStem Letter false and misleading:

A. "Patent infringement occurs when a person or institute practices all or part of a patented process." The Court finds this statement is misleading because it is black letter law that in order to prove contributory infringement of a method patent, the <u>entire</u> patented process must be performed. By suggesting that infringement would occur when only part of a process in performed, the letter is misleading.

B. "In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party." The Court finds this statement misleading for at least the following reasons. <u>First</u>, the sentence states that "the Court ruled" with respect to the "case" of "umbilical cord blood collection by an Obstetrician." This Court never made any rulings regarding conduct by obstetricians. There were no such allegations advanced in the trial of this matter. <u>Second</u>, the sentence leaves out several important elements that must be proved to show contributory infringement. The missing elements include:

(1) that there must be a <u>sale</u> or <u>offer to sell</u> by the party that is accused of contributory infringement,

(2) that the party accused of contributory infringement must be "acting in concert or working together" with the other parties whose combined conduct performed each and every element of the patented process, and

(3) that, under §271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements of the contributory infringement statute.

The Court finds that without these elements, the statement is misleading.

Judge Sleet granted an injunction against further false or misleading communications directed to obstetricians. The injunction was granted, in part, because the PharmaStem June letter made no mention of the sale or offer to sell requirement, the "acting in concert or working together" requirement, or that the sale of a service cannot satisfy §271(c) of the Patent Act.

14.    PharmaStem and Didier did not stop disseminating misleading statements after the warning by the Court on July 2, 2004. On August 2, 2004, after PharmaStem filed a second patent infringement lawsuit against CorCell, PharmaStem issued a press release ("Press Release"), a copy of which is attached hereto as Exhibit C, that contained statements similar to those in the PharmaStem June Letter. The Press Release makes no mention of the sale or offer to sell requirement, the "acting in concert or working together" requirement of the law, or that the sale of a *service* cannot satisfy §271(c), which were the basis for Judge Sleet granting the injunction on July 2. Once again, Didier caused copies of the Press Release to be mailed to thousands of obstetricians.

15.    PharmaStem's second wave of suits comprised five separate suits, including this action, in which PharmaStem sued a private cord blood bank and one or more health care providers, i.e., individual physicians (as in this case), group medical practices and a hospital.

16.    In each of these cases, PharmaStem made a boilerplate allegation of infringement of the '427 patent against both the defendant private cord blood bank and at least one health care provider.

17.    Shortly after initiating suit in the Central District of California against CureSource, Inc., and twelve physicians, Didier sent a letter to the defendant physicians, offering to "settle" with them by agreeing not to enforce any of PharmaStem's five patents against them if the doctors would agree not to collect cord blood or provide any service for or "in connection with" any of the private cord blood banks not licensed by PharmaStem, and further agree not to market or offer any service of the defendant cord blood banking companies.  A copy of one of these letters, dated August 18, 2004, and proposed agreements are attached hereto as Exhibit D.

18.    On or about August 20, 2004, Didier began to send thousands of letters, again containing the same type of misleading statement, to physicians who had not been sued. Attached to these letters was an "Amnesty Agreement," which PharmaStem and Didier insisted that the doctors sign to avoid legal action by PharmaStem. A sample of this communication is attached hereto as Exhibit E.  As in the case of the August 18, 2004 letter, the Amnesty Agreement required the physicians to agree not to collect cord blood or perform any services for or in connection with any cord blood bank not licensed by PharmaStem, and that they further agree not to market for, or even distribute literature for, and of the defendant cord blood companies.

19.    The Press Release of August 2, 2004, the letters of August 18 and August 20, 2004 were disseminated after PharmaStem and Didier had already made misrepresentations in the earlier PharmaStem June Letter.  As such, they served to confirm and bolster the earlier misrepresentations and to perpetuate and reinforce false impressions in the eyes of obstetricians, other health care providers and the public. The Press Release and the August letters made no attempt to correct the earlier misrepresentations, to disclose the inaccuracies of the earlier misrepresentations, or to accurately disclose the ruling of the Delaware District Court.  In the

556386_1                                    10

Settlement Agreement, the Amnesty Agreement and the cover letters accompanying them PharmaStem failed to disclose the limitations on theories of indirect infringement that Judge Sleet ordered were necessary to avoid deception.

20.     Upon information and belief, as a follow-up to his letter campaign, Didier then proceeded to make threats by telephone to an unknown number of obstetricians, using the false pretense of presenting himself as an agent of one of the defendant cord blood banks, to get direct access to the physician. Once connected to the physician, Didier explained that nay doctor who refused to sign the Amnesty Agreement would be sued by PharmaStem for patent infringement.

