#12
C/30/04

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC., )
                                       )
            Plaintiff,          )
                                         )
        v.                       )   Civil Action No. 2:04-CV-03561-RK
                                         )
CORCELL, INC., et al.,           )
                                         )
           Defendants.      )

0 5 - 1 5 6

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS MOLLY MCBRIDE, M.D. AND CARLO M. CROCE, M.D. IN OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Defendants Molly McBride, M.D. ("McBride") and Carlo M. Croce, M.D. ("Croce") (collectively, the "Individual Defendants") hereby submit this Memorandum of Law in support of their Motion in opposition to Plaintiff PharmaStem Therapeutics, Inc.'s ("Plaintiff" or "PharmaStem") Motion for Default Judgment.[1]

## I.    INTRODUCTION.

The Clerk of Court entered defaults against both Individual Defendants on September 9, 2004. In Plaintiff's Motion for Default Judgment, PharmaStem has requested that default judgment be entered against the Individual Defendants and that injunctive relief be issued. As an initial matter, for the reasons set forth in Defendants Molly McBride, M.D. and Carlo M. Croce, M.D.'s Memorandum in Support of Motion to Set Aside and in Opposition to Entry of Default and this Memorandum, there has not been any default. Dr. Croce was never personally served with the Summons and Complaint, and service was improperly effected upon Dr. McBride. Furthermore, both Individual Defendants have meritorious defenses to this action. Personal

---

[1] This Memorandum is being filed in response to Plaintiff's Motion for Default Judgment. On September 20, 2004, the Individual Defendants filed their Motion to Set Aside and in Opposition to Entry of Default in response to the entry of defaults obtained by Plaintiff on September 9, 2004.

jurisdiction cannot be properly exercised against Dr. McBride, and, contrary to PharmaStem's allegations, the evidence demonstrates that neither of the Individual Defendants are liable for any type of patent infringement. Accordingly, even if the defaults are not set aside, Plaintiff's Motion for Default Judgment and request for injunctive relief should be denied.

## II.    FACTUAL BACKGROUND.[2]

Plaintiff PharmaStem began this action on July 28, 2004, asserting claims against CorCell, Inc. ("CorCell"), a private umbilical cord blood bank, and the Individual Defendants, for the infringement of two patents. Specifically, PharmaStem alleged that defendant CorCell infringed, contributorily infringed, and/or induced the infringement of both United States Patent No. 6,461,645 B1 (the "'645 patent") and United States Patent No. 6,569,427 B1 (the "'427 patent"). *See* Complaint ¶¶ 14, 18. The Individual Defendants, as individual doctors, were alleged to have infringed, contributorily infringed, and/or induced infringement of the '427 patent. *See* Complaint ¶ 18.

Without notice to the Individual Defendants, on September 8, 2004, PharmaStem requested that the Clerk of Court enter default against the Individual Defendants for failure to serve responsive pleadings to the Complaint. Plaintiff's request for entry of default alleged that defendants Croce and McBride were served with the Summons and Complaint on August 12 and August 13, 2004, respectively. The Clerk entered the default against both Individual Defendants on September 9, 2004.

Defendant Croce was never personally served with the Summons and Complaint. *See* Declaration of Carlo M. Croce, M.D., dated September 9, 2004, ¶ 4 (hereinafter the "September

---

[2] The facts and procedural posture of this case have also been set forth in the Memorandum of Law in Support of Motion of Defendants Molly McBride, M.D. and Carlo M. Croce, M.D. to Set Aside and in Opposition to Entry of Default, filed on September 20, 2004. For purposes of this Memorandum, and the convenience of Court and counsel, a version of the facts and procedural posture have been included in this Memorandum as well.

9 Croce Dec.") (attached hereto as Exhibit A). Dr. Croce had first received a copy of the Complaint from his counsel in late August and did not become aware of Plaintiff's claims that he had been served until after the request for default was filed. *See id.*

