UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

05 - 156

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CORCELL, INC., a Delaware corporation, MOLLY MCBRIDE, MD, an individual, and CARLO M. CROCE, MD, an individual,<br><br>    Defendants.<br><br>CORCELL, INC., a Delaware corporation,<br><br>    Counterclaim-Plaintiff,<br><br>    v.<br><br>PHARMASTEM THERAPEUTICS, INC., NICHOLAS DIDIER and STEMBANC, INC.,<br><br>    Counterclaim-Defendants. | Civil Action No.:2:04-CV-03561-RK |

**PLAINTIFF PHARMASTEM THERAPEUTICS, INC. 'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT MCBRIDE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## PRELIMINARY STATEMENT

Plaintiff PharmaStem Therapeutics, Inc. ("Plaintiff" or "PharmaStem") submits this opposition to Defendant McBride's ("McBride") Motion to Dismiss PharmaStem's Complaint for Patent Infringement for Lack of Personal Jurisdiction ("McBride's Motion"). McBride's Motion vaguely claims she is not subject to the jurisdiction of this Court because she currently "does not maintain an office, conduct business or employ personnel in Pennsylvania." Docket No. 10 at 1. This tenuous position cannot protect McBride from this lawsuit and the jurisdiction of this Court because, based on the correct reading of relevant precedent, it is unequivocal that this Court has *specific* personal jurisdiction over McBride comporting with Pennsylvania's long-arm statute and federal due process.

PharmaStem's patent infringement claim against McBride arises out of, or at the very least, relates to, McBride's umbilical cord blood collection activities in Pennsylvania. By collecting umbilical cord blood at the time of birth for patients in the Commonwealth of Pennsylvania until May 27, 2003, and charging patients for this service, McBride has purposefully directed her service to Pennsylvania residents. Declaration of Molly McBride attached to motion to dismiss ("McBride Decl."), ¶¶4 and 5. Indeed, McBride's business was, until very recently, located in West Grove, Pennsylvania. PharmaStem's Complaint for Patent Infringement dated July 28, 2004 (the "Complaint"), ¶4. This Court's jurisdiction over her would be fair and reasonable and McBride has offered no other considerations to find otherwise. Since the Court's exercise of specific personal jurisdiction over McBride does not offend federal due process, McBride's Motion should be denied.

## FACTUAL BACKGROUND

A.   **PharmaStem's Patent Infringement Suit.**

PharmaStem's predecessor company pioneered the field of cord blood banking and, in doing so, sought and obtained several patents. On July 28, 2004, PharmaStem sued McBride, along with two other defendants, for infringement of U.S. Patent No. 6,569,427 (the "'427 Patent"). Docket No. 1. The '427 Patent is directed to a method of using and storing cryopreserved compositions of fetal or neonatal hematopoietic stem and progenitor cells obtained from the umbilical cord or placental blood of a newborn human ("cord blood") for therapeutic uses. Docket No. 1, ¶9. PharmaStem brought this patent infringement suit against McBride because, as a physician, she has collected cord blood which an unlicensed cord blood bank, namely CorCell, Inc. ("CorCell"), has processed, cryopreserved, and stored for future therapeutic use. Docket No. 1, ¶11. She has also offered for sale and promoted the cord blood services offered by CorCell. Docket No. 1, ¶18.

McBride has collected cord blood using a collection kit provided by co-defendant CorCell, Inc, and on CorCell's website, McBride promotes CorCell's cord blood banking service by stating "I am always able to get more than an adequate sample of cord blood with your kit." Declaration of Michael LiPuma attached to PharmaStem's Motion For Default Judgment ("LiPuma Decl."), Exhibit E. When CorCell receives the cord blood collected by a physician, such as McBride, the cord blood is processed, cryopreserved, and stored by the unlicensed cord blood banks for future therapeutic use. As a result, under 35 U.S.C. §§271, McBride has been, and continues to, infringe, the '427 Patent and will continue to do so until enjoined by the Court. Furthermore, McBride's infringement of the '427 Patent has been, and continues to be, willful and deliberate, and has injured and continues to injure PharmaStem. Docket No. 1, ¶19.

On August 13, 2004, McBride was properly served with the summons and Complaint. LiPuma Decl., ¶4; Exh. B. McBride, however, never appeared before this Court nor explained her failure to answer or defend against PharmaStem's Complaint prior to the instant motion. *Id.*, ¶7. On September 8, 2004, PharmaStem requested and was granted an entry of default against McBride by Order of this Court. *Id.*, ¶ 8; Exh. D. PharmaStem then filed a motion for default judgment of liability against McBride in order to clear the way to enjoin McBride from continuing to infringe the '427 Patent, and to seek such other relief as pled in the Complaint and that this Court may deem proper and just. Docket No. 7.

