## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC.,    :

       Plaintiff,    :

    v.    :

    :    Civil Action No. 2:04-CV-03561-RK

CORCELL, INC., MOLLY McBRIDE, M.D.  :
and CARLO M. CROCE, M.D.    :

       Defendants.    :

    :

CORCELL, INC.,    :

       Counterclaim-Plaintiff,  :

    :

    v.    :

    :

PHARMASTEM THERAPEUTICS, INC.,  :
NICHOLAS DIDIER, and STEMBANC,  :
INC.,    :

       Counterclaim-Defendants.  :

## ORDER

      AND NOW, this _____ day of _____, 2004, upon consideration

of counterclaim-defendant Stembanc Inc.'s motion to dismiss and accompanying memorandum

of law, and counterclaim plaintiff CorCell Inc.'s response thereto, it is hereby ORDERED that

the motion to dismiss is GRANTED and this action is DISMISSED against Stembanc, Inc.

WITH PREJUDICE.

           By:   _____

                Kelly, U.S.D.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC.,   :

      Plaintiff,      :

    v.          :

             :  Civil Action No. 2:04-CV-03561-RK

CORCELL, INC., MOLLY McBRIDE, M.D. :

and CARLO M. CROCE, M.D.     :

             :

       Defendants.  :

             :

CORCELL, INC.,        :

      Counterclaim-Plaintiff, :

             :

    v.          :

             :

PHARMASTEM THERAPEUTICS, INC.,  :

NICHOLAS DIDIER, and STEMBANC,  :

INC.,            :

      Counterclaim-Defendants. :

## COUNTERCLAIM-DEFENDANT STEMBANC, INC.'S MOTION TO DISMISS COUNTERCLAIM-PLAINTIFF'S COUNTERCLAIM

Counterclaim defendant Stembanc, Inc. ("Stembanc"), by and through its

undersigned counsel, hereby moves this Court pursuant to <u>Federal Rule of Civil Procedure</u>

12(b)(6) for an Order dismissing this action with prejudice.  In support of this motion, Stembanc

relies on the attached Memorandum of Law and incorporates the same as if set out in full.

Respectfully submitted,

                   <u>lrw384</u>

Larry R. Wood, Jr. (72138)
Kathleen A. Mullen  (84604)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

OF COUNSEL:
Samuel B. Shepherd, Esquire
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000


Dated:  October 20, 2004

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHARMASTEM THERAPEUTICS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 2:04-CV-03561-RK |
| CORCELL, INC., MOLLY McBRIDE, M.D. | : | |
| and CARLO M. CROCE, M.D. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| CORCELL, INC., | : | |
| Counterclaim-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PHARMASTEM THERAPEUTICS, INC., | : | |
| NICHOLAS DIDIER, and STEMBANC, | : | |
| INC., | : | |
| | : | |
| Counterclaim-Defendants. | : | |

## COUNTERCLAIM-DEFENDANT STEMBANC INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Stembanc, Inc. ("Stembanc"), by and through its undersigned counsel, submits the

following Memorandum of Law in Support of its Motion to Dismiss this action filed against it by

Counterclaim-Plaintiff CorCell, Inc. ("CorCell") pursuant to Federal Rule of Civil Procedure

12(b)(6).

## **Preliminary Statement**

CorCell, Inc. ("CorCell") has asserted three causes of action against Stembanc, Inc. ("Stembanc") based on statements in advertisements and a press release that Stembanc allegedly made concerning ongoing patent infringement suits between PharmaStem Therapeutics, Inc. ("PharmaStem") and a number of defendants, including CorCell. According to CorCell's own allegations, however, the statements Stembanc allegedly made were non-actionable opinion or were demonstrably true and non-misleading. Therefore, because CorCell has failed to state any claim upon which relief may be granted, Stembanc respectfully requests that this Court dismiss CorCell's Counterclaims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

CorCell's first Counterclaim for false advertising under section 43(a) of the Lanham Act ("Section 43(a)") and its third counterclaim for commercial disparagement/trade libel both fail because they are founded on three non-actionable statements allegedly made by Stembanc. Two of the alleged statements – that physicians might be found liable for patent infringement and that PharmaStem may obtain permanent injunctive relief against a number of defendants – are statements concerning unsettled matters of law. Such statements are opinions per se and are not actionable under Section 43(a) or under Pennsylvania's law of commercial disparagement/trade libel. The final alleged statement – that Stembanc has the "technical integrity and legal legitimacy you can count on" – does not even identify CorCell and is both true and non-actionable opinion puffery.

