UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CORCELL, INC., a Delaware corporation, MOLLY MCBRIDE, MD, an individual, and CARLO M. CROCE, MD, an individual,<br><br>    Defendants.<br><br>CORCELL, INC., a Delaware corporation,<br><br>    Counterclaim-Plaintiff,<br><br>    v.<br><br>PHARMASTEM THERAPEUTICS, INC., NICHOLAS DIDIER and STEMBANC, INC.,<br><br>    Counterclaim-Defendants. | Civil Action No.:2:04-CV-03561-RK |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**

**OF ITS MOTION FOR INJUNCTION**

    PharmaStem Therapeutics, Inc. ("PharmaStem") respectfully requests the Court enter an injunction enjoining CorCell, Inc. ("CorCell") from pursuing Civil Action No. 04-1334-GMS in the District Court for the District Of Delaware ("Delaware action") because CorCell's claims in that case are either identical to CorCell's counterclaims pending before this Court or closely related to this patent infringement action, which PharmaStem filed several months before CorCell brought its claims in Delaware.

**I.      PRELIMINARY STATEMENT AND SUMMARY OF THE ARGUMENT**

On July 28, 2004, PharmaStem filed a lawsuit in this Court against CorCell alleging patent infringement ("PharmaStem's Pennsylvania action"). More than two months later, on October 15, 2004, CorCell brought a separate suit in Delaware ("CorCell's Delaware action"), raising identical claims that are already pending before this Court and claims that should have been raised as part of CorCell's compulsory counterclaims to the patent infringement claims in this action. The facts underlying CorCell's counterclaims are essentially the same as those supporting CorCell's Delaware action. This closely related, parallel case in Delaware invites inconsistent rulings and unnecessarily wastes judicial resources. Furthermore, CorCell is hoping that by presenting the same claim in two different courts, it will obtain a favorable ruling in at least one court on the claim. Also, by bringing another action, CorCell is attempting to use its claims against PharmaStem that it did not bring this case (which it should have) to forum shop, in direct violation of Fed. R. Civ. P. 13(a). Consequently, PharmaStem is seeking injunctive relief prohibiting CorCell from proceeding with its parallel Delaware action involving compulsory counterclaims to this action. Permitting CorCell to move forward with its Delaware action will mean two different jurisdictions will rule on the same and/or closely related issues, as well as reward CorCell for forum shopping.

**II.      BACKGROUND**

**A.      The Case Pending In Pennsylvania**

On July 28, 2004, PharmaStem filed a complaint for patent infringement of U.S. Patent Nos. 6,461,645 B1 ("'645 Patent") and 6,569,427 B1 ("the '427 Patent") against CorCell, Inc. ("CorCell"), and Molly McBride, MD ("Dr. McBride") and Carlo M. Croce, MD ("Dr. Croce") (collectively, "Pennsylvania codefendants") in the District Court for the Eastern District of Pennsylvania. CorCell maintains its principal place of business in Philadelphia. *See* Complaint ¶ 2. CorCell is in the business of private umbilical cord blood banking, which generally involves the collection, cryopreservation and storage of hematopoietic stem cells found in umbilical cord blood for future therapeutic use. *See* Complaint ¶ 7.

On September 20, 2004, CorCell filed an Answer and Counterclaims against PharmaStem and its CEO and President, Nicholas Didier. These counterclaims were for: federal unfair

2

competition pursuant to 15 U.S.C. § 1125 (a) ("Section 43(a) of the Lanham Act"), intentional interference with contractual or other economic relationships, and trade libel/ commercial disparagement. *See* Counts I, II, III of CorCell's Counterclaims. CorCell's claims are largely based on PharmaStem's conduct of enforcing or threatening to enforce its patents against health care providers, and its settlement agreements with such providers and agreements not to sue providers for patent infringement in exchange for the providers' agreement not to work with unlicensed cord blood banks, such as CorCell. These counterclaims revolve around the central accusation that PharmaStem made false and misleading statements when discussing the potential liability of obstetricians for infringement of PharmaStem's patents.[1] The allegedly offending statements appeared in:

(1) a June 1, 2004 letter to obstetricians, which informed obstetricians of PharmaStem's position regarding obstetricians' potential liability for patent infringement if they deal with unlicensed cord blood banks, such as CorCell. Counterclaims ¶¶ 12-13 and Exhibit A thereto.

