## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHARMASTEM THERAPEUTICS, INC., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Civil Action No. 2:04-CV-03561-RK |
| v. | ) | |
| | ) | |
| CORCELL, INC., MOLLY McBRIDE, M.D. | ) | |
| and CARLO M. CROCE, M.D. | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| CORCELL, INC., | ) | |
| | ) | |
| **Counterclaim-Plaintiff** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHARMASTEM THERAPEUTICS, INC., | ) | |
| NICHOLAS DIDIER and STEMBANC, INC., | ) | |
| | ) | |
| **Counterclaim-Defendants.** | ) | |

## DEFENDANT/COUNTERCLAIM PLAINTIFF CORCELL'S MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM DEFENDANT STEMBANC, INC.'S MOTION TO DISMISS

### INTRODUCTION

Defendant/Counterclaim Plaintiff CorCell, Inc. ("CorCell") respectfully requests this Court to deny Counterclaim Defendant Stembanc, Inc.'s ("Stembanc's") Motion to Dismiss CorCell's counterclaims. Each one of CorCell's counterclaims are fully supported by the pleadings and sufficiently puts PharmaStem on notice of the claims against it and the material facts supporting those claims.

561453_1

Stembanc has improperly attempted to show that CorCell will not prevail after trial on any of its claims. It has not shown that the pleadings of CorCell are insufficient to survive a motion to dismiss for failure to state a claim. Accordingly, Stembanc's motion must be denied.

## STATEMENT OF FACTS

Plaintiff/Counterclaim Defendant PharmaStem Therapeutics, Inc. ("PharmaStem") is the assignee/owner of U.S. Patents 5,004,681 ("the '681 Patent"), 5,192,553 ("the '553 Patent"), 6,461,645 ("the '645 Patent"), 6,569,427 ("the '427 Patent") and 6,605,275 ("the '275 Patent"). *See* Answer of Defendants To Plaintiff's Complaint and Counterclaim of Corcell, Inc., ¶ 8 (hereinafter "CorCell Counterclaim"). On February 2002, PharmaStem filed suit in the United States District Court for the District of Delaware against CorCell and several other companies, alleging infringement of the '681 and '553 patents. ("the Delaware Action"). *Id.* ¶ 9.

After a jury trial in the Delaware Action, a verdict was entered in favor of PharmaStem and against CorCell and the other companies, finding the patents valid and infringed, and awarding damages to PharmaStem. *Id.* at ¶ 10. Post trial motions were timely filed, including a motion by PharmaStem for entry of a permanent injunction and motions by CorCell and the other defendants for judgment as a matter of law or for a new trial. *Id.* at ¶ 11. On September 15, 2004, a Memorandum Opinion was issued in the Delaware Action finding in favor of CorCell and the other defendants on the claim of infringement of the '553 Patent, and granting their motion for a new trial on the issue of infringement and damages with respect to the '681 Patent.

Starting June 1, 2004, Nicholas Didier, on behalf of PharmaStem (collectively "PharmaStem") sent to approximately 25,000 obstetricians and hospitals letters containing false and misleading statements including, but not limited to, the following:

> Patent infringement occurs when a person or institution practices all or part of a patented process. In the case of umbilical cord blood collection by an

> obstetrician, the Court ruled that infringement occurs even if the
> cryopreservation and storage is performed by a third party.

*See Id.* at ¶ 12. The Honorable Gregory M. Sleet of the District of Delaware, upon being notified

of PharmaStem's actions, issued an Order for Injunctive Relief on July 2, 2004 in response to a

motion filed by CorCell and the other defendants in the Delaware Action, finding that

"PharmaStem's June 1, 2004 letter to Obstetricians ("the PharmaStem Letter") contains false and

misleading statements concerning the Court's rulings to date." *Id.* at ¶ 13. Judge Sleet, who

presided over the Delaware Action, in particular found, in pertinent part, that:

> 1.    PharmaStem's June 1, 2004 letter to Obstetricians (the "PharmaStem
> Letter") contains false and misleading statements concerning this Court's rulings
> to date.    In particular, the Court finds the following statements in this
> PharmaStem Letter false and misleading:
>
>       A.    "Patent infringement occurs when a person or institute practices all or
> part of a patented process." The Court finds this statement is misleading because
> it is black letter law that in order to prove contributory infringement of a method
> patent, the <u>entire</u> patented process must be performed.    By suggesting that
> infringement would occur when only part of a process in performed, the letter is
> misleading.
>
>       B.    "In the case of umbilical cord blood collection by an obstetrician, the
> Court ruled that infringement occurs even if the cryopreservation and storage is
> performed by a third party." The Court finds this statement misleading for at least
> the following reasons. <u>First</u>, the sentence states that "the Court ruled" with
> respect to the "case" of "umbilical cord blood collection by an Obstetrician."
> This Court never made any rulings regarding conduct by obstetricians.    There
> were no such allegations advanced in the trial of this matter. <u>Second</u>, the sentence
> leaves out several important elements that must be proved to show contributory
> infringement. The missing elements include:
>
>       (1) that there must be a <u>sale</u> or <u>offer to sell</u> by the party that is accused of
> contributory infringement,
>
>       (2) that the party accused of contributory infringement must be "acting in
> concert or working together" with the other parties whose combined
> conduct performed each and every element of the patented process, and

(3) that, under §271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements of the contributory infringement statute.

The Court finds that without these elements, the statement is misleading. Judge Sleet granted an injunction against further false or misleading communications directed to obstetricians. The injunction was granted, in part, because the PharmaStem June letter made no mention of the sale or offer to sell requirement, the "acting in concert or working together" requirement, or that the sale of a service cannot satisfy §271(c) of the Patent Act. *Id.*

In spite of Judge Sleet's order, PharamStem, after filing a separate infringement action against CorCell, disseminated a press release (the "Press Release") that contained similar false and misleading statements to those found to be false and misleading by Judge Sleet. Once again, PharmaStem caused copies of the press release to be mailed to thousands of obstetricians. *Id.* at ¶14.

PharmaStem's second wave of suits comprised five separate suits, including this action, in which PharmaStem sued a private cord blood bank and one or more health care providers, i.e., individual physicians (as in this case), group medical practices and a hospital. *Id.* at ¶ 15. In each of these cases, PharmaStem made a boilerplate allegation of infringement of the '427 patent against both the defendant private cord blood bank and at least one health care provider. *Id.* at ¶ 16. Shortly after initiating suit in the Central District of California against CureSource, Inc., and twelve physicians, Didier sent a letter to the defendant physicians, offering to "settle" with them by agreeing not to enforce any of PharmaStem's five patents against them if the doctors would agree not to collect cord blood or provide any service for or "in connection with" any of the

private cord blood banks not licensed by PharmaStem, and further agree not to market or offer any service of the defendant cord blood banking companies. *Id.* at ¶ 17; *See also Id.*, Exhibit D.

On August 20, 2004, PharmaStem sent another letter and an amnesty agreement to obstetricians (the "Amnesty Agreement") that contained similar false and misleading statements. PharmaStem insisted that the obstetricians sign the Amnesty Agreement to avoid legal action by PharmaStem, and that the obstetrician only work with PharmaStem's licensees. In disregard of the findings and final orders of the Delaware District Court, the letter of August 20, 2004, states the following: "It is PharmaStem's position, as asserted in the recent lawsuits, that obstetricians are liable for patent infringement if they collect cord blood or market services for unlicensed cord blood banks." *Id.* at ¶ 18. The Press Release and the letters of August 18 and August 20, 2004 letter failed to correct the earlier misrepresentations, failed to disclose the inaccuracy of the earlier misrepresentations, and failed to disclose the rulings of the Delaware District Court. *Id.* at ¶ 19.

As a follow-up to their letter campaign, Didier then proceeded to make threats by telephone to an unknown number of obstetricians, using the false pretense of presenting himself as an agent of one of the defendant cord blood banks, to get direct access to the physician. Once connected to the physician, Didier explained that any doctor who refused to sign the Amnesty Agreement would be sued by PharmaStem for patent infringement. *Id.* at ¶ 20.

Still further in disregard for Judge Sleet's findings, PharmaStem has sponsored links are such internet sites as Google.com and Yahoo.com in which PharmaStem identifies CorCell, and claims that it is an "unlicensed bank," without reference to PharmaStem's purported patents, thereby misleading individuals to believe that CorCell was not a state licensed blood bank. This

is further compounded by the fact that the sponsored link further states, "Why Take The Risk?." *Id.* at ¶ 21.

PharmaStem has issued these statements in bad faith, for the clear purpose of damaging CorCell's business and creating false implications with the consuming public and obstetricians. *Id.* at ¶ 22. Even after Judge Sleet's decision, PharmaStem and Didier have continued to issue false and misleading statements. In particular, on September 20, 2004, PharmaStem issued a press release which mischaracterizes the Court's ruling as well as defendants' positions in the case, e.g., PharmaStem states that the Court "agreed with the defendants" based upon an argument that families who bank with the defendants could be liable for infringement; in fact, the basis for the Court's decision was that the defendants did not sell or offer to sell cord blood. Defendants did not argue that families are liable for infringing PharmaStem's patents; parents do not sell or offer to sell cord blood, and therefore cannot be liable. This is but the latest false implication designed to deter patients from seeking medical services without regard to the narrow limitations of PharmaStem's patents. *Id.* at ¶ 24.

Stembanc, a licensee of PharmaStem, in which PharmaStem has an ownership interest, has joined PharmaStem's ongoing campaign of disparagement and misinformation. On several occasions, in advertisements placed in *Pregnancy* magazine, and in press releases and website postings, Stembanc has disseminated false and misleading statements to obstetricians, hospitals and the public concerning CorCell and other cord blood banks. Stembanc's statements, similar to those that the Delaware District Court found to be false and misleading, have suggested that obstetricians would be liable for infringement if they recommended the services of CorCell or other cord blood banks not licensed by PharmaStem, or if they collected cord blood for patients who chose to store cord blood with one of those banks. Stembanc also attacked CorCell and the

561453_1                                6

other cord blood banks not licensed by PhamaStem for not revealing to patients an alleged threat of cessation of business which was and is non-existent, as confirmed by the ruling of the Delaware Court. *See id.* at ¶ 25.

Stembanc has otherwise made statements suggesting that CorCell, and other companies not licensed by PharmaStem are unethical or lacking in "technical integrity and legal legitimacy." Stembanc has declined, after demand, to withdraw its false and misleading statements. Upon information and belief, Stembanc and its agents have made additional false and misleading communications with the intent of causing customers and prospective customers of CorCell not to deal with CorCell. *Id.*

As a result of the actions of Counterclaim-defendants, some physicians have declined to collect cord blood for customers of CorCell and have ceased to recommend CorCell's services. Customers of CorCell have been prevented from fulfilling their contracts with CorCell, and others have been dissuaded from contracting with CorCell at all, because of the actions of Counterclaim-defendants. Of course, such a response was exactly what PharmaStem, Didier and Stembanc wanted to achieve. *Id.* at ¶ 26.

Accordingly, CorCell's counterclaims are plead sufficiently enough to survive Stembanc's motion to dismiss.

## ARGUMENT

### A.     Standard For a 12(b)(6) Motion

In determining the propriety of granting a motion to dismiss, the court must "determine whether, under any reasonable reading of the pleadings, the [counterclaim] plaintiffs may be entitled to relief, and [the court] must accept as true the factual allegations in the complaint and all reasonable inferences therefrom." *Nami v. H. Fauver*, 82 F. 3d 63, 65 (3rd Cir. 1996). "The

complaint will be deemed to have alleged sufficient facts if it adequately put the [counterclaim] defendants on notice of the essential elements of the [counterclaim] plaintiff's cause of action." *Id. Accord Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.* 627 F. Supp. 856 (E. D. Pa. 1985); and *Qwest Communications International v. Cyber-Quest, Inc.*, 124 F.Supp. 2d 297 (M. D. Pa. 2000). *See Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1283 (S.D. Fla. 2001) ("The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.") *See also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Each of CorCell's Counterclaims meets this threshold.

**B.     CorCell Is Entitled To Offer Evidence To Support Its Counterclaims**

Just as PharmaStem argues in support of its motion to dismiss, Stembanc asserts that the statements criticized by CorCell are either, "true or non-actionable opinions." With due respect, the determination of the significance of those statements should await discovery and either summary judgment or trial. "In considering a Rule 12(b)(6) motion, [the court does] not inquire whether the [counterclaim] plaintiff will ultimately prevail, only whether the claimant is entitled to offer evidence to support the claims." *Nami*, 82 F. 3d at 65. *Accord Qwest Communications*, 124 F. Supp.2d at 300. *See also In re K-Dur Antitrust Litigation*, No. 01-1652, 2004 U.S. Dist. LEXIS 19804, *25 (D. N. J. September 29, 2004) ("The issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."). "Additionally, a plaintiff need not allege the existence of every element of his or her claim as long as the allegations plead facts sufficient to provide the defendant with fair notice of the transaction and to set forth the material points necessary to sustain recovery." *K-Dur Antitrust Litigation*, 2004 U.S. Dist. LEXIS 19804, at *25. *See also Conley*, 355 U.S. at 47.

1.   **CorCell Has Sufficiently Plead Its Federal Unfair Competition [§43(a) Lanham Act] Claim**

Stembanc's argument regarding CorCell's claim of a Lanham Act violation is clearly without merit. The threshold question for the court to decide is whether CorCell has alleged facts sufficient to put Stembanc on notice of the material claims alleged, not whether CorCell will prevail on its claims. CorCell's counterclaim clearly meets the standard of sufficient pleading of a claim under Section 43(a). CorCell has alleged that Stembanc has made false or misleading statements as to the services provided by both CorCell and by physicians whose patients elect to have their cord blood stored by CorCell. It is clear that CorCell has pleaded that there is actual deception and at least a tendency to deceive a substantial portion of the intended audience, i.e., obstetricians and consumers, and CorCell has plainly pleaded that the deception is material in that it is likely to, and has, influenced purchasing decisions. Contrary to Stembanc's suggestions, this is not a case involving expressions of opinion about the meaning of a statute or regulation, as in *Coastal Abstract Service, Inc. v. First American Title Ins. Co.,* 173 F. 3d 725, 731 (9th Cir., 1999), nor is there a requirement here to anticipate a subsequent interpretation of the law, as in *Dial-A-Car, Inc. v. Transportation, Inc.,* 82 F. 3d 484, 489 (DC Cir., 1996). To the contrary, in this case there has been a clear and unambiguous ruling from the District of Delaware that contributory infringement of the directly analogous PharmaStem patent cannot be found on the basis of providing a service rather than the sale of cord blood. That same principle applies without any need for interpretation to the potential liability of an obstetrician under PharmaStem's patent. The collection of cord blood is the only fact alleged by PharmaStem to support its claims against those physicians whom it has sued in this case, and in the others it has brought. Neither PharmaStem nor Stembanc have articulated any theory under which physicians may be liable for infringement of the PharmaStem patents.

Stembanc ignores the allegations of bad faith contained in CorCell's counterclaims. Simply because the cases involving CorCell have not been resolved by final judgment, Stembanc argues that its statement of its position cannot be false. To the contrary, where Stembanc could not possibly have a good faith belief in the position it articulates, its statements cannot be protected and can be the subject of Lanham Act liability. Stembanc, knowing the Delaware Court's findings, has not merely stated an opinion concerning an unsettled legal question, but rather has made statements on the present state of legal liability, and false statements at that. The facts as plead demonstrate that Stembanc's statements were meant to dissuade third parties from using the services of CorCell in violation of § 43(a) of the Lanham Act. *See Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609 (D.R.I. 1976). To the extent that CorCell's pleading may be deficient in its pleading of bad faith or malice, leave to amend should be granted.

The cases relied upon by Stembanc in this portion of its argument are summary judgment cases, *e.g.*, *Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 19 F.3d 125, 129 (3rd Cir. 1994); *Lawman Armor Corp. v. Master Lock Co.*, No. Civ.A. 02-6605, 2004 WL 362210 (E. D. Pa. Feb. 27, 2004); and *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3rd Cir. 1990), not cases decided under Rule 12(b)(6), or cases involving opinions regarding the interpretation of a statute or ordinance by a lay person, *e.g.*, *Rodriguez v. Panayiotou*, 314 F.3d 979 (9th Cir. 2002); and *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir 1996), not cases involving statements similar to those a court has determined to be false and misleading, and thus are entirely inapposite.

561453_1

10

Stembanc's statements in its advertisement in *Pregnancy* magazine that Stembanc has the "technical integrity and legal legitimacy you can count on," clearly is intended to, and could be understood as implying that CorCell and other cord blood banks that have not bowed to PharmaStem's threats do not have the integrity and legitimacy claimed by Stembanc. Such a statement is far different from that quoted by Stembanc from *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F. 2d 914, 926 (3d Cir., 1990) where the challenged statement was mere puffery concerning the services of Blue Cross as opposed to an implication that the plaintiff lacked technical integrity and legal legitimacy.

Stembanc erroneously attempts to isolate each of its statements and argue that the statement, reviewed alone, is not actionable. This, of course, is not the way in which the court is to evaluate CorCell's counterclaims. The court must evaluate the statements made by Stembanc and the allegations made by CorCell regarding those statements as a whole, and determine whether CorCell has sufficiently pleaded its claim. Stembanc does not argue that the allegations by CorCell as a whole do not state a claim, it only argues that the individual statements alone, are not actionable. The allegations made by CorCell, taken as a whole, and evaluated in accordance with the standard required by a rule 12(b)(6) motion, sufficiently alleges CorCell's § 43(a) Lanham Act claim.

Therefore, CorCell's claim should not be dismissed.

2.    **CorCell Has Sufficiently Plead Its Claim For Interference With Contractual and Business Relationships**

Stembanc attempts to argue that CorCell's tortious interference claim should be dismissed because Stembanc will ultimately prevail, rather than focusing solely on the facts pleaded. On a motion to dismiss for failure to state a claim, the ultimate success of the claim is not the issue. The issue is whether CorCell has sufficiently pleaded the claim in its counterclaim,

and CorCell has done so. Stembanc argues that the evidence will ultimately show that its conduct was subject to a privilege. However, because this is a motion to dismiss, CorCell is entitled to the benefit of all reasonable inferences from its allegations. Stembanc relies again on a case that is clearly inapposite to the present action. *National Data Payment Systems, Inc. v. Meridian Bank*, 212 F.3d 849 (3rd Cir. 2000) involves the grant of summary judgment, not a motion to dismiss for failure to state a claim.

CorCell has not rested its claims on mere hopes. Corcell clearly alleges that the actions of Stembanc have caused physicians to decline to collect cord blood for customers of CorCell and cease to recommend CorCell's services, and customers have been prevented from fulfilling their contracts with CorCell or dissuaded from contracting with CorCell at all, a response consistent with the expectations of Stembanc. *See* CorCell Counterclaim, ¶ 26.

Stembanc's reliance on *Brunson Communications, Inc. v. Arbitron, Inc.* 239 F. Supp.2d 550, 578 (E.D. Pa. 2002), is misplaced. In *Brunson*, the plaintiff alleged only that the defendant's statement that the test data was complete and accurate even though defendant omitted the plaintiff from the test data improperly interfered with plaintiff's contractual relations. *See Brunson Communications, Inc. v. Arbitron, Inc.,* 239 F. Supp.2d at 578 (finding that the plaintiff did not assert facts "which would suggest the loss of any particular client", or a "causal connection between [the defendant's] conduct and [the plaintiff's] loss of a contract that otherwise might have been realized). *Brunson*, therefore, is clearly distinguishable from the present case. CorCell has specifically and sufficiently alleged each element of its claim of interference.

CorCell has plead facts sufficient to support the existence of contractual and business relationships between CorCell and third parties, e.g., parents, obstetricians and health care

providers. Whether or not CorCell ultimately establishes the necessary existence of the business and contractual relationships is an issue to be decided after discovery. CorCell is not required under a rule 12(b)(6) motion to identify the specific names of these third parties, which Stembanc seems to be arguing in its motion. *Mollinger v. Diversified Printing Corp.*, Civ. A. No. 88-8301, 1989 WL 115125, at *7 (E.D. Pa. 1989), cited by Stembanc, does not require a plaintiff to specify the names of third parties. Stembanc's interpretation of *Mollinger* for this proposition mischaracterizes the holding of the *Mollinger* court. *See Id.* (granting motion to dismiss because plaintiff averred only that "she is without information concerning the nature and specific details of defendants' tortious conduct because this information is within the exclusive knowledge, possession and/or control of the defendants"). It cannot be argued that the facts of *Mollinger* are similar to those at issue here.

The sufficiency of CorCell's allegations plead facts as supporting its interference claim is clear, and the claim, therefore, should not be dismissed.

### 3.   CorCell Has Sufficiently Plead Its Claim Of Trade Libel/Commercial Disparagement

PharmaStem's chief argument against CorCell's counterclaim for commercial disparagement is to again allege that whatever statements it made were true. Once again PharmaStem misunderstands the rule of a motion to dismiss. Moreover, CorCell's allegations clearly meet the four-part test set forth in *Pro Golf Manufacturing Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002), quoting Restatement (Second) of Torts §623A (1977).

CorCell's counterclaim plainly sets forth both existing and contractual relationships between itself and its customers. Its customers are expectant parents, some of whom have already enrolled or contracted with CorCell, others of whom have not yet done so, and parents

who have not yet become pregnant. CorCell adequately alleges that Stembanc has acted purposefully and specifically to interfere with those relations by either causing parents not to perform their contracts with CorCell (or rather making it impossible for them to do so) or to prevent such contracts from being formed. CorCell has alleged that Stembanc has acted without privilege or justification and that it has suffered harm.

CorCell is unable to allege pecuniary loss with greater specificity at this time because the harm is continuing and just beginning to manifest itself. CorCell has suffered a loss in sales volume that CorCell avers is causally related to the false statements issued by Stembanc. Again, to the extent that more specific pleading is required, leave to amend should be granted.

The facts plead by Corcell support its claims of trade libel/commercial disparagement. *See The Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 863 (E. D. Pa. 1985).

Therefore, this Court should consider CorCell's counterclaims. If the Court should view CorCell's pleadings of any of its counterclaims to be deficient, leave to amend should be granted.

## CONCLUSION

For all the foregoing reasons, Defendant CorCell respectfully requests that the Court deny Stembanc's Motion to Dismiss.

Respectfully submitted,

James J. Rodgers (Pa. I.D. No. 21635)
Validation Code No.: JR797
Evelyn McConathy (Pa. I.D. No. 68299)
Darryl W. Shorter (Pa. I.D. No. 87554)
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7000

Dated: November 2, 2004

561453_1                                    14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendant/Counterclaim

Plaintiff Corcell's Memorandum Of Law In Opposition To Counterclaim/Defendant Stembanc,

Inc.'s Motion To Dismiss has been served via U.S. Mail in a properly addressed envelope with

sufficient postage thereon to affect delivery, addressed to:

> Michael D. LiPuma
> Law Office of Michael LiPuma
> Two Penn Center, Suite 200
> Philadelphia, PA 19102
>
> Larry R. Wood, Jr., Esquire
> PEPPER HAMILTON LLP
> 3000 Two Logan Square
> Eighteenth & Arch Streets
> Philadelphia, PA 19103-2799

Date:                                                    Darryl W. Shorter