# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PHARMASTEM THERAPEUTICS, INC.,          :
                                        :
                    Plaintiff,          :
                                        :
        v.                              :
                                        :          Civil Action No. 2:04-CV-03561-RK
CORCELL, INC., MOLLY McBRIDE, M.D.      :
and CARLO M. CROCE, M.D.                :
                                        :
                    Defendants.         :
                                        :
CORCELL, INC.,                          :
                Counterclaim-Plaintiff, :
                                        :
        v.                              :
                                        :
PHARMASTEM THERAPEUTICS, INC.,          :
NICHOLAS DIDIER, and STEMBANC,          :
INC.,                                   :
                                        :
            Counterclaim-Defendants.    :          **ORAL ARGUMENT REQUESTED**


**COUNTERCLAIM-DEFENDANT STEMBANC INC.'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

## **Preliminary Statement**

CorCell, Inc.'s ("CorCell") opposition to Stembanc, Inc.'s ("Stembanc") motion to dismiss makes concessions that require dismissal of its counterclaims against Stembanc. CorCell concedes in the Opposition that the documents Stembanc attached to its motion to dismiss contain all the statements on which CorCell's counterclaims against Stembanc are based. Those documents, in combination with CorCell's own allegations, establish as a matter of law that CorCell has failed to state a claim upon which relief may be granted. Accordingly, CorCell has "pleaded itself out of court" and its claims against Stembanc should be dismissed.

CorCell's claim for false advertising under the Lanham Act and its claim for trade libel fail as a matter of law because the statements on which they are based were true when made or are non-actionable opinions, as CorCell's own allegations establish. CorCell contends it is entitled to put on evidence to save the claims, but it has already conceded that the relevant statements are properly before this Court. Therefore, no additional evidence is necessary. CorCell also tries to rescue the claims by arguing that the statement "technical integrity and legal legitimacy you can count on" is not opinion puffery, but offers no analysis or citation supporting its position. Finally, CorCell asserts that Stembanc's statements concerning potential physician liability for patent infringement are not opinions regarding an unsettled legal question because Judge Sleet of the U.S. District Court for Delaware decided that issue on July 2, 2004. Yet CorCell admits that the July 2, 2004 order was not a final judgment and that it did not address all theories for potential liability.

Finally, CorCell's claim of interference with existing and prospective contractual relations should be dismissed because CorCell concedes it has not identified any existing or prospective contract or pleaded the absence of privilege, which are required by Fed.R.Civ.P. 8.

**Argument**

**I.** **THIS COURT CAN AND SHOULD DISMISS CORCELL'S LANHAM ACT AND TRADE LIBEL CLAIMS BECAUSE THEY ARE BARRED BY LAW**

CorCell based its claim for false advertising under section 43(a) of the Lanham Act ("Section 43(a) claim") and its claim for commercial disparagement/trade libel under the common law of Pennsylvania ("trade libel claim") on statements Stembanc allegedly made in advertisements placed in <u>Pregnancy</u> magazine and in a press release posted on Stembanc's website. <u>See</u> Answer of Defendants CorCell, Inc. and Carlo M. Croce, M.D. To Plaintiff's Complaint and Counterclaim of CorCell, Inc. ("Counterclaims") ¶ 25 (emphasis in original). Specifically, CorCell identified three types of statements it found objectionable: (1) statements about the potential liability physicians and obstetricians may face for infringement of PharmaStem Therapeutics, Inc.'s ("PharmaStem") patents; (2) statements concerning the potential "cessation of business" that CorCell and other defendants face if PharmaStem's requests for permanent injunctive relief are granted; and (3) statements lauding Stembanc's "technical integrity and legal legitimacy." <u>See</u> Counterclaims ¶ 25; Opposition at 6-7. In its motion to dismiss, Stembanc presented the <u>Pregnancy</u> magazine advertisements and the press release containing the statements CorCell identified and demonstrated that those statements are not actionable as a matter of law, either because CorCell's own allegations established that they were true when made or because CorCell's own allegations established that they were non-actionable opinions. <u>See</u> Counterclaim Defendant Stemabanc, Inc.'s Memorandum of Law In Support of Its Motion to Dismiss ("Motion to Dismiss") at 9-14. CorCell's Opposition does not dispute that the documents Stembanc presented contain the statements on which the Section 43(a) and trade libel claims are based, nor does CorCell dispute the relevant legal standards governing those claims. Nonetheless, CorCell contends that this Court cannot dismiss for three reasons. None succeeds.

A.    **Because The Statements At Issue Are Undisputed, CorCell's Claims Are Subject to Immediate Dismissal**

CorCell argues that a ruling on whether the statements at issue are actionable must "await discovery and either summary judgment or trial." Opposition at 8. CorCell does not dispute, however, that the documents Stembanc attached to its motion to dismiss contain the statements on which CorCell based its Section 43(a) and trade libel claims. See Opposition at 6-7, 9-11.[1] In fact, CorCell's Opposition itself identifies the same three statements in its recitation of facts and highlights two of them in its argument section.[2] See Opposition at 6-7, 9-11. Because the statements are not in dispute, this Court can and should dismiss CorCell's Section 43(a) claim on a motion to dismiss if those statements cannot, as a matter of law, support the claim. See e.g., IMCS, Inc. v. D.P. Technology Corp., 264 F. Supp. 2d 193, 197 (E.D. Pa. 2003) (dismissing Lanham Act false advertising counterclaim because advertisement "that [patent holder's] software is protected by the '133 patent, is a true statement and, therefore, does not meet the first requirement of a [sic] § 43(a)"); GE Capital Mortgage Services, Inc. v. Pinnacle Mortgage Investment Corp., 897 F. Supp. 854, 867-68 (E.D. Pa. 1995) ("[B]ecause the truth of the defamatory statement constitutes an absolute defense to a defamation claim . . . the court will grant GE Capital's motion to dismiss . . . ."); accord Dorsey v. National Enquirer, Inc., 973 F.2d

---

[1] CorCell's Opposition discusses at great length statements allegedly made by PharmaStem and Nicholas Didier. See Opposition at 2-6. Indeed, the Opposition at one point mistakenly directs its arguments against PharmaStem rather than Stembanc. See Opposition at 13. CorCell has never alleged, however, that Stembanc is responsible for the statements made by PharmaStem and Mr. Didier. Nor could it. Stembanc is a licensee of PharmaStem but is in no way responsible for statements made by PharmaStem or Mr. Didier.

[2] CorCell's Opposition simply does not respond to the arguments in Stembanc's motion to dismiss related to the statement in Stembanc's Pregnancy magazine advertisement that "Obviously, parents choose Stembanc once they understand other companies face the prospect of business cessation." Motion to Dismiss, Exs. A, B. Accordingly, Stembanc's arguments concerning that statement are undisputed.

1431, 1434 (9th Cir. 1992) (noting that cases involving free speech "should be disposed of at the earliest possible stage of the proceedings if the facts as alleged are insufficient as a matter of law to support a judgment for the plaintiff").

For example, in GE Capital, the court dismissed a claim for defamation under Pennsylvania law because an exhibit attached to the complaint established that the alleged defamatory statements were true. See GE Capital, 897 F. Supp. at 867-68 (citing Bermudez v. First of America Bank Champion, N.A., 860 F. Supp. 580, 594 n. 10 (N.D. Ill.1994) ("matter contained in exhibits may be considered in determining whether the plaintiff has pleaded himself or herself out of court")). In this case as well, the documents attached to Stembanc's motion to dismiss demonstrate that the statements on which CorCell based its claims are either true or non-actionable opinion. See Motion to Dismiss at 9-12. CorCell's fatally deficient Section 43(a) claim should be dismissed now, without subjecting Stembanc to further baseless litigation.

CorCell also contends that dismissal is inappropriate because "Stembanc erroneously attempts to isolate each of its statements and argue that the statement, reviewed alone, is not actionable." Opposition at 11. This argument is ironic considering that it was Stembanc, not CorCell, that presented this Court with the documents containing Stembanc's statements in their entirety. See Motion to Dismiss, Exs. A, B, C. Stembanc welcomes a review of its statements as a whole. Furthermore, neither CorCell's Counterclaims nor its Opposition identifies any additional statement as actionable. Finally, to the extent CorCell is attempting to escape dismissal by implying that some unidentified, general impact of Stembanc's advertisements or press release is actionable rather than any particular statement, the Third Circuit has foreclosed that position. See Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F2d. 869, 872 (3d Cir. 1992) (dismissing Lanham Act claim because "[p]laintiffs have not alleged in their complaint any particular false statement or misrepresentation on the part of

-4-

[defendant]. Rather they appear to rely upon the general aura of [defendant's] national advertising scheme as portraying an honest, quality real estate service"). Accordingly, this Court can and should dismiss CorCell's claims because the statements at issue are, as a matter of law, not actionable. See Motion to Dismiss at 9-13; Part I, B & C infra.

**B.    Statements About Obstetrician Liability Are Non-Actionable Opinions**

CorCell contends that Stembanc's statements concerning the potential liability physicians or obstetricians may face for infringement of PharmaStem's patents are actionable because they do not concern an "unsettled legal question." Opposition at 9-10. CorCell bases this argument on a July 2, 2004 order from Judge Sleet of the U.S. District Court for Delaware in which Judge Sleet found that a statement PharmaStem made in a letter concerning obstetrician liability was misleading. See Opposition at 3. CorCell's Opposition asserts that the July 2 order was a "clear and unambiguous ruling . . . that contributory infringement . . . cannot be found on the basis of providing a service rather than the sale of cord blood," that the "same principle applies without any need for interpretation to the potential liability of an obstetrician under PharmaStem's patent," and concludes that whether a physician can be liable for infringement of PharmaStem's patents has been completely settled. See Opposition at 9 (emphasis added).

CorCell's argument fails for at least three reasons. First, CorCell itself admitted in its opposition to PharmaStem's motion to dismiss that the July 2 order was not a final judgment on the matter of physician liability: "The injunctive relief granted against PharmaStem on July 2, 2004 in the Delaware Action was temporary, not a final judgment, and did not relate directly to the . . . patents that are at issue here." Defendant CorCell's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss at 14. Second, CorCell concedes that no court has finally adjudicated the issue of whether a physician involved in collecting cord blood may face liability for infringement of PharmaStem's patents. See Opposition at 10. Indeed, CorCell does

not dispute that this very action involves claims by PharmaStem against an obstetrician, Defendant Dr. Molly McBride, M.D., for patent infringement. If those claims had already been finally decided against PharmaStem in the July 2 order, then the case against Dr. McBride would have been barred by issue preclusion. Finally, even if the July 2 order were a final ruling on contributory patent infringement as CorCell contends, not even CorCell asserts that the order addresses all other forms of infringement, such as direct infringement or inducement of infringement under 35 U.S.C. §§ 271(a) & (b). The July 2 order cannot possibly represent a final ruling on, for example, whether physicians might be liable for inducing infringement of PharmaStem's patents. Therefore, CorCell's argument that the issue of physician liability for infringement of PharmaStem's patents has been finally decided is simply incorrect.

     CorCell also contends that the cases Stembanc cited for the holding that statements about unsettled legal matters are opinions do not apply because those cases are limited to "expressions of opinion about the meaning of a statute or regulation" or statements that "anticipate a subsequent interpretation of the law . . . ." Opposition at 9. Again, this argument fails. First, whether a physician may be liable for patent infringement is quite obviously an interpretation of a statute, namely the Patent Act, 35 U.S.C. §§ 101 *et seq.*  Second, the cases that Stembanc cited in its motion to dismiss to show that statements concerning unsettled legal matters are non-actionable opinions were not limited to interpretations of a statute or regulation. For example, in Rodriguez v. Panayiotou, 314 F.3d 979 (9th Cir. 2002), the Ninth Circuit held that the defendant's "comments to the media, which imply the belief that he had been entrapped by Rodriguez, constitute his interpretation of the law" and therefore were non-actionable opinions. See Rodriguez, 314 F.3d at 986. Finally, Stembanc's statements concerning the potential liability of physicians cannot be statements of fact because the courts have held that a fact must be capable of being proven false. See, e.g., Schmidt, Long & Assoc.,

-6-

Inc. v. Aetna U.S. Healthcare, Inc., No. CIV. A. 00-CV-3683, 2001 WL 856946, at * 11 (E.D. Pa. Jul. 26, 2001) ("Only statements of fact capable of being proven false are actionable under the Lanham Act . . . ."). CorCell concedes that no court has yet adjudicated the issue of whether a physician involved in collecting cord blood may face liability for infringement of PharmaStem's patents. See Opposition at 10. Therefore, Stembanc's statements on the issue cannot be proven false and are per se opinions.[3]

**C.    Stembanc's Opinion Puffery On Integrity and Legitimacy Is Not Actionable**

CorCell's final argument is that the statement in the Pregnancy magazine advertisements that Stembanc has the "technical integrity and legal legitimacy you can count on" is not opinion puffery because it implies that "CorCell and the other cord blood banks that have not bowed to PharmaStem's threats do not have the integrity and legitimacy claimed by Stembanc." Opposition at 11. Although CorCell announces that the statement is not opinion puffery, the Opposition offers no analysis to support that pronouncement. Instead, CorCell simply concludes that the "statement is far different from that quoted by Stembanc from U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia . . . where the challenged statement was mere puffery concerning the services of Blue Cross as opposed to an implication that the plaintiff lacked technical integrity and legal legitimacy." Opposition at 11. Yet the statement the Third Circuit held non-actionable puffery in U.S. Healthcare, Inc. was "Better than HMO. So good,

_____

[3] CorCell also contends that the cases Stembanc cited to show that statements concerning unsettled legal matters are non-actionable opinions were "summary judgment cases . . . not cases decided under Rule 12(b)(6) . . . and thus are entirely inapposite." Opposition at 10. Stembanc cited those cases to demonstrate that CorCell's claims are foreclosed as a matter of law; that they were decided on summary judgment is irrelevant. Courts deciding motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) routinely rely on "summary judgment cases" to establish whether a claim is barred as a matter of law. See, e.g., Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F2d. 869 (3d Cir. 1992) (affirming dismissal and relying upon U.S. Healthcare v. Blue Cross of Greater Philadelphia, 898 F.2d 941, 922-23 (3d Cir. 1990), a case decided on summary judgment).

it's Blue Cross and Blue Shield." U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 922 (3d Cir. 1990). That slogan implies HMOs lacked qualities that made Blue Cross and Blue Shield "better," just as CorCell contends Stembanc's statement implies other blood banks lack qualities that make Stembanc attractive. CorCell's distinction is without merit.

The statements on which CorCell bases its claim are not in dispute. Those statements are, as a matter of law, not actionable under section 43(a) of the Lanham Act or under Pennsylvania's common law of commercial disparagement/trade libel. Therefore, dismissal under Federal Rule of Civil Procedure 12(b)(6) is both appropriate and required.[4]

## II.    CORCELL'S TRADE LIBEL CLAIM ALSO FAILS BECAUSE CORCELL DOES NOT ALLEGE DAMAGES WITH PARTICULARITY

Stembanc's motion to dismiss demonstrated that a claim for commercial disparagement/trade libel under Pennsylvania law must be dismissed when the plaintiff does not allege damages with particularity. See Motion to Dismiss at 12-13. CorCell's Opposition concedes that Stembanc cited the controlling standard, yet CorCell argues it should be excused from complying as it is "unable to allege pecuniary loss with greater specificity at this time because the harm is continuing and just beginning to manifest itself." Opposition at 14. CorCell has thus admitted that it did not comply with the pleading requirements and that it is "unable" to amend its Counterclaims to comply. Dismissal with prejudice is therefore appropriate.[5]

---

[4] CorCell attempts to include a new allegation in its Opposition that Stembanc made its statements with bad faith. See Opposition at 10. This allegation was not contained in CorCell's Counterclaims and therefore, even if it were not false, it could not resurrect CorCell's Section 43(a) claim. See, e.g., In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings") (citations omitted).

[5] The Eagle's Eyes v. Ambler Fashion Shop, Inc., 627 F.Supp. 856 (E.D. Pa. 1985) is not to the contrary. See Opposition at 14. In that case, the defendant moved to dismiss a commercial disparagement claim on the grounds that the offending statements did not mention plaintiff's product by name and were not disparaging. Id. at 863. The Court denied the motion,

(continued...)

**III.    CORCELL'S ALLEGATIONS FAIL TO STATE A CLAIM FOR INTERFERENCE WITH EITHER EXISTING OR POTENTIAL CONTRACTS**

To state a claim for interference with prospective contractual relations, CorCell is required to plead the absence of a privilege protecting the defendant's alleged tortious conduct. See CGB Occupational Heath Therapy, Inc. v. RHB Health Services, Inc., 357 F.3d 375, 384 (3rd Cir. 2004) (holding plaintiff must allege "(3) the absence of privilege or justification on the part of the defendant"); National Data Payment Systems, Inc. v. Meridian Bank, 212 F.3d 849, 858 (3rd Cir. 2000) (same). Stembanc's motion to dismiss discussed why, according to the allegations in the Counterclaims, the statements on which CorCell based its claim for interference with prospective contractual relations are protected under the business competitor privilege. See Motion To Dismiss at 15-16. CorCell's Opposition simply ignores this analysis. Instead, CorCell contends it is not obligated to plead the absence of a privilege as required by CGB and National Data because they "involve the grant of summary judgment, not a motion to dismiss for failure to state a claim." Opposition at 12. That the cases involved summary judgment is meaningless; they establish what elements a plaintiff must plead to state a claim for interference with prospective contracts. See supra at 7 n.3.

Finally, both CorCell's claim for interference with prospective contracts and its claim for interference with existing contracts are fatally deficient because CorCell has not identified any potential or existing contract with which Stembanc supposedly interfered. See Motion To Dismiss at 14-17 (collecting cases). The Opposition claims to distinguish the cases Stembanc cited on this point, but in fact, again offers meaningless differences. See Opposition at

---

(continued...)

holding that the statements could be reasonably understood to identify and disparage plaintiff's product. See id. Here, there is no dispute about whether Stembanc's statements identify CorCell or what the statements mean.

12-13. For example, CorCell asserts <u>Mollinger v. Diversified Printing Corp.</u>, CIV. A. No. 88-8301, 1989 WL 115125 (E.D.Pa.1989) is distinguishable because the plaintiff there averred that the prospective contracts were "within the exclusive knowledge, possession and/or control of the defendants." Opposition at 13 (citation omitted).  Why the plaintiff there or CorCell here failed to identify the contracts at issue does not, however, affect the holding of the case:  "[t]o satisfy the Rule 8 requirement of fair notice . . . plaintiff must at least identify the specific contractual relations which defendants allegedly interfered with." <u>Mollinger</u>, 1989 WL 115125, at *8.

## Conclusion

For the reasons set forth above and in its opening Memorandum of Law, Stembanc respectfully requests that this Court dismiss with prejudice all claims alleged against it in this matter by CorCell.

Respectfully submitted,

OF COUNSEL:
Samuel B. Shepherd, Esquire
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000

Dated:  November 10, 2004

_____  _____

Larry R. Wood, Jr. (
Kathleen A. Mullen
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000