21.     Concurrently with this campaign of deception and intimidation, PharmaStem purchased "sponsored links" on Internet search engines, such as Google and Yahoo in which they identify CorCell as an "unlicensed bank," without direct reference to PharmaStem's patents, and state: "Why Take a Risk?"    This advertisement and unauthorized use of CorCell's trademark is designed to, and does, create the misleading impression that CorCell is a cord blood bank that is not licensed, for example, by state health departments and, consequently, that it is in imminent danger of being shut down for that reason. In fact, CorCell is licensed by the states of New Jersey and New York to operate a private umbilical cord blood banking service.    This conduct constitutes disparagement and unfair and deceptive trade practices.

22.     The campaign of deception and intimidation undertaken by Didier and PharmaStem was intended to create misapprehension in the minds of physicians that they risk potential liability for infringement of the PharmaStem Patents even if they merely collect umbilical cord blood for a patient who is a CorCell customer. The actions of Didier and PharmaStem were designed to dissuade or prevent consumers from purchasing the services of

CorCell and the other cord blood banks that have not bowed to PharmaStem's extortionate tactics.

23.    Under no proper interpretation of any claim of the PharmaStem Patents would an obstetrician be liable for patent infringement based merely on collecting umbilical cord blood at the time of a delivery and providing it to the patient for the patient's shipment to a private cord blood bank. Didier and PharmaStem do not hold a good faith belief that such conduct by physicians could provide a basis for infringement liability. Indeed, such improper threats, based upon such a clearly erroneous interpretation of the statute, of such enforcement constitute a misuse of the PharmaStem Patents. The Delaware Court's ruling granting judgment as a matter of law in favor of defendants on the '553 patent is dispositive of this issue, as it holds that a person cannot be liable for contributory infringement simply by performing a service. Rather, to be liable for contributory infringement of a *method* patent, the accused person must sell (or offer to sell) a material or apparatus for use in the process, in this case, cord blood.

24.    Even after Judge Sleet's decision, PharmaStem and Didier have continued to issue false and misleading statements. In particular, on September 20, 2004, PharmaStem issued a press release (attached hereto as Exhibit F) which mischaracterizes the Court's ruling as well as defendants' positions in the case, e.g., PharmaStem states that the Court "agreed with the defendants" based upon an argument that families who bank with the defendants could be liable for infringement; in fact, the basis for the Court's decision was that the defendants did not sell or offer to sell cord blood. Defendants did not argue that families are liable for infringing PharmaStem's patents; parents do not sell or offer to sell cord blood, and therefore cannot be liable. This is but the latest false implication designed to deter patients from seeking medical services without regard to the narrow limitations of PharmaStem's patents.

556386_1                                      12

25.    Counterclaim-defendant Stembanc, a licensee of PharmaStem, in which PharmaStem has an ownership interest, has joined PharmaStem's ongoing campaign of disparagement and misinformation.    On several occasions, in advertisements placed in *Pregnancy* magazine, and in press releases and website postings, Stembanc has disseminated false and misleading statements to obstetricians, hospitals and the public concerning CorCell and other cord blood banks.    Stembanc's statements have falsely suggested that obstetricians would be liable for infringement if they recommended the services of CorCell or other cord blood banks not licensed by PharmaStem, or if they collected cord blood for patients who chose to store cord blood with one of those banks.    Stembanc also attacked CorCell and the other cord blood banks not licensed by PhamaStem for not revealing to patients an alleged threat of cessation of business which was and is non-existent, as confirmed by the ruling of the Delaware Court.    Stembanc has otherwise made statements suggesting that CorCell, and other companies not licensed by PharmaStem are unethical or lacking in "technical integrity and legal legitimacy."    Stembanc has declined, after demand, to withdraw its false and misleading statements.    Upon information and belief, Stembanc and its agents have made additional false and misleading communications with the intent of causing customers and prospective customers of CorCell not to deal with CorCell,.

26.    As a result of the actions of Counterclaim-defendants, some physicians have declined to collect cord blood for customers of CorCell and have ceased to recommend CorCell's services.    Customers of CorCell have been prevented from fulfilling their contracts with CorCell, and others have been dissuaded from contracting with CorCell at all, because of the actions of Counterclaim-defendants.    Of course, such a response was exactly what PharmaStem, Didier and Stembanc wanted to achieve.

27.     Counterclaim-defendants have acted with the purpose of injuring CorCell in its business and property.

## COUNT ONE

### FEDERAL UNFAIR COMPETITION

### [Lanham Act § 43(a), 15 U.S.C. § 1125(a)]

28.     The allegations contained in paragraphs 1 through 27 are incorporated herein by reference as if set forth at length.

29.     Counterclaim-defendants have sent advertisements and promotional material into interstate commerce via mail and other means that contain false and misleading statements. These materials were transmitted to obstetricians and to actual and potential customers of CorCell for the purpose of taking business away from CorCell and having those actual or potential customers do business with PharmaStem's licensees.

30.     Counterclaim-defendants' deception is material, and has influenced, and will continue to influence, the purchasing decisions of CorCell's customers, particularly those that plan to purchase CorCell's services.

31.     Counterclaim-defendants' deceptive statements were disseminated by the Internet and directly by first class mail to numerous physicians and CorCell's actual and potential customers throughout the United States, and were thereby placed into interstate commerce.

32.     CorCell has been and will continue to be injured as a result of these statements, either by direct diversion of its sales to others or by lessening of goodwill associated with CorCell's services.

33.     The deceptive advertisements and promotional materials violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits Counterclaim-defendants from using

556386_1                                          14

false, misleading, or disparaging representations of fact that misrepresent the nature, characteristics, or qualities of CorCell's goods, services or commercial activities.

34.     Counterclaim-defendants' conduct has been extreme and outrageous, entitling CorCell to punitive damages.

35.     Counterclaim-defendants' conduct has caused and/or is likely to cause damage to CorCell in an amount to be determined at trial, and unless retrained, will cause further damage to CorCell.

### COUNT TWO

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL OR OTHER ECONOMIC RELATIONSHIPS

36.     The allegations contained in paragraphs 1 through 35 are incorporated herein by reference as if set forth at length.

37.     The transmissions of false and misleading communications by Counterclaim-defendants has had the effect of interfering by wrongful means with CorCell's contractual or other economic relationships with persons who desire, or who may desire, to purchase their services of cryopreservation and storage of umbilical cord blood.  Counterclaim-defendants' conduct has been undertaken with a specific intent to harm CorCell and was not privileged or justified.

38.     As a result of Counterclaim-defendants' interference with CorCell's contractual or other economic relationships, which interference has been deliberately willful and wanton, CorCell has suffered damages, *inter alia*, in the form of lost profits on services they would have performed but for Counterclaim-defendants' interference.

39.     Unless the Counterclaim-defendants are enjoined and restrained from continuing their unlawful conduct, CorCell will continue to suffer damage in its business or property by reason of such tortious interference.

40.     Counterclaim-defendants' conduct has been extreme and outrageous, entitling CorCell to punitive damages.

### COUNT THREE

### TRADE LIBEL/COMMERCIAL DISPARAGEMENT

41.     The allegations contained in paragraphs 1 through 40 are incorporated by reference as if set forth at length.

42.     The above-described statements contained in Counterclaim-defendants' publicly disseminated advertisements and promotional materials were meant to, and did, disparage and harm CorCell in the public's mind by falsely and unfairly casting doubt upon the quality, reliability, authenticity and value of CorCell's services and business in general.

43.     Counterclaim-defendants' above-described statements were false when made.

44.     Counterclaim-defendants' statements were made with knowledge of their falsity or with reckless disregard for their truth or falsity.

45.     As a result of Counterclaim-defendants' statements, CorCell has been harmed.

46.     Counterclaim-defendants' conduct has been extreme and outrageous, entitling CorCell to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE CorCell asks this Court to enter a judgment that:

a.      the Complaint be dismissed with prejudice;

b.      CorCell be awarded compensatory and punitive damages;

      c.     PharmaStem, Didier and Stembanc be enjoined from further violations of

CorCell's rights;

      d.     CorCell be awarded its costs, expenses and reasonable attorney's fees under 35

U.S.C. § 285, and any other applicable statute or rule; and

      e.     CorCell be granted such other and further relief as the Court may deem just and

proper.


Dated: September 20, 2004

                              Respectfully submitted,


                                         JR797
                          James J. Rodgers (21635)
                          Evelyn H. McConathy (68299)
                          Darryl W. Shorter (87554)
                          Dawn Zubrick   (90732)
                          DILWORTH PAXSON LLP
                          3200 Mellon Bank Center
                          1735 Market Street
                          Philadelphia, PA 19103
                          215-575-7143

                          Attorneys for Defendants
                          CorCell, Inc. and Carlo M. Croce, MD

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2004, a true and correct copy of the foregoing

Answer of Defendants CorCell, Inc. and Carlo M. Croce, M.D. to Plaintiff's Complaint and

Counterclaim of CorCell, Inc. was served by first class mail on the following counsel of record:

>       Michael D. LiPuma, Esq.
>       Two Penn Center
>       Suite 200
>       Philadelphia, PA 19103
>
>       Paul J. Andre, Esquire
>       Perkins Coie, LLP
>       101 Jefferson Drive
>       Menlo Park, CA 94025

_____ JR797
James J. Rodgers (PA Id. No. 21635)

556386_1