It appears that Plaintiff initially attempted to serve Dr. McBride at an incorrect business address in the Commonwealth of Pennsylvania. Upon learning that Dr. McBride's place of business was actually located in the state of Delaware, Plaintiff attempted to serve Dr. McBride at her medical office on or about August 13, 2004. The Summons and Complaint were signed for by Amber Lum ("Lum"), the receptionist at the medical office where Dr. McBride practices. This was the first time that Lum had ever signed for anything at the medical office, and she did not know what to do with the package. Declaration of Amber Lum ¶¶ 2, 3 (hereinafter "Lum Dec.") (attached hereto as Exhibit B). Lum gave the package to Thomas Mieszala, the Practice Administrator of the medical office. Declaration of Thomas A. Mieszala ¶¶ 1, 2 (hereinafter "Mieszala Dec.") (attached hereto as Exhibit C). Dr. McBride did not see the package at that time. Mieszala Dec. ¶ 4. It was not until September 13, 2004 that McBride learned from counsel that she had purportedly been served the Summons and Complaint on August 13, 2004. Declaration of Molly McBride, M.D., dated September 14, 2004, ¶ 4 (hereinafter "September 14 McBride Dec.") (attached hereto as Exhibit D).

On September 20, 2004, the Individual Defendants served their Motion of Defendants Molly McBride, M.D. and Carlo M. Croce, M.D. to Set Aside and in Opposition to Entry of Default. Contemporaneous with the filing of that Motion, the Individual Defendants served responses to Plaintiff's Complaint: defendant Croce filed and served an Answer and defendant McBride filed and served a Motion to Dismiss for Lack of Personal Jurisdiction.

III.    ARGUMENT.

    A.    <u>The Motion for Default Judgment Should Be Denied.</u>

        1. **The Individual Defendants Do Not Infringe and Have Not Infringed the '427 Patent.**

Umbilical cord blood, which is collected at the birth of a child, can be preserved for possible future use as an alternative to a bone marrow transplant. Umbilical cord blood, and the stem cells found within it, are also the subject of extensive research into new medical applications.

PharmaStem claims that the Individual Defendants "have been and continue to infringe, contributorily infringe, and/or induce the infringement of the '427 Patent by making, using, selling and/or offering to sell the methods claimed in the '427 Patent . . ." Complaint ¶ 18. The '427 patent contains 56 claims. Six of these claims, consisting of claims 1, 19, 40, 46, 48 and 49, are independent claims. The first five of these independent claims (and therefore the 42 claims dependent on them) all cover methods for treating a human patient in need of hematopoietic reconstitution (the re-establishment of the ability to manufacture red and white blood cells), and all include as an element the introduction into a human patient of blood components containing stem cells, or a composition including such blood components. Claim 49, on the other hand (as well as the seven claims dependent from it), addresses a method for storing stem cells by cryopreservation, such that sufficient stem cells are preserved to effect hematopoietic reconstitution of a human adult. In its Motion for Default Judgment, PharmaStem claims that both Individual Defendants "have been, and continue to infringe the '427 Patent. . . ." As the evidence will demonstrate, these allegations are simply not true.

In support of these claims, Plaintiff relies only upon testimonials from the Individual Defendants on the internet site of CorCell, in which both Individual Defendants are cited under a

4

section entitled "Why They Chose CorCell: Testimonials From Doctors" regarding one's satisfaction with the cord blood collection kit provided by CorCell. Plaintiff alleges that, in McBride's testimonial, "McBride [ ] admits that she has collected Cord Blood for CorCell, Inc., and promotes the Cord Blood services offered by CorCell, Inc., thereby infringing the '427 Patent." Plaintiff's Motion for Default Judgment at 4.

In truth, in the testimonial citing McBride, the only cord blood McBride admits to having saved is the cord blood of her own child. *See* Plaintiff's Motion for Default Judgment, Exhibit E. Defendants do not dispute this fact. As stated in Dr. McBride's declaration, the cord blood of McBride's daughter was collected at the time of her birth. *See* Declaration of Molly McBride, M.D., dated September 16, 2004, ¶ 3 (the "September 16 McBride Dec.") (attached hereto as Exhibit E). Moreover, the testimonial does not cite or reference a date in which McBride's statement was made. In any event, regardless of when McBride made such statement, McBride's collection of her daughter's cord blood occurred before Plaintiff was issued the '427 patent. The '427 patent was issued on May 27, 2003. *See* Complaint ¶ 8. McBride has not collected cord blood within the State of Pennsylvania at any time since May 27, 2003. *See* September 16 McBride Dec. ¶ 4. Specifically, the cord blood that was collected from McBride's daughter was collected at her birth, in February 2003 -- months before the '427 patent was issued to PharmaStem. Thus, there is no evidence from the testimonial or otherwise that McBride has ever infringed the '427 patent, let alone that she "continues to infringe" the '427 patent.

Furthermore, Plaintiff claims that defendant Croce "also admits on the CorCell website that he has collected Cord Blood for CorCell, Inc., and also promotes the Cord Blood Services of CorCell, Inc." Plaintiff's Motion for Default Judgment at 4. However, in his testimonial on the CorCell website, Dr. Croce also only admitted to saving only his own child's cord blood. *See*

Plaintiff's Motion for Default Judgment, Exhibit E.  In truth, Dr. Croce is not an obstetrician.

*See* Declaration of Carlo M. Croce, M.D., dated September 6, 2004, ¶ 2 (the "September 6 Croce

Dec.") (attached hereto as Exhibit F).  He has only collected his daughter's cord blood, and has

never collected cord blood in a professional capacity.  *See* September 6 Croce Dec. ¶¶ 2, 3.

Additionally, as with Dr. McBride, the cord blood of Dr. Croce's daughter was collected at her

birth in 1997 -- years before the '427 patent was issued to PharmaStem.  Thus, PharmaStem's

claims that Dr. Croce infringed the '427 patent must also fail.

Accordingly, Plaintiff has failed to demonstrate that either of the Individual Defendants

infringed the '427 patent in any way.

### 2. The Motion for Default Judgment Does Not Establish the Individual Defendants' Liability.

On September 9, 2004, the Clerk of Court entered defaults against Defendants Croce and

McBride.  Although application for the entry of a default and default judgment are often

submitted simultaneously to a court, the two procedural steps are analytically independent, and

each step has different and distinct consequences.  *See In re Park*, 272 B.R. 323 (D.N.J. 2001).

Entry of default is a prerequisite to entry of a default judgment under Fed.R.Civ.P. 55(b).  *See*

*Systems Industries, Inc. v. Han*, 105 F.R.D. 72, 74 (E.D.Pa. 1985).  The general effect of an entry

of default is to deem the allegations contained in a complaint as admitted.  *See id.* at 329-30.

Accordingly, although a defaulting party may not attack the factual allegations of a complaint,

this does not mean that the party admits to the legal conclusions made in the complaint.  *See id.;*

*see also Thomson v. Wooster*, 114 U.S. 104, 113, 5 S.Ct. 788 (1885) (regarding default,

defendant is not held to admit conclusions of law); *Soshnik v. Bruens*, 851 F.2d 361, 1988 WL

69804 (9th Cir. June 22, 1988) (unpublished opinion) ("only *factual* allegations are admitted by

default, not liability or legal conclusions") (emphasis in original); *In re Industrial Diamonds*

*Antitrust Litigation*, 119 F.Supp.2d 418 (S.D.N.Y. 2000) ("While a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action."). Therefore, even if the defaults are not set aside, PharmaStem is not entitled to a determination of liability against the Individual Defendants.

### 3. PharmaStem Is Not Entitled To Default Judgment.

In this Court, it is well established that a district court ruling on a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1) must consider three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985) (citations omitted).[3]

The motion for default judgment should be denied because plaintiff PharmaStem will suffer no prejudice by McBride or Croce's late filing of their responsive pleadings, because both Defendants McBride and Croce have meritorious defenses to the claims asserted, and because the late filing of the responsive pleadings was not the result of culpable conduct.

### a. PharmaStem Will Not Suffer Any Prejudice If The Default Is Set Aside.

PharmaStem will not suffer any prejudice if the default is set aside. Prejudice to the plaintiff only occurs when setting aside the default would hinder the plaintiff's ability to pursue its claims through loss of evidence, fraud, or substantial reliance on the default. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982). No such prejudice has been shown here.

---

[3] Although this argument has been set forth in the Motion of Defendants Molly McBride, M.D. and Carlo M. Croce, M.D. to Set Aside and in Opposition to Entry of Default, it is being repeated here for purposes of this Memorandum and for the convenience of the Court and counsel.

Because the courts regard an entry of default with disfavor, PharmaStem must show more than conclusive assertions of prejudice. *See Dizzley v. Friends Rehabilitation Program, Inc.*, 202 F.R.D. 146, 147 (E.D.Pa. 2001). PharmaStem has asserted that McBride's responsive pleading should have been served on or before September 2, 2004; and that Croce's responsive pleading should have been served on or before September 1, 2004. A three-week delay does not establish prejudice to the plaintiff. *See id.* at 148 (three-month delay, without more, does not establish prejudice); *see also Snall v. City of New York*, 1999 WL 1129054, at *3 (E.D.N.Y. Oct. 19, 1999) ("it is plain that mere delay is insufficient to establish prejudice").

Nor does the fact that the plaintiff will be required to further litigate the action on the merits constitute prejudice. *See Choice Hotels Int'l, Inc. v. Pennave Assoc., Inc.*, 192 F.R.D. 171, 174 (E.D. Pa. 2000). Because PharmaStem will not be able to establish prejudice, this factor weighs heavily in favor of setting aside the defaults. PharmaStem will have to litigate this case against CorCell in any event.

### b. Defendants Assert Meritorious Defenses To PharmaStem's Complaint That, If Successful, Bar Recovery By PharmaStem.

Defendants McBride and Croce both assert meritorious defenses to PharmaStem's claims. A meritorious defense is "one which, if established at trial, would completely bar plaintiff['s] recovery." *Momah v. Albert Einstein Medical Center*, 161 F.R.D. 304, 307 (E.D.Pa. 1995) (citation omitted). The Court "need not speculate as to the ultimate success of any of these defenses; to weigh in favor of setting aside the default, it is enough that they are not 'facially unmeritorious'." *Dixon v. Philadelphia Housing Authority*, 185 F.R.D. 207, 209 (E.D.Pa. 1999) (quoting *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). In its Complaint, PharmaStem asserts that Defendants McBride and Croce are liable for infringement, contributory infringement and inducement of infringement. *See* Complaint ¶ 18. As demonstrated below,

both Defendant McBride and Croce have meritorious defenses and should be dismissed from this action.

### 1.     McBride.

As detailed in the Memorandum of Law In Support of Defendant McBride's Motion to Dismiss (filed on September 20, 2004 and incorporated herein by reference), the Complaint should be dismissed against Defendant McBride for lack of personal jurisdiction. McBride is a Delaware resident who does not maintain an office, conduct business or employ personnel in the State of Pennsylvania. McBride therefore lacks the minimum contacts required for due process, and this Court cannot properly exercise jurisdiction upon her.

Furthermore, service was not properly made upon Defendant McBride; thus, no duty to respond has ever arisen. PharmaStem attempted to serve McBride at the medical office where she works. Pursuant to Federal Rule of Civil Procedure 4(e),

> service upon an individual . . . may be effected in any judicial district . . . (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction in the State; or (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode. .or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Thus, service may have been made pursuant to Pennsylvania law, as the law of the state in which this Court is located, or pursuant to Delaware law, as the state in which service is effected.

Here, the service of process attempted to be made on McBride is improper under both Pennsylvania and Delaware law. Service of process upon an individual under Pennsylvania law is accomplished by handing a copy "at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa. R. Civ. P. 402(a)(2)(iii). The

Summons and Complaint were given to Lum, the receptionist at the medical office. Although Lum is authorized to accept packages for the medical office, this was the first package she had ever signed for and did not know what to do with the package. *See* Lum Dec. ¶ 2. The case law makes clear that service upon a receptionist at the defendant's place of business does not ordinarily satisfy Pa. R. Civ. P. 402(a)(iii). *See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 486 (3d Cir. 1993) (noting that service of process on receptionist whose duties included accepting mail and taking telephone messages for defendants was insufficient).

Delaware Superior Court Rule of Civil Procedure 4(f) mimics Federal Rule of Civil Procedure 4(e)(2). There is no evidence that Plaintiff attempted to serve McBride "personally" or by leaving copies at her "dwelling house or usual place of abode." *See East Coast Insulation Sales Co. v. Stevenson*, 1990 WL 91119, at *2 (Del. Super. Jun. 29, 1990) (noting that nothing in the record indicated that the plaintiff attempted to serve defendant at his home or usual place of abode or tried to locate that address). Furthermore, Lum was not an "agent authorized to receive service of process." *See Paras v. Correctional Medical Services, Inc.*, 2002 WL 31260071 (Del. Super. Oct. 3, 2002) (noting that delivery of suit papers to the receptionists at law firms did not constitute effective service of process upon individual defendant lawyers).

By establishing that this Court does not have jurisdiction over her, and further, that service was improperly effected upon her, McBride will have a complete defense to PharmaStem's claims. This factor weighs in favor of denying the motion for default judgment as against Defendant McBride.

### 2.    Croce.

The facts will also demonstrate that Defendant Croce has a meritorious defense. The Complaint alleges that "Croce has collected Cord Blood which was processed, cryopreserved, and stored for future therapeutic use by CorCell and/or its agents." Complaint ¶ 12. In fact, Croce is not an obstetrician, is not licensed to practice medicine in the Commonwealth of Pennsylvania, and has never collected cord blood at the birth of a child in a professional capacity. *See* September 6 Croce Dec. ¶ 2. By demonstrating that Croce has not collected cord blood, contrary to plaintiff's allegations, Croce will have a complete defense to PharmaStem's claims, as established in the recent decision of the United States District Court for the District of Delaware in the related case of *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.*, No. 02-148 GMS (D. Del. September 15, 2004). This case holds, *inter alia*, that a person or entity cannot be liable for contributory infringement of a related PharmaStem patent who does not sell, or offer to sell, cord blood. This factor weighs in favor of denying the motion for default judgment as against Defendant Croce (and Dr. McBride as well).

### c.    Defendants' Failure To Timely Answer The Complaint Does Not Indicate Culpable Conduct.

The third and final factor the Court must consider is the Defendants' culpability. Defendants' delay in filing their responsive pleadings is excusable and not the result of any culpable conduct. Culpable conduct surpasses mere negligence and consists of willful, intentional, reckless or bad faith behavior. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984); *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 124 (3d Cir. 1983); *Dizzley*, 202 F.R.D. at 148 (defining culpable conduct as dilatory behavior that is willful or in bad faith that must appear independently in the record). More than mere negligence is required. *See Momah*, 161 F.R.D. at 308. Reckless or intentional disregard for communications from the

plaintiff or the court must be exhibited by the defendant to establish culpability. *See East Coast Express, Inc. v. Ruby, Inc.*, 162 F.R.D. 37, 40 (E.D. Pa. 1995) (citing *Hritz*, 732 F.2d at 1182).

Here, both McBride and Croce's actions illustrate that their late filing of the responsive pleadings is not the result of culpable behavior. As previously noted, the receptionist who signed on behalf of McBride had not ever signed for anything at the medical office before and did not know what to do with the package. *See* Lum Dec. ¶¶ 2, 3. McBride never actually saw the package, but assumed that it was something that her counsel was handling. *See* Mieszala Dec. ¶¶ 4, 5. Accordingly, Mieszala placed the package in a file. *Id.* ¶ 5. Moreover, Croce was never personally served with the Summons and Complaint. *See* September 9 Croce Dec. ¶ 4. When Defendants McBride and Croce learned, through counsel, that a default had been entered against them, both took timely action to respond. Default was entered on Thursday, September 9, 2004, and the Individual Defendant's Motion to Set Aside and in Opposition to Entry of Default was filed just nine business days later, on the same date to which Plaintiff had agreed to extend CorCell's response to the complaint. Additionally, on August 16, 2004, days after Plaintiff's purported attempt to serve both individual Defendants, counsel for Defendants contacted counsel for Plaintiff to ask for an extension of time to file an Answer for CorCell, another defendant in this action. In so requesting, counsel for the moving Defendants specifically noted that "I don't think the individual defendants have been served yet, anyway." *See* Email chain between Paul Andre and James Rodgers, dated August 16, 2004 (the "August 16 Email") (attached hereto as Exhibit G). In response, counsel for Plaintiff merely agreed to grant the extension and did not dispute the absence of service upon the individual defendants. *See* August 16 Email (where Plaintiff's counsel responds, "Sure, whatever time you need (within reason) is fine."). This discussion further demonstrates the lack of willful conduct on the part of the Defendants.

Because Defendants' failure to respond to the Complaint was not the result of culpable behavior, this factor also weighs in favor of denying PharmaStem's motion for default judgment.

### B.    PharmaStem is Not Entitled to Injunctive Relief.

Injunctive relief is a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. USLI System Technologies*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). The determination by a district court of whether to grant an injunction requires the evaluation of four factors: (i) the likelihood of the movant's success on the merits; (ii) the irreparability of harm to the movant without an injunction; (iii) the balance of hardships between the parties; and (iv) the demands of the public interest. *See Mentor Graphics Corp. v. Quickturn Design Systems, Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998). Here, PharmaStem has requested a permanent injunction. The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that, to obtain a permanent injunction, the plaintiff must show actual success on the merits, rather than simply a likelihood of success. *See Amoco Production, Co. v. Village of Gambell, AK*, 107 S.Ct. 1396 (1987) (citation omitted).

### 1.    PharmaStem cannot demonstrate actual success on the merits for its claims of patent infringement.

As discussed in Section III.A., *supra*, PharmaStem cannot demonstrate that either of the Individual Defendants infringed the '427 Patent. PharmaStem only relies upon vague excerpts of testimonials taken from an internet site, in which the Individual Defendants admit only that they were satisfied with the collection kit provided by CorCell in saving the cord blood of their own children. Neither testimonial implicates the allegations that the Individual Defendants infringed the '427 Patent. Further, both Individual Defendants have meritorious defenses to PharmaStem's claims, as (i) personal jurisdiction may not properly be exercised over Defendant McBride; and (ii) Dr. Croce is not an obstetrician and has not collected cord blood in a professional capacity.

In light of these facts, PharmaStem is unable to demonstrate actual success on the merits for its claims of patent infringement.

### 2. PharmaStem has not been irreparably harmed.

Irreparable harm hinges upon a "clear showing of patent validity and infringement." *See Sprinturf, Inc. v. Southwest Recreational Industries, Inc.*, 277 F.Supp.2d 508, 516 (citing *Amazon.com*, 239 F.3d at 1350). The movant must demonstrate "immediate irreparable harm," rather than a risk of harm. *See id.* (citation omitted). The Court will further consider two factors relevant to an irreparable harm inquiry: delay by the patent holder in seeking injunctive relief and the effectiveness of money damages to compensate a party. *See U-Fuel, Inc. (NV) v. Highland Tank & Mfg. Co., Inc.*, 228 F.Supp.2d 597 (E.D.Pa. 2002).

The factors here weigh against a showing of irreparable harm. First, as previuosly discussed, PharmaStem has failed to make a "clear showing" of patent infringement. *See Sprinturf.*, 277 F.Supp.2d at 517. Further, in its analysis of irreparable harm in a patent case, a court may consider the period of delay exercised by a party prior to seeking a preliminary injunction. *See U-Fuel,* 228 F.Supp.2d at 611. PharmaStem learned about the allegedly infringing conduct at the time the '427 patent was issued, in May 2003, but did not file this suit until the end of July, 2004. *See Sprinturf,* 277 F.Supp.2d at 517 (30-month delay indicated no irreparable harm); *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equipment, Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (15-month delay negated irreparable harm). In addressing irreparable harm, the Court may further determine whether damages are sufficient to compensate the plaintiff. Here, PharmaStem has only alleged general and conclusory assertions that money cannot compensate PharmaStem, and that an injunction is required for a patent owner to "enjoy the full value of his invention in the marketplace." (Plaintiff's Motion for Default Judgment at

13).  Such claims do not adequately demonstrate why financial compensation would not be sufficient to remedy the alleged infringements.  *See Sprinturf*, 277 F.Supp.2d at 517 (denying preliminary injunction).

### 3.    Public policy weighs against the issuance of an injunction.

Finally, principles of equity and public policy mandate that this Court deny the injunctive relief sought by Plaintiff.  Strong public policy favors the resolution of cases tried on the merits, rather than through a default judgment.  *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001).  This is particularly of concern where the Plaintiff seeks permanent injunctive relief.  Before permanent injunctive relief is issued, the Individual Defendants must be permitted to argue their position on the merits of the case.  For a permanent injunction to issue where the defending party had not had the opportunity to be heard would be contrary to the public policy and equitable principles of this jurisprudence.

## IV.    CONCLUSION.

In sum, for the reasons discussed *supra*, as PharmaStem will not suffer any prejudice, the Individual Defendants have meritorious defenses to PharmaStem's claims, and the late filing of the responsive pleadings is not the result of any culpable conduct, the motion for default judgment should be denied.  Additionally, PharmaStem has not met its heavy burden in demonstrating that an injunction is appropriate, and its request for a permanent injunction must also be denied.

James J. Rodgers (PA ID No. 21635; JR797)
Evelyn H. McConathy (PA ID No. 68299)
Darryl W. Shorter (PA ID No. 87554)
Dawn N. Zubrick (PA ID No. 90732)
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
(215) 575-7000
Attorneys for Defendants

Dated:  September 30, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2004, a true and correct copy of the foregoing Memorandum of Law in Support of Motion of Defendants Molly McBride, M.D. and Carlo M. Croce, M.D. in Opposition to Plaintiff's Motion for Default Judgment was served by first class mail on the following counsel of record:

Michael D. LiPuma, Esq.
Two Penn Center
Suite 200
Philadelphia, PA 19103

Paul J. Andre, Esquire
Perkins Coie, LLP
101 Jefferson Drive
Menlo Park, CA 94025

_____ JR797
James J. Rodgers (PA Id. No. 21635)

557213_1

# EXHIBT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC., )
                                    )
         Plaintiff,          )
                                      )
      v.                  )   Civil Action No.
                                      )
CORCELL, INC.,             )
                                      )
         Defendants.      )

### Declaration of Carlo M. Croce, M.D.

CARLO M. CROCE, M.D., hereby declares, under penalty of perjury, as follows:

1.      I am presently employed as Director of the Kimmel Cancer Institute and the Kimmel Cancer Center of Thomas Jefferson University, and a Professor of Microbiology and Immunology at Jefferson. I am a research scientist engaged in studying the genetic origins of certain human cancers.

2.      I have been informed by my counsel that I have been named as a defendant in this lawsuit. I received a copy of the complaint from my counsel in mid-August, 2004.

3.      I have further been informed by my counsel that the plaintiff in the case has requested that a default be entered against me because I failed to respond to the summons and complaint in the case.

4.      I have further been informed by my counsel that the plaintiff in the case has claimed that I was personally served with a copy of the summons and complaint on August 12, 2004. This claim is false. I was not personally served with a copy of the summons and complaint on August 12, 2004, or at any other time.

Dated: September  9 , 2004

Carlo M. Croce, M.D.

555258_1

# EXHIBT B

## Declaration of Amber Lum

AMBER LUM, hereby declares, under penalty of perjury, as follows:

1.    I am presently employed as a receptionist at the medical office of All About Women Obstetrics and Gynecology ("All About Women"), which has its offices in Newark, Delaware. I work in the same office as Dr. Molly McBride, a defendant in the action entitled *PharmaStem Therapeutics, Inc. v. Corcell, Inc., et al.*, C.A. No. 2:04-CV-03561-RK.

2.    In mid-August, 2004, someone brought a package to All About Women, addressed to Dr. McBride. I signed for this package. This was the first time I had ever signed for anything as a receptionist at All About Women.

3.    I did not know what the package was, nor did I know what to do with the package.

4.    I asked another doctor at All About Women what to do with the package, and she told me to give it to Thomas A. Mieszala, the Practice Administrator at All About Women. I thereafter brought the package to Mr. Mieszala.

5.    I did not know or inquire anything further about the package, until September 13, 2004, when Dr. McBride's counsel informed us that a default had been entered against her in the above-referenced litigation.

Dated: September 20, 2004

Amber Lum

556186_1

# EXHIBT C

## Declaration of Thomas A. Mieszala

THOMAS A. MIESZALA, hereby declares, under penalty of perjury, as follows:

1.      I am presently employed as the Practice Administrator of the medical office of All About Women Obstetrics and Gynecology ("All About Women"), which has its offices in Newark, Delaware. I work in the same office as Dr. Molly McBride, a defendant in the action entitled *PharmaStem Therapeutics, Inc. v. Corcell, Inc., et al.*, C.A. No. 2:04-CV-03561-RK.

2.      In mid-August, 2004, Amber Lum, a receptionist at the All About Women medical office, brought me a package for which she had signed on behalf of Dr. McBride.

3.      I advised Dr. McBride that a package had been received relating to the PharmaStem litigation.

4.      Upon my knowledge, Dr. McBride did not see or review the contents of the package.

5.      When Dr. McBride told me that her counsel was handling the PharmaStem litigation, I assumed that her counsel was taking care of the matter. I thereafter placed the package in a file drawer and did not discuss the package or review the package until September 13, 2004, when Dr. McBride's counsel informed us that a default had been entered against her in the matter.

Dated: September 20, 2004

_____
Thomas A. Mieszala

556110_1

# EXHIBT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC.,    )
                                  )
              Plaintiff,          )
                                  )
      v.                          )   Civil Action No.
                                  )
CORCELL, INC.,                    )
                                  )
              Defendants.         )

### Declaration of Molly McBride, M.D.

MOLLY MCBRIDE, M.D., hereby declares, under penalty of perjury, as follows:

1.     I am an obstetrician/gynecologist practicing as part of All About Women Obstetrics and Gynecology, which has its offices in Newark, Delaware. I have practiced medicine in the State of Delaware for approximately 4 ½ years.

2.     In late August, 2004, I was informed by my counsel that I have been named as a defendant in this lawsuit. I received a copy of the complaint from my counsel at that time.

3.     Until September 13, 2004, I had no knowledge that the plaintiff in the case requested that a default be entered against me because I failed to respond to the summons and complaint in the case, and that such default was entered against me on September 9, 2004.

4.     I have further been informed by my counsel that the plaintiff in the case has claimed that I was personally served with a copy of the summons and complaint on August 13, 2004, by leaving a copy of the summons and complaint with someone at the medical office where I work. I was not personally served with a copy of the summons and complaint on August

13, 2004, or at any other time. I did not become aware of the purported service at my office until September 13, 2004.

Dated: September 14, 2004

Molly McBride, M.D.

555627_1

# EXHIBT E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC.,   )
   )
       Plaintiff,   )
   )
      v.   )   Civil Action No. 2:04-CV-03561-RK
   )
CORCELL, INC., et al.,   )
   )
       Defendants.   )

Declaration of Molly McBride, M.D.

MOLLY McBRIDE, M.D., hereby declares, under penalty of perjury, as follows:

1.     I am an obstetrician/gynecologist practicing as part of All About Women Obstetrics and Gynecology, which has its offices in Newark, Delaware. I have practiced medicine exclusively in the State of Delaware for approximately 4 ½ years.

2.     I am a resident of Wilmington, Delaware, and I do not maintain either a place of business or personal address in Pennsylvania

3.     When my daughter was born in February, 2003, her umbilical cord blood was collected at the time of her birth, and stored through CorCell, Inc.

4.     I have not collected umbilical cord blood within the State of Pennsylvania at any time since May 27, 2003.

5.     On occasions when I have collected umbilical cord blood at the request of patients who wish to have it stored, my only role is to collect the blood in the kit provided to me. Our practice makes a charge to the patient for the service of collection. Neither I nor my practice has any economic relationship with CorCell or any other cord blood bank.

6.     I have never sold umbilical cord blood.

557222_2

7.    I have never performed any services with regard to the processing or storage of umbilical cord blood.

8.    I have not infused into a human patient stem cells derived from umbilical cord blood, or played any role with respect to a cord blood transplant.

9.    To my knowledge, no cord blood specimen that I have collected has ever been transplanted into a human patient.

Dated: September /6 , 2004

Molly McBride, M.D.

55723_1

## **EXHIBT F**

RECEIVED SEP 1 0 2004

## Declaration of Carlo M. Croce, M.D.

CARLO M. CROCE, M.D., hereby declares, under penalty of perjury, as follows:

1.     I am presently employed as Director of the Kimmel Cancer Institute and the Kimmel Cancer Center of Thomas Jefferson University, and a Professor of Microbiology and Immunology at Jefferson. I am a research scientist engaged in studying the genetic origins of certain human cancers.

2.     I am not an obstetrician, and I have never collected umbilical cord blood at the birth of a child.

3.     When my daughter was born in 1997, her umbilical cord blood was collected at the time of her birth, and stored through CorCell, Inc.

4.     I have not infused into a human patient stem cells derived from umbilical cord blood.

Dated: September 6 , 2004

Carlo M. Croce, M.D.

554982_1

# <u>EXHIBT G</u>

## Rodgers, James J.

| | |
|---|---|
| **From:** | Andre, Paul-MP [PAndre@PerkinsCole.com] |
| **Sent:** | Monday, August 16, 2004 7:26 PM |
| **To:** | Rodgers, James J. |
| **Subject:** | RE: PharmaStem litigations |

Sure, whatever time you need (within reason) is fine.

-----Original Message-----
From: Rodgers, James J. [mailto:jrodgers@dilworthlaw.com]
Sent: Monday, August 16, 2004 10:55 AM
To: Andre, Paul-MP
Subject: PharmaStem litigations

Paul,

    Rumor has it that you have granted one of the defendants an extension to September 13 to respond to the latest complaint. I would like to request the same for CorCell in the ED Pa action. I don't think the individual defendants have been served yet, anyway.

                    Jim Rodgers

www.DilworthLaw.com

This E-Mail is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege. If you have received this communication in error, please do not distribute it and notify us immediately by email: postmaster@dilworthlaw.com or via telephone: 215-575-7000 and delete the original message. Unless expressly stated in this e-mail, nothing in this message or any attachment should be construed as a digital or electronic signature or as a legal opinion.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.