### B. McBride's Connections with the State of Pennsylvania.

Although McBride alleges that she is currently an obstetrician/gynecologist at the All About Women Obstetrics and Gynecology practice, which is located in Newark, Delaware (McBride Decl., ¶1), she admits that she collected, and offered the service of collecting, umbilical cord blood in the Commonwealth of Pennsylvania until May 27, 2003, a service for which she charges patients. McBride Decl., ¶¶4-5. Clearly, McBride practiced medicine in Pennsylvania until very recently and offered the service of collecting umbilical cord blood to the public during her time in Pennsylvania. Indeed, at the time of filing this lawsuit, a list of Obstetricians/Gynecologist in the State of Pennsylvania published by Mid-Atlantic Health Plan listed McBride's address as: "Molly McBride, MD, Christiana OB/GYN, 650 West Baltimore Pike, West Grove, PA 19390." Exh. 1, attached hereto.

## ARGUMENT

A. **Under Applicable Law, McBride's Motion To Dismiss For Lack of Personal Jurisdiction Should Be Denied Because Specific Jurisdiction Exists Over McBride.**

Specific jurisdiction should be exercised over McBride due to her cord blood collection activities in the State of Pennsylvania prior to May 2003. McBride specifically directed her activities at residents of Pennsylvania and this litigation relates to those activities.[1] For specific jurisdiction to exist, "the 'minimum contacts' prong requires the plaintiff to show that the defendant 'has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation*, 297 F.3d 1343, 1350-51 (Fed. Cir. 2002)(personal jurisdiction held constitutionally reasonable where sufficient contacts existed and jurisdiction was based on the business activities of defendant in forum state). Indeed, specific personal jurisdiction can exist even if the defendant's contacts with the forum state are "isolated and sporadic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

In patent infringement cases, Federal Circuit law, rather than that of the regional circuits, controls the issue of whether a non-resident defendant is subject to personal jurisdiction. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994), *cert. dismissed*, 512 U.S. 1273 (1994) (defendants to a patent infringement action were subject to personal jurisdiction under states long-arm statute where alleged infringement occurred in state where patent action was filed); *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) ("We apply the law of the Federal Circuit…when we determine whether the district court [may]

---

[1] "General" personal jurisdiction exists when a defendant's contacts with the forum state are "systematic" and "substantial." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378, n.3 (Fed. Cir. 1998).

exercise personal jurisdiction over an out-of-state accused infringer."); *Deprenyl*, 297 F.3d at 1348. Under Federal Circuit law, this determination involves two inquiries: (1) whether a forum state's long-arm statute permits the assertion of jurisdiction over the non-resident defendant and (2) whether the assertion of personal jurisdiction violates federal due process. *Akro*, 45 F.3d at 1544.

Pennsylvania's long-arm statute, 42 Pa. Stat. Ann. §5322(b), has been consistently interpreted as reaching the full limits of constitutional due process. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)("Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court sits. In turn, the Pennsylvania Long Arm Statute, Pa.Stat.Ann. tit. 42, § 5322(b) (Purdon 1981) allows a court to exercise jurisdiction over a person 'to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.' Thus, the reach of the Pennsylvania statute is coextensive with the due process clause of the United States Constitution."). Therefore, the two-step inquiry employed by the Federal Circuit collapses into a single inquiry of whether jurisdiction violates federal due process. *Akro*, 45 F.3d at 1544.[2]

The Federal Circuit directs district courts to apply the following three factors when making this due process determination in a patent case: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether the assertion of personal jurisdiction is

"reasonable and fair." *Akro*, 45 F.3d at 1545-46; *see also Deprenyl*, 297 F.3d at 1351; *Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed. Cir. 2001) (in a patent infringement suit, sufficient contacts with forum state existed to allow exercise of personal jurisdiction over defendants where negotiations took place, and license agreements had terminated, prior to filing of cause of action.)

The Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (exercise of personal jurisdiction comported with traditional notions of fair play and substantial justice where defendant had taken affirmative steps to market its services in the forum state). The burden of proof is on McBride to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable. *Inamed*, 249 F.3d at 1360; *Akro*, 45 F.3d at 1546.

McBride's motion to dismiss must be denied because, as discussed below, there is a *prima facie* showing of personal jurisdiction. McBride's failure to articulate any considerations that render the exercise of jurisdiction by this Court as unreasonable further supports denial of McBride's motion to dismiss.

**B.  McBride Purposefully Directed Her Cord Blood Collection Activities To Pennsylvania Residents.**

PharmaStem has made a *prima facie* showing of personal jurisdiction sufficient to withstand McBride's motion to dismiss. With respect to the first part of the due process analysis, the record contains evidence to support a finding that McBride purposefully directed her cord

---

[2] In patent cases, Federal Circuit law is controlling with deference given to the state's highest court to determine whether a defendant is amenable to process in the forum state. *LSI Indus. Inc. v. Hubbell Lighting*, 232 F.3d 1369, 1371 (Fed. Cir. 2000).

blood collection activities at residents of Pennsylvania. The record contains evidence suggesting that McBride voluntarily collected cord blood in Pennsylvania until May 27, 2003. These collections provide McBride with a commercial benefit because she charged the patients for the service of collecting the umbilical cord blood at the time of birth. In light of this evidence, McBride purposefully directed her cord blood collection activities at the Commonwealth of Pennsylvania.

C.  **PharmaStem's Patent Infringement Claim Against McBride Arises Out of Or Relate To Her Cord Blood Collection Activities in the State of Pennsylvania.**

Regarding the second part of the due process analysis, PharmaStem's claims of infringement against McBride "aris[e] out of or relate to" McBride's contacts with Pennsylvania. McBride's contacts with Pennsylvania include McBride's collection of cord blood for storage for future therapeutic uses, which serves as the basis for PharmaStem's infringement claim of the '427 Patent. Taking the allegations set forth in PharmaStem's Complaint as true, McBride's actions infringe the '427 Patent, or at the very least, relate to the infringement of the '427 Patent. Given the nature of these claims, it is beyond dispute that there is a sufficient connection between McBride's contacts with Pennsylvania and the subject matter of PharmaStem's litigation.[3] *See Akro*, 45 F.3d at 1549 (personal jurisdiction is proper where plaintiff's claim arose out of or related to the defendant's activities purposefully directed to Ohio residents).

D.  **Personal Jurisdiction Over McBride is Reasonable and Fair.**

In addressing the reasonableness of exercising jurisdiction, the burden is on McBride to "present a compelling case that the presence of some other considerations would render

---

[3] Notably, McBride does not address this portion of the due process analysis in her motion to dismiss, but rather argues that there are not sufficient minimum contacts with Pennsylvania to support the Court's exercise of general and specific personal jurisdiction over her.

jurisdiction unreasonable." *Inamed*, 249 F.3d at 1363. The inquiry would depend on an evaluation of several factors: (1) the burden on McBride, (2) the interests of the forum state, Pennsylvania, (3) PharmaStem's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Inamed*, 249 F.3d at 1363. If the first two Federal Circuit due process factors have been satisfied, it is a "rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills*, 21 F.3d at 1568.

Here, McBride has not met her burden of establishing a "compelling case" that would "render jurisdiction unreasonable[.]" *Akro*, 45 F.3d at 1549 (despite bearing the burden on this issue, the defendant pointed to no considerations rendering jurisdiction unreasonable). PharmaStem has an interest in maintaining its suit in the court that it has chosen as a result of co-defendant CorCell, Inc.'s corporate presence and McBride's cord blood collection activities. That it is to PharmaStem's advantage to adjudicate the dispute in the district court for the Eastern District of Pennsylvania does not militate against its right to have access to that court. *Beverly Hills*, 21 F.3d at 1568-69 ("The fact that it has unique attributes of which plaintiff apparently has an interest in taking advantage does not change the case.); *see also Akro*, 45 F.3d at 1549. In addition, Pennsylvania has a strong interest in adjudicating injuries that occur within the state, including patent infringement actions. *Beverly Hills*, 21 F.3d at 1568 (the state of Virginia's interest in discouraging injuries within its boundaries extends to design patent infringement actions); *Akro*, 45 F.3d at 1549. Moreover, the close proximity between Pennsylvania and Delaware and the availability of modern communications and transportations, render McBride's

burden to defend a lawsuit in a neighboring state insufficient to outweigh PharmaStem's and Pennsylvania's interest in adjudicating the dispute in this forum. *Beverly Hills*, 21 F.3d at 1569.

Finally, McBride cannot demonstrate a compelling case of unreasonableness. *Beverly Hills*, 21 F.3d at 1568, *Deprenyl*, 297 F.3d at 1356. McBride's only argument is that she lacks sufficient contacts with Pennsylvania to justify the exercise of personal jurisdiction. Given McBride's cord blood collection activities and relationship with Pennsylvania corporation CorCell, this argument should be rejected. Based on McBride's Pennsylvania connections, there is nothing unfair or unreasonable about requiring her to defend against a lawsuit in this state.

## CONCLUSION

Based on the reasons set forth above, PharmaStem respectfully requests the Court to deny McBride's motion to dismiss for lack of personal jurisdiction.

DATED: October 7, 2004            By: _____
                                  Michael D. LiPuma, Atty. I.D. #74790
                                  Law Office of Michael LiPuma
                                  Two Penn Center, Suite 200
                                  Philadelphia, PA 19102
                                  Attorneys for Plaintiff
                                  PharmaStem Therapeutics, Inc.

OF COUNSEL:
PAUL J. ANDRE, Bar No. 196585
LISA KOBIALKA, Bar No. 191404
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350