CorCell's remaining counterclaim for interference fails as a matter of law because CorCell has not pled the requisite elements and because Stembanc's statements are privileged against liability under Pennsylvania's common law.

## Statement of Facts

This motion arises from the counterclaims asserted by CorCell against Stembanc in the Answer of Defendants CorCell, Inc. and Carlo M. Croce, M.D. to Plaintiff's Complaint and Counterclaim of CorCell, Inc. ("Answer and Counterclaims"), filed with this Court on September 20, 2004. CorCell filed the Answer and Counterclaims in response to a suit for patent infringement initiated in this Court by PharmaStem on July 28, 2004 against CorCell, Molly McBride, M.D., and Carlo M. Croce, M.D. ("Underlying Suit"). CorCell purportedly joined Stembanc as a new counterclaim defendant in the Underlying Suit without obtaining an Order of this Court permitting joinder.

Stembanc is an Ohio corporation with its principal place of business in Chardon, Ohio. It provides collection, processing, and cryopreservation services for stem cells obtained from the umbilical cord and placental blood of a newborn child for the future potential benefit of the child (autologous banking) or for first-degree relatives, such as a sibling or parent. CorCell is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania and purports to be "in the business of private banking of umbilical cord blood." Answer and Counterclaims ¶¶ 1, 7; Complaint for Patent Infringement And Demand For Jury Trial ("Underlying Complaint") ¶ 2. PharmaStem is also a Delaware corporation with its principal place of business in Larchmont, New York, and is the owner of U.S. Patents Nos. 6,461,645 B1 (the "'645 Patent") and 6,569,427 B1 (the "'427 Patent"), among others. See Underlying Complaint ¶¶ 1, 7, 8. The '645 Patent is "directed to cryopreserved compositions of fetal or neonatal hematopoietic stem and progenitor cells obtained from the umbilical cord or placental blood of a newborn human ("Cord Blood")," and the '427 is "directed to methods of using and storing Cord Blood for therapeutic use." Underlying Complaint ¶ 9. In 2003, Stembanc obtained a license to practice the teachings contained in the patent portfolio of PharmaStem,

including those in the '645 and '427 Patents. See Answer and Counterclaims ¶ 4. PharmaStem's

complaint in the Underlying Suit alleges that CorCell infringed the '645 and '427 Patents.

PharmaStem and CorCell are also currently engaged in another patent

infringement suit in the United States District Court for the District of Delaware, PharmaStem

Therapeutics, Inc. v. ViaCell, Inc. et al., C.A. No. 02-148-GMS (D.Del. filed Feb. 22, 2002)

("Delaware Action"), in which PharmaStem alleged that CorCell and the other defendants

infringed U.S. Patents Nos. B1 5,004,681 (the "'681 Patent") and 5,192,553 (the "'553 Patent").

On October 29, 2003, the jury in the Delaware Action returned a unanimous verdict on all claims

in favor of PharmaStem. See Exhibit D (Jury Verdict Form).[1]  The jury found that CorCell had

infringed the '681 and '553 Patents and that CorCell's infringement was willful. See id.; Answer

and Counterclaims ¶ 10. Judgment was entered on October 30, 2003. See Exhibit E

(Judgment).[2]  Subsequently, CorCell joined in a motion for judgment as a matter of law and, in

the alternative, a motion for a new trial or a remittitur. See Answer and Counterclaims ¶ 11.  On

September 15, 2004, the Delaware District Court granted the motions of CorCell and the other

defendants in part, entering judgment that the defendants did not infringe the '553 Patent and

ordering a new trial on the issue of infringement of the '681 Patent. See id. at 11.

CorCell has asserted three causes of action against Stembanc.  CorCell first

alleges that Stembanc violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). See id. at

---

[1]  A court may take judicial notice of publicly filed documents on a motion to dismiss. See, e.g., In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1331 (3d Cir. 2002) (upholding district court's judicial notice on a motion to dismiss of "(1) documents relied upon in the Complaint . . . (2) documents filed with the SEC, but not relied upon in the Complaint . . . and (3) stock price data compiled by the Dow Jones news service"); Kennedy v. Borough of South Coatesville, Civ. No. 98-6558, 1999 U.S. Dist. LEXIS 10018, *3 (E.D. Pa. June 25, 1999) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings.") (internal citation omitted).

[2]  This Court may also take judicial notice of the Judgment in the Delaware Action. See supra, note 1.

¶¶ 28-35.  The two remaining claims purportedly sound under Pennsylvania's common law:  (1) intentional interference with contractual or other economic relationships; and (2) commercial disparagement/trade libel.  <u>See</u> Answer and Counterclaims ¶¶ 36-46.  These causes of action are all based upon three statements that CorCell alleges Stembanc made in "advertisements placed in <u>Pregnancy</u> magazine, and in press releases and website postings…."  <u>Id</u>. at ¶ 25.  The three statements CorCell complains about appeared in two places:  (1) in the <u>Pregnancy</u> magazine advertisement[3]; or (2) in one press release that was briefly posted on Stembanc's website.  The advertisement and press release are attached to this motion and quoted in relevant parts below for the convenience of the Court.  <u>See</u> Exhibits A, B (<u>Pregnancy</u> advertisements); Exhibit C (Press release dated August 2, 2004).[4]

    The first statement CorCell complains about is an alleged opinion offered by Stembanc that "suggested that obstetricians would be liable for infringement if they recommended the services of CorCell or other cord blood banks not licensed by PharmaStem, or if they collected cord blood for patients who chose to store cord blood with one of those banks." Answer and Counterclaims ¶ 25.  CorCell does not offer a quotation showing Stembanc issuing such a statement and for good reason:  Stembanc did not state that obstetricians would be liable for patent infringement by collecting cord blood for CorCell or other unlicensed banks.  Instead, Stembanc stated the opinion in both the <u>Pregnancy</u> advertisement and in the press release that

---

    [3] There were two versions of the advertisement, but they differed only in the mention of a company other than CorCell.  <u>Compare</u> Exhibit A to B (<u>Pregnancy</u> advertisements).

    [4] This Court can consider these documents on a motion to dismiss.  <u>See</u> In re Burlington Coat Factory <u>Securities Litigation</u>, 114 F.3d 1410, 1426 (3d Cir. 1997) ("'[A] document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'") (emphasis in original) (citations omitted).

physicians who collect cord blood for infringing companies "may" face the risk of liability for

patent infringement.

For example, the advertisement in <u>Pregnancy</u> magazine – which does not mention

CorCell – contains the following text:

> Stembanc has these rights – the rights to the technologies needed for both
> technically sound and legally legitimate cord blood stem cell processing and
> cryopreservation. Recently our competitors (including Viacord, Cord Blood
> Registry (CBR), and Cryocell) were found guilty of willful patent infringement.
> Other companies lack the needed technology rights as well.
>
> We feel it is important for you to know that <u>this court verdict not only jeopardizes
> the infringers' ability to continue operations, but also establishes that physicians
> who knowingly work in concert with these companies may also be implicated in
> the process of patent infringement</u>.
>
> Obviously, parents choose Stembanc once they understand other companies
> face the prospect of business cessation.
>
> *Licensed under U.S. Patents 5,004,681, 5,192,553, 6,461,645, 6,569,427, and
> 6,605,275.

Exhibit A (<u>Pregnancy</u> advertisement) (emphasis added).  The text makes clear that Stembanc did

not make a categorical statement of liability but rather offered the opinion that "physicians who

knowingly work in concert with these companies <u>may</u> also be implicated in the process of patent

infringement."  Exhibit A (<u>Pregnancy</u> advertisement) (emphasis added).  A similar statement

appeared in the press release:

> In addition, following numerous inquiries by concerned physicians, a clarification
> was sent in June 2004 to U.S. obstetricians confirming the fact that obstetricians
> risk legal liability by collecting cord blood for infringing companies.
> Obstetricians are now refusing to collect the cord blood for the infringing
> companies, even in cases in which parents have already paid.

Exhibit C (Press Release dated August 2, 2004) (emphasis added).  The excerpted portion of the

release reports on the letter sent by PharmaStem in June 2004.  <u>See</u> Answer and Counterclaims ¶

12.  CorCell does not allege that Stembanc was responsible for the letter, and again, the release

merely identifies a "risk" of legal liability. Both of these statements were based in part on the jury verdict form from the Delaware Action in which the jury answered "YES" to the question, "Has PharamStem proven by a preponderance of the evidence that defendants and the transplant physicians are acting in concert or working together to complete the process of infringement of claims 13, 19, 47, 53, or 57 of the '553 patent by performing each and every one of the steps of those claims?" Exhibit D (Jury Verdict Form); see also Answer and Counterclaims ¶ 10. CorCell does not dispute that the jury returned such a verdict. See Answer and Counterclaims ¶ 10.

CorCell next alleges that Stembanc "attacked CorCell and the other cord blood banks not licensed by PharmaStem for not revealing to patients an alleged threat of cessation of business, which was and is non-existent, as confirmed by the ruling of the Delaware Court." Answer and Counterclaims ¶ 25. CorCell again fails to identify where this alleged "attack" appeared. To the extent Stembanc made any such statement, however, it was contained in the press release:

> Following this verdict, the patent holder has asked the Court to grant a permanent injunction against these companies. An injunction would stop the cord blood storage operations of the infringers.
>
> The parents claim infringing companies sold their services without revealing parents' risk, despite one of the infringing companies' written disclosure to the Securities and Exchange Commission that "There is substantial doubt as to whether (ViaCell/ViaCord's) efforts to overturn the jury's verdict will be successful, as in general courts are reluctant to overturn jury verdicts. In addition, in a majority of cases where a jury finds patent infringement, the court issues a permanent injunction." (ViaCell S-1 Filing with the U.S. Securities and Exchange Commission, April 5, 2004, page 9).

Exhibit C (Press release dated August 2, 2004).  CorCell does not deny that parents made claims of deception nor does CorCell deny that ViaCell, one of the co-defendants in the Delaware Action, issued the quoted statement in its public SEC filings.

Finally, CorCell alleges that Stembanc made statements "suggesting that CorCell [is] unethical or lacking in 'technical integrity or legal legitimacy.'"  Answer and Counterclaims ¶ 25.  Again, CorCell does not attach a document or otherwise identify where Stembanc made such a statement regarding CorCell.  The only statement that resembles CorCell's allegation appeared in Stembanc's <u>Pregnancy</u> magazine advertisement, which does not mention CorCell:

> Stembanc is the only company that has operated from its beginning with a license to use the patented technologies for umbilical cord and placental blood preservation and its therapeutic use* -- giving you the assurance of both technical integrity and legal legitimacy you can count on.  Stembanc's laboratory personnel have years of experience in the processing and cryopreservation of these precious stem cells that are unique to your family.
>
> You now know many of the reasons for preserving your newborn's unique birth stem cells for future use. We also know that you want to preserve your child's precious stem cells with a company that has rights to operate in the future.
>
> Stembanc has these rights – the rights to the technologies needed for both technically sound and legally legitimate cord blood stem cell processing and cryopreservation.  Recently, our competitors (including Viacord, Cord Blood Registry (CBR), and Cryocell) were found guilty of willful patent infringement. Other companies lack the needed technology rights as well.
> ***
> *Licensed under U.S. Patents 5,004,681, 5,192,553, 6,461,645, 6,569,427, and 6,605,275.

Exhibit A (<u>Pregnancy</u> advertisement) (emphasis added).

## <u>Standards For Granting Motions Under Fed.R.Civ.P. 12(b)(6)</u>

The court should dismiss a complaint when it fails to allege or state a viable claim for relief.  <u>See</u> <u>Fed. R. Civ. P.</u> 12(b)(6); <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Although facts alleged in the complaint must be accepted as true for purposes of the motion to dismiss, the Court need not accept as true conclusory allegations or legal

characterizations, nor need it accept unreasonable inferences or unwarranted deductions of fact.

See id. ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when

deciding a motion to dismiss") (citations omitted); Qwest Communications v. Cyber-Quest, Inc.,

124 F.Supp.2d 297, 300 (M.D. Pa. 2000) ("The court need not assume that the plaintiff can prove

facts he has not alleged. . . nor credit the plaintiff's 'bald assertions,' 'unsupported conclusions,'

'unwarranted inferences,' or 'legal conclusions masquerading as factual conclusions'") (citations

omitted). Furthermore, a "'document *integral to or explicitly relied* upon in the complaint' may

be considered 'without converting the motion [to dismiss] into one for summary judgment.'" In

re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis

in original) (citations omitted). Finally, the Court may also consider documents subject to

judicial notice on a motion to dismiss. See, e.g., In re NAHC, Inc. Securities Litigation, 306

F.3d 1314, 1331 (3d Cir. 2002) (upholding district court's judicial notice on a motion to dismiss

of "(1) documents relied upon in the Complaint . . . (2) documents filed with the SEC, but not

relied upon in the Complaint . . . and (3) stock price data compiled by the Dow Jones news

service"); Kennedy v. Borough of South Coatesville, Civ. No. 98-6558, 1999 U.S. Dist. LEXIS

10018, *3 (E.D. Pa. June 25, 1999) ("On a motion to dismiss, we may take judicial notice of

matters of public record outside the pleadings.") (internal citation omitted).

**Argument**

I.    **CORCELL HAS NOT STATED A CLAIM UNDER THE LANHAM ACT**

To state a claim for false advertising under section 43(a) of the Lanham Act

("Section 43(a)") the plaintiff must allege, among other things, "1) that the defendant has made

false or misleading statements as to his own product [or another's]; 2) that there is actual

deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that

the deception is material in that it is likely to influence purchasing decisions . . . ." <u>Johnson &</u>

<u>Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.</u>,

19 F.3d 125, 129 (3d Cir. 1994) (citations omitted) (alterations in original); <u>see</u> <u>Lawman Armor</u>

<u>Corp. v. Master Lock Co.</u>, No. CIV.A. 02-6605, 2004 WL 362210 (E.D. Pa. Feb. 27, 2004)

(Kelly, J.). Consequently, "[o]nly statements of fact capable of being proven false are actionable

under the Lanham Act because when personal opinions on nonverifiable matters are given, the

recipient is likely to assume only that the communicator believes the statement, not that the

statement is true." <u>Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.</u>, No. CIV.A.00-

CV-3683, 2001 WL 856946, at * 11 (E.D. Pa. Jul. 26, 2001) (citing <u>Coastal Abstract Service,</u>

<u>Inc. v. First American Title Ins. Co.</u>, 173 F.3d 725, 731 (9th Cir. 1999) ("Statements of opinion

are not generally actionable under the Lanham Act")). Furthermore, statements concerning

unsettled legal questions are not actionable under Section 43(a) because such statements are <u>per</u>

<u>se</u> opinions. <u>See, e.g.</u>, <u>Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.</u>, 902 F.2d 222,

232 (3d Cir. 1990) (rejecting Lanham Act claim because "[a]s we have explained, the issue of

whether an ingredient is properly labeled 'active' or 'inactive' under FDA standards is not

properly decided as an original matter by a district court in a Lanham Act case"); <u>Coastal</u>, 173

F.3d at 731 ("Absent a clear and unambiguous ruling from a court or agency of competent

jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or

regulation are opinion statements, and not statements of fact"); <u>Rodriguez v. Panayiotou</u>, 314

F.3d 979, 986 (9th Cir. 2002) (same); <u>Dial A Car, Inc. v. Transportation, Inc.</u>, 82 F.3d 484, 489

(D.C. Cir. 1996) ("In short, it would be unthinkable for a federal court to suggest that a regulated

taxicab company can be held liable under the Lanham Act for failing to anticipate the *court's*

subsequent interpretation of a municipal regulation") (emphasis in original).

-10-

CorCell has not alleged a valid cause of action under Section 43(a) because the three statements on which CorCell bases its claim are either demonstrably true or non-actionable opinions. First, Stembanc's statements that physicians who collect cord blood for infringing companies may be held liable for patent infringement are statements of opinion concerning an unsettled legal question. Indeed, the underlying suit in this case involves the issue of whether an obstetrician, Defendant Dr. Molly McBride, M.D., is liable for patent infringement based on her collection of cord blood. See Defendant McBride's Motion to Dismiss at 2 (filed Sept. 20, 2004) (admitting Dr. McBride is "an obstetrician/gynecologist who practices as part of All About Women Obstetrics and Gynecology," that "she has collected umbilical cord blood at the request of patients wishing to have it stored," and that PharmaStem has accused her of patent infringement). While CorCell may disagree with the position that obstetricians such as Dr. McBride may be liable for patent infringement, CorCell is absolutely not permitted to sue Stembanc under Section 43(a) for taking the opposite position. See Dial A Car, Inc., 82 F.3d at 488 ("Thus, it appears that appellant is simply using the Lanham Act to try to enforce its preferred interpretation of Order No. 4 instead of adjudicating the issue before the Commission").

Second, Stembanc's statements that CorCell and the other defendants in the Delaware Action were "faced with the prospect of business cessation" are, again, statements of opinion about an unsettled legal question. As CorCell is aware, PharmaStem's request for a permanent injunction in the Delaware Action and in this action have not yet been finally adjudicated. Moreover, CorCell does not deny that PharmaStem is seeking permanent injunctive relief against it.

-11-

Finally, to the extent CorCell's claim under Section 43(a) is founded on Stembanc's statement in the <u>Pregnancy</u> magazine advertisement that Stembanc has the "technical integrity and legal legitimacy you can count on," CorCell's claim fails because the statement is both true and opinion puffery.  CorCell does not dispute that Stembanc is a licensee of PharmaStem's or that Stembanc operates its business legally; therefore, the statement that Stembanc has "legal legitimacy" is literally true and non-misleading.  Furthermore, CorCell makes no allegations indicating that Stembanc lacks "technical integrity . . . you can count on," and, in any event, that statement is non-actionable opinion puffery under Section 43(a).  <u>See,</u> <u>e.g.</u>, <u>U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia</u>, 898 F.2d 914, 922 (3d Cir. 1990) ("Mere puffing, advertising 'that is not deceptive for no one would rely on its exaggerated claims,' is not actionable under § 43(a)") (citations and internal quotes omitted).  Indeed, the Third Circuit, when faced with the similar statement, "Better than HMO.  So good, it's Blue Cross and Blue Shield," held the statement was "the most innocuous kind of 'puffing,' common to advertising and presenting no danger of misleading the consuming public" and found that "no cause of action lies with regard" to that advertisement.  <u>See</u> <u>id</u>. at 926.

Because CorCell's claim under Section 43(a) is founded on demonstrably true statements or non-actionable opinion, Stembanc respectfully requests that this Court dismiss CorCell's first counterclaim.[5]

---

[5]  The Federal Circuit has also held that a patentee's statements to potential infringers of its patents are not actionable under Section 43(a) unless made with malice.  <u>See</u> <u>Golan v. Pingel</u> <u>Enterprise, Inc.</u>, 310 F.3d 1360, 1371 (Fed. Cir. 2002) ("Consequently, patentees do not violate the rules of fair competition by making accurate representations, and are allowed to make representations that turn out to be inaccurate provided they make them in good faith"); <u>see</u> <u>also</u> <u>Lawman Armor Corp. v. Master Lock Co.</u>, No. CIV.A. 02-6605, 2004 WL 362210 (E.D. Pa. Feb. 27, 2004) (same).  CorCell has not asserted that any of the statements allegedly made by Stembanc were made with malice.  Accordingly, as a PharmaStem licensee, Stembanc should be
(continued...)

II.    <u>CORCELL HAS NOT STATED A VALID CLAIM FOR TRADE LIBEL</u>

To state a claim for commercial disparagement/trade libel under Pennsylvania law, the plaintiff must allege "(1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity." <u>Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Co.</u>, 809 A.2d 243, 246 (Pa. 2002), (quoting Restatement (Second) of Torts § 623A (1977)); <u>see</u> <u>Brunson Communications, Inc. v. Arbitron, Inc.</u>, 239 F.Supp.2d 550, 577 (E.D. Pa. 2002) (same).[6] As discussed in Part I above, the statements on which CorCell based its claims are all either expressions of opinion concerning undetermined legal issues or are demonstrably true statements concerning Stembanc's services. Accordingly, CorCell has not alleged that Stembanc made a "false statement." Therefore, CorCell's second cause of action should be dismissed.

In addition, CorCell's cause of action for commercial disparagement/trade libel must also be dismissed because CorCell has failed to identify a "pecuniary loss resulting from the allegedly false statements" with requisite particularity. <u>See</u> <u>Harvard Eye Associates v.</u>

---------------

(continued...)

entitled to notify the public about potential infringement of the licensed patents without subjecting itself to a suit under Section 43(a).

[6] Prior to 2002, an action for commercial disparagement/trade libel could also lie for a statement of opinion if "the disparaging statement of opinion is incorrect." <u>U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia</u>, 898 F.2d 914, 924 (3d Cir. 1990). The Supreme Court of Pennsylvania changed the elements in 2002, however, by adopting the test articulated in the Restatement (Second) of Torts § 623A (1977). <u>See</u> <u>Pro Golf Manufacturing, Inc.</u>, 809 A.2d at 246; <u>Brunson Communications, Inc.</u>, 239 F. Supp. 2d at 577 ("Thus, the state courts have, very recently, indicated a substantial change in the law of commercial disparagement").

Clinitec International, Inc., No. CIV.A. 98-302, 1998 WL 408799, at *1 (E.D. Pa. 1998) ("To

state a claim for commercial disparagement, special damages must be pleaded") (citing, inter

alia, KBT Corp., Inc. v. Ceridian, Corp., 966 F. Supp. 369, 375 (E.D. Pa. 1997)); Brunson

Communications, Inc. v. Arbitron, Inc., 266 F. Supp. 2d 377, 382 (E.D. Pa. 2003) (same).  To

plead damages with sufficient particularity:

> [i]t [is] . . . necessary for the plaintiff to allege *either* the loss of particular
> customers by name, *or* a general diminution in its business, and extrinsic facts
> showing that such special damages were the natural and direct result of the false
> publication.   If the plaintiff desire[s] to predicate its right to recover damages
> upon general loss of custom, it should . . . [allege] facts showing an established
> business, the amount of sales for a substantial period preceding the publication,
> and amount of sales subsequent to the publication, facts showing that such loss in
> sales were the natural and probable result of such publication, and facts showing
> the plaintiff could not allege the names of particular customers who withdrew or
> withheld their custom.

KBT Corp., Inc., 266 F. Supp. at 375 (citations and quotes omitted) (alterations in original).

CorCell has neither identified any specific customers it lost as a result of Stembanc's statements

nor has CorCell pled facts that would excuse it from identifying such customers.  Accordingly,

on this ground as well, CorCell's second counterclaim should be dismissed.  See Brunson

Communications, Inc., 266 F.Supp.2d at 383.

## III.    CORCELL HAS NOT STATED A VALID CLAIM FOR INTERFERENCE

Under the common law of Pennsylvania, to state a claim for interference with

either an existing contractual relationship or a prospective contractual relationship, the plaintiff

must allege "(1) the existence of a contractual, or prospective contractual relation between the

complainant and a third party; (2) purposeful action on the part of the defendant, specifically

intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the

absence of privilege or justification on the part of the defendant; and (4) the occasioning of

actual legal damage as a result of the defendant's conduct." CGB Occupational Heath Therapy,

Inc. v. RHB Health Services, Inc., 357 F.3d 375, 384 (3rd Cir. 2004). CorCell has not stated a valid claim for either species of interference.

A.    **CorCell's Claim For Interference With Prospective Contractual Relations Fails Because CorCell Did Not Allege Any Prospective Contract And Because Stembanc's Statements Are Privileged**

CorCell's claim for interference with prospective contractual relations fails for two reasons. First, CorCell fails to allege the loss of a cognizable prospective contractual relation. A prospective contractual relation exists only "if there is a reasonable probability that a contract will arise from the parties' current dealings." Brunson Communications, Inc. v. Arbitron, Inc., 239 F.Supp.2d 550, 578 (E.D.Pa. 2002). The plaintiff "cannot rest its tortuous interference claim on the 'mere hope that additional contracts or customers would have been forthcoming but for defendant's interference.'" Id. (citations omitted). CorCell does not identify any prospective contract that did not finalize as a result of Stembanc's statements. Accordingly, CorCell's claim for interference with prospective contractual relations should be dismissed. See id. (dismissing interference claim in part because "[p]laintiff has not identified a single past, present or prospective customer . . . with whom it had a prospective contract which did not finalize because of Defendant's actions").

Second, CorCell's claim for interference with prospective contractual relations fails as a matter of law because CorCell has not established "the absence of privilege" protecting Stembanc's statements. In fact, CorCell's allegations instead show that Stembanc's statements are privileged under Pennsylvania's common law. Business competitors enjoy a privilege against liability for interference with prospective contractual relationships when:

(a) the relation concerns a matter involved in the competition between the actor and another and
(b) the actor does not employ wrongful means and
(c) his action does not create or continue an unlawful restraint of trade and

-15-

(d) his purpose is at least in part to advance his interest in competing with the other.

<u>National Data Payment Systems, Inc.</u>, 212 F.3d 849, 858 (3rd Cir. 2000) (quoting Restatement (Second) of Torts § 768). Although the Supreme Court of Pennsylvania has yet to adopt a definition of "wrongful means," the Third Circuit has held that "wrongful means" requires "independently actionable conduct on the part of the defendant." <u>National Data Payment Systems, Inc.</u>, 212 F.3d 849, 858 (3rd Cir. 2000); <u>CGB</u>, 357 F.3d at 389 (noting "[t]he Pennsylvania courts have yet to disagree" with holding that "wrongful means" requires "independently actionable" conduct). In this case, Stembanc's statements meet all four elements. The first requirement is met because Stembanc's statements all relate to competition between CorCell and Stembanc. Indeed, the statements appeared in an advertisement for Stembanc's services and in a press release posted on Stembanc's website. CorCell's pleadings establish that the fourth requirement is met because CorCell itself alleges that Stembanc made its statements in furtherance of Stembanc's business. <u>See</u> Answer and Counterclaims ¶ 25 (alleging statements were made "with the intent of causing customers or prospective customers of CorCell not to deal with CorCell"). The third element is satisfied because CorCell does not even allege that Stembanc's statements created or maintained any restraint of trade. Finally, as discussed in Parts I and II above, Stembanc's statements are not independently actionable. Accordingly, because Stembanc's statements are privileged under Pennsylvania law, CorCell's claim for interference with prospective contractual relationships should be dismissed on that ground as well.

**B.     <u>CorCell's Claim for Interference With Existing Contractual Relationships Fails Because CorCell Has Not Identified an Existing Contract</u>**

CorCell has failed to state a claim for interference with existing contractual relationships because CorCell has not identified any contract that was lost as a result of

Stembanc's statements. A complaint for alleged interference with existing contractual relationships must allege with whom the contractual relationship existed and identify the specific relationships. See Mollinger v. Diversified Printing Corp., CIV. A. No. 88-8301, 1989 WL 115125, at *7 (E.D.Pa.1989) ("To satisfy the Rule 8 requirement of fair notice, however, plaintiff must at least identify the specific contractual relations which defendants allegedly interfered with"); accord A.D.E. Food Services Corp. v. City of Philadelphia, 1996 WL 590906 (E.D.Pa. 1996) (J. Kelly) (granting motion for a more definite statement where plaintiff's intentional interference with contractual relations claim failed to allege specific contract or type of contract). CorCell never identifies any contract that was breached as a result of Stembanc's statements. Instead, CorCell relies entirely on its conclusory allegation that "[c]ustomers of CorCell have been prevented from fulfilling their contract with CorCell." Answer and Counterclaims ¶ 26. This "bald assertion" is not enough to sustain CorCell's cause of action. See Morse, 132 F.3d at 906. Accordingly, CorCell's claim for interference with existing contractual relationships should be dismissed.[7]

---

[7] Because CorCell has not identified any existing contractual relationship in its pleadings, Stembanc is not in a position to make additional arguments regarding this cause of action at this time. To the extent that CorCell attempts to base its claim on any contract that is terminable at will, however, Stembanc's statements would not be subject to liability because they meet the requirements for the business competitor privilege as discussed above. See CGB, 357 F.3d at 389 (noting business competitor privilege extends to an "existing contract terminable at will") (quoting Restatement (Second) of Torts § 768).

## Conclusion

For the reasons set forth above, Stembanc respectfully requests that this Court

dismiss with prejudice all claims alleged against it in this matter by CorCell, Inc.

Respectfully submitted,

Larry R. Wood, Jr. (72138)
Kathleen A. Mullen (84604)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

OF COUNSEL:
Samuel B. Shepherd, Esquire
QUINN EMANUEL URQUHART
 OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000


Dated: October 20, 2004