(2) an August 2, 2004 PharmaStem press release announcing the fact that PharmaStem initiated a number of new lawsuits against unlicensed cord blood banks, including CorCell, as well as obstetricians. Counterclaims ¶¶ 14-16 and Exhibit C thereto.

(3) a letter and agreement to settle lawsuits with doctors who PharmaStem had sued for patent infringement. Counterclaims ¶ 17 and Exh. D thereto.

(4) a letter and Amnesty Agreement sent to doctors, which provided that PharmaStem covenants not to sue the doctor if they agree not to collect cord blood or market or offer the service of cord blood collection in connection with certain unlicensed cord blood banks, such as CorCell. Counterclaims ¶ 18 and Exh. E thereto.

(5) a September 20, 2004 press release which allegedly mischaracterizes the post trial rulings made in the Delaware Action. Counterclaims ¶ 24 and Exhibit F thereto.

### B.    The Case Pending In Delaware

Shortly after answering PharmaStem's complaint and more than two months after PharmaStem initiated this action, on October 15, 2004, CorCell filed joined a recently-filed action in the District Court for the District of Delaware. *See* Exh. 1 (CorCell's Delaware complaint). In the Delaware action, CorCell has asserted the following claims against PharmaStem:

---

[1] PharmaStem's Motion To Dismiss CorCell's Counterclaims provides a more detailed discussion of these claims.

3

> (1) Violation of 15 U.S.C. §§1-2 for unreasonable restraint of trade and attempted monopolization based on PharmaStem's filing and settling of lawsuits against medical care providers, such the Pennsylvania providers;
> (2) Violation of 15 U.S.C. §1125(a) for federal unfair competition based on PharmaStem's publication of certain statements regarding its filing and settlement of lawsuits and potential lawsuits with medical care providers, such as the Pennsylvania providers;
>
> (3) Violation of Section 43(a) of the Lanham Act;
>
> (4) Tortious interference with contract and prospective business relationships.

*See* Counts VI, VIII, IX of Exh. 1 (CorCell's Amended Delaware complaint). Notably, the Section 43(a) claim and tortious interference claims are the same claims CorCell brought in this case with its Counterclaims and is based on the same alleged unlawful conduct of PharmaStem.

Furthermore, like CorCell's counterclaims in this case, the key to virtually all of CorCell's claims in the Delaware action turns in large part on the issue of whether medical care providers, such as the Pennsylvania codefendants and other physicians who collect umbilical cord blood for unlicensed cord blood banks, such as CorCell, can be liable for infringement of one of PharmaStem's patents. In fact, CorCell explicitly pled in the Delaware action that PharmaStem could not have a good faith belief that physicians could be liable for infringement of its patents for the collection and shipment to an unlicensed cord blood bank of umbilical cord blood stem cells for future therapeutic use. Exh. 1 ¶42.

### C. Prior Patent Litigation Between The Parties

CorCell's decision to file an action in Delaware is likely based on a previous action involving different patents that went to trial last October in the District of Delaware. In February of 2002, nearly three years ago, PharmaStem brought an action in Delaware ("2002 Delaware action") against CorCell and seven competing umbilical cord blood banks for infringement of two of PharmaStem's patents, U.S. Patent Nos. 5,004, 681 ("the '681 Patent") and 5,192, 533 ("the '553 Patent"). Notably, these patents are not at issue in this case. PharmaStem prevailed at trial, winning a jury verdict of willful infringement against CorCell, and several of its competitors. In September of 2004, however, the Delaware Court reversed the jury's finding of infringement regarding the '553 Patent, and ordered a retrial regarding the extent of CorCell's infringement of the '681 Patent. The parties have filed other motions to certify the Court's post-trial rulings for appeal, which are also still pending.

4

### III. ARGUMENT

**1. PharmaStem Is Entitled to Injunctive Relief Because CorCell Has Engaged In Forum Shopping By Filing An Action Involving Claims That Have Been Or Should Have Been Brought In This Case.**

**a. CorCell Should Not Be Permitted To Forum Shop Its Claims When An Earlier Filed Case Is Already Pending In This Court Involving The Same Subject Matter.**

PharmaStem is entitled to injunctive relief because CorCell's blatant forum shopping is explicitly prohibited by Rule 13(a) of the Federal Rules of Civil Procedure. Rule 13(a) provides in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

Fed. R. Civ. P. 13(a). As discussed below, CorCell's Delaware action necessarily depends upon the outcome of this case and therefore is inextricably related to this patent action as CorCell's Delaware action is almost entirely based on the patent infringement allegations of this case. Additionally, the new antitrust claims CorCell brought in the Delaware action are based on the same facts set forth in CorCell's counterclaims in this case. Thus, they constitute compulsory counterclaims as they arise out of the same transaction or occurrence that is the subject of both PharmaStem's patent claims and CorCell's counterclaims.

Furthermore, CorCell has presented *identical* claims of federal unfair competition and intentional interference to two different courts. These claims are based on the same facts. A comparison of CorCell's complaint in the Delaware action and CorCell's counterclaims in this case reveals that the allegations are nearly identical verbatim. Presumably, CorCell is hoping that it will obtain a favorable ruling on the same claims from at least one court and obtain a favorable ruling on its antitrust claims in Delaware, as that Court recently overturned a jury determination that CorCell was willfully infringing two of PharmaStem's patents.

This Court has appropriate jurisdiction over PharmaStem's patent claims against CorCell, a company based in Philadelphia. The '645 and '427 Patents at issue in this case were never before the Court in Delaware, and there has never been any ruling in any Court regarding CorCell's or any

5

provider's liability of these two patents in Delaware or any other court. Furthermore, CorCell has already conceded that this Court has jurisdiction over its claims, as it already brought as counterclaims in this case an unfair competition and intentional interference claim based on the same allegations in the Delaware action. CorCell's Delaware action is blatant forum shopping, which is specifically prohibited by the Federal Rules of Civil Procedure and PharmaStem requests injunctive relief to prevent CorCell from proceeding with its Delaware action.

### b. CorCell Should Have Brought Its Claims As Compulsory Counterclaims In This Action.

Without question, the antitrust claims in CorCell's Delaware action present compulsory counterclaims to this action. Indeed, CorCell felt that its federal unfair competition and intentional interference claims were compulsory counterclaims, as they presented them to this Court. If CorCell is not enjoined, there will be two cases pending contemporaneously involving the same subject matter and identical claims, which would be a waste of judicial resources, and which would create the possibility of inconsistent rulings. As described in further detail below, a key allegation and primary basis underlying all of CorCell's claims against PharmaStem is that PharmaStem is allegedly engaging in unlawful conduct by bringing patent infringement cases, such as this one, and enforcing its patent rights against providers.

In this action, PharmaStem is asserting that the Pennsylvania codefendants are liable for infringement of PharmaStem's '427 Patent, a question that has never been addressed by the Court in Delaware (as this patent has never been before the Delaware Court). CorCell's lawsuit in Delaware against PharmaStem (and only PharmaStem) is based on the allegation that PharmaStem has engaged in federally prohibited antitrust behavior, *inter alia*, because it is enforcing or has threatened to enforce its patents against providers and it has publicized and executed settlement agreements with providers and agreements not to sue providers for patent infringement in exchange for the providers' agreement not to work with unlicensed cord blood banks, such as CorCell. This is the very question to be answered in this case and is the same basis for its counterclaims in this case.

In the 3rd Circuit, there is a simple test for whether a counterclaim is a compulsory counterclaim. For CorCell's claims in the Delaware action to qualify as compulsory counterclaims

6

in this case, "there need not be a precise identity of facts between the claim and the counterclaim; rather the relevant inquiry is whether the counterclaim bears a logical relationship to an opposing party's claim." *Transamerica Occidental Life Ins. Co.,* 292 F.3d at 389 (3rd Cir. 2002), quoting *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3rd Cir. 1978) (internal punctuation omitted). In other words, a claim is a compulsory counterclaim if it is "logically related" to a claim in the Complaint. See *Servian v. Health Data Sciences Corp.*, 1992 WL 1747051 (E.D. Pa. 1992) (Kelly, J.) (dismissing claim that should have been brought as counterclaim to earlier –filed claim in a different district) (citing *Great Lakes Rubber Corp. v. Herbert Hoover Co*, 268 F. 3d. 631 (3d Cir. 1961)). The claims at issue are "logically related" if, as here, separate trials on the parties' claims would involve a substantial duplication of effort and time by the parties and the courts. Id. There is more than a "logical relationship" between PharmaStem's patent claims and CorCell's claims in Delaware, as they involve an identical inquiry. PharmaStem, here, explicitly claims that providers are liable for patent infringement. CorCell's claims in Delaware revolve around a determination of whether providers can appropriately be held liable for patent infringement of a PharmaStem patent.

In CorCell's Delaware action, CorCell explicitly pled both that obstetricians are not liable under any PharmaStem patent, and that PharmaStem could not have a good faith belief that a provider could be liable for patent infringement. *See* Exh. 3 ¶ 42 ("under no proper interpretation of any claim of the PharmaStem Patents would an obstetrician be liable for patent infringement based merely on collecting umbilical cord blood at the time of a delivery. PharmaStem does not hold a good faith belief that such conduct by physicians could provide a basis for infringement liability.") Presumably, CorCell made this allegation to support its claim that PharmaStem has no right to enforce its lawful patent rights by bringing lawsuits and settling actual and prospective lawsuits against providers.[2] Thus, CorCell's claims against PharmaStem in the Delaware action and

---

[2] While PharmaStem disputes CorCell's allegations and the underlying basis for CorCell's claims against PharmaStem, for purposes of this motion, they are not substantively addressed here.

7

PHARMASTEM THERAPEUTICS, INC.'S MOTION FOR AN [/10270408.DOC]

PharmaStem's patent claims in this case are closely related and involve largely the same or identical issues of fact and law.[3]

Any ruling regarding provider liability in this case will directly impact CorCell's claims against PharmaStem as CorCell has specifically alleged in the Delaware case that there can be no provider liability for any of PharmaStem's Patents. Thus, PharmaStem asks the Court to utilize its equitable powers to enjoin CorCell from pursuing its Delaware action and require it to bring its claims in this patent case. *See Small v. Wageman,* 291 F.2d 734 (1st Cir. 1961)("the power of one federal district court to enjoin a party from undertaking to litigate the same question with the same opponent in another federal district court has most often been exercised in patent and copyright litigation.") Given the close proximity of the parties' respective claims, the very same evidence will support or refute PharmaStem's patent infringement claim in this case and CorCell's claims against PharmaStem, also supporting a finding that CorCell's claims are compulsory counterclaims. Consequently, CorCell's Delaware action has a substantial "logical relationship" to this case and should have been brought in this action as compulsory counterclaims.

Indeed, enjoining CorCell from pursuing the Delaware action would be in concert with the purpose of compulsory counterclaims, which is "avoidance of multiplicity of suits and adjudication of all causes of action between same parties at one time." *Berger v. Reynolds Metals Co.* 39 F.R.D. 313 (3rd Cir. 1966). It would also further judicial economy, the policy underlying the compulsory counterclaim rule. Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

---

[3] "Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1567 (Fed.Cir. 1988). Here, the operative facts are exactly the same as those at issue in the other court. The relevant parties are also the same. There was nothing preventing CorCell from seeking the relief sought in the Delaware action in this case.

8

### c. PharmaStem Was First To File.

The compulsory counterclaim rule works hand in hand with the "first filed" rule, which has been adopted by the 3rd Circuit. The first filed rule provides that the federal district court that first obtains jurisdiction of the issues and the parties should proceed to adjudication and to accomplish that end may properly enjoin a party before it from proceeding with subsequent, similar litigation in another federal district court. *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941), *citing Smith v. McIver,* 22 U.S. (9 Wheat) 532, 6 L.Ed. 152 (1824). The policy embodied by the first filed rule is designed to ensure that a single determination is made with regard to a controversy rather than multiple determinations by different courts, which may conflict, require duplicative litigation, and delay the ultimate resolution of the case. *Crosley,* 122 F.2d at 929.

Consequently, there can be no question that CorCell's claims against PharmaStem should be before *this* Court (if they should be brought at all) because CorCell's underlying action consists entirely of compulsory counterclaims that CorCell has raised as a new action in Delaware, months after PharmaStem brought this action and after CorCell filed its counterclaims based on the same alleged unlawful conduct.

### d. PharmaStem Will Be Irreparably Harmed Without An Injunction, And The Balancing Of Harms Unquestionably Favors PharmaStem.

PharmaStem is the only party who could be harmed here. CorCell will have precisely the same opportunity to be heard regarding its claims already presented in this forum as it would have in the District of Delaware. On the other hand, if CorCell were to be allowed to continue with its action in Delaware in violation of Fed. R. Civ. P. 13(a), then PharmaStem would be deprived of its rightful election of the Eastern District of Pennsylvania (where CorCell's principal place of business is located) as the forum for its claims of patent infringement, and CorCell would reap whatever benefits may accrue from its shopping expedition to the District of Delaware. Most important, however, is the fact that by filing its Delaware action, CorCell has invited inconsistent verdicts on identical and/or similar issues, and unnecessarily consumes both judicial resources and the resources of the parties. The balancing of the harms and the existence of irreparable harm both clearly weigh in favor of PharmaStem.

9

### e. There Is No Adverse Effect On The Public Interest.

As above, CorCell had the opportunity to file counterclaims, and in fact, did so. Therefore, it has not been prevented in any way from bringing claims it has against PharmaStem. Furthermore, not only is there no adverse effect on the public interest, it is in the public's interest to have litigation proceed expeditiously and with a minimum of unnecessary consumption of judicial resources.

### IV. RELIEF SOUGHT

PharmaStem respectfully requests that this Court grant PharmaStem injunctive relief and enter an Order as set forth in the attached [Proposed] Order. This relief includes the following:

(a) CorCell is enjoined from taking any further action in Civil Action No. 04-1334-GMS in the District Court for the District of Delaware, including but not limited to appearing at oral argument, filing any paper not authorized by this Order or subsequent Order of this court, and taking any discovery.

(b) CorCell must, within one business day, inform the District Court for the District of Delaware of this Court's Injunction by filing this Order in Civil Action No. 04-1334-GMS in the District of Delaware, and serving this Order on all parties to that action.

(c) CorCell must, within one business day, file a Stipulation of Dismissal in Civil Action No. 04-1334-GMS in the District of Delaware dismiss all claims by CorCell against PharmaStem pending in that Action.

## V. CONCLUSION

For all of the reasons set forth above, PharmaStem respectfully requests that this Court enter an Order as set forth in the attached [Proposed] Order enjoining CorCell from taking further action in Civil Action No. 04-1334-GMS in the District Court for the District Of Delaware.

DATED: October ___, 2004          By: _____
                                                        Michael D. LiPuma, Atty. I.D. #74790
                                                       Law Office of Michael LiPuma
                                                       Two Penn Center, Suite 200
                                                       Philadelphia, PA 19102
                                                       Attorneys for Plaintiff
                                                       PharmaStem Therapeutics, Inc.

OF COUNSEL:
PAUL J. ANDRE, Bar No. 196585
LISA KOBIALKA, Bar No. 191404
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350