## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>CORCELL, INC., a Delaware corporation, MOLLY MCBRIDE, MD, an individual, and CARLO M. CROCE, MD, an individual,<br><br>        Defendants.<br><br>CORCELL, INC., a Delaware corporation,<br><br>        Counterclaim-Plaintiff,<br><br>   v.<br><br>PHARMASTEM THERAPEUTICS, INC., NICHOLAS DIDIER and STEMBANC, INC.,<br><br>        Counterclaim-Defendants. | **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR AN INJUNCTION ENJOINING CORCELL FROM TAKING FURTHER ACTION IN CIVIL ACTION NO. 04-1334-GMS IN THE DISTRICT COURT FOR THE DISTRICT OF DELAWARE**<br><br>Civil Action No.:2:04-CV-03561-RK |

## I.    INTRODUCTION

CorCell's Inc.'s ("CorCell") opposition to PharmaStem Therapeutics, Inc.'s ("PharmaStem") Motion for an Injunction is predicated on tricky slight-of-hand regarding two different lawsuits pending in Delaware, and falsely describes PharmaStem's position. PharmaStem filed this motion to enjoin CorCell from pursuing Civil Action No. 04-1334-GMS in the District Court for the District Of Delaware ("2004 Delaware action") because CorCell brought the same claims in the 2004 Delaware action *after* it brought the identical claims as counterclaims in this case.  Thus, PharmaStem's position is that CorCell should not be permitted to pursue the same claims in a different court where they were already pending before this Court. PharmaStem also, separately, moved this Court for an Order dismissing CorCell's counterclaims in this action in their entirety on wholly different grounds ("Motion to Dismiss."), which CorCell is misstating in order to oppose this motion.

CorCell is trying to make it appear that PharmaStem has taken inconsistent positions in its Motion to Dismiss and its Motion for an Injunction by indiscriminately referring to these two motions.  PharmaStem has moved to dismiss CorCell's counterclaims in part because CorCell initially sought and obtained relief for the claims in a patent infringement action initiated in 2002 that already went to trial in Delaware ("2002 Delaware action").  If the Court does *not* grant PharmaStem's Motion to Dismiss CorCell's counterclaims, however, then CorCell should be precluded from pursuing the *separate* antitrust action, the 2004 Delaware action, that CorCell recently filed which involves the exact same causes of action presented to this Court in the form of compulsory counterclaims.  PharmaStem's position has remained consistent, and, as set forth below, the relief sought by both motions is justified.

## II.    FACTUAL BACKGROUND

### A.    OVERVIEW OF LITIGATION HISTORY

Contrary to the implication CorCell tries to leave in its opposition to PharmaStem's motion, there are *two* pending actions in Delaware, not one.  There is also, of course, the action pending in this Court.  CorCell has tried to raise the same issues in all three actions.  As set forth in greater detail below, the actions which are the subject of this dispute are as follows:

2

- **2002 Delaware Patent Infringement Action**
    - Brought by PharmaStem.
    - Filed on February 22, 2002
    - Asserted U.S. Patent Nos. 5,004,681 ("'681 Patent") and 5,192,533 ("'553 Patent")
    - CorCell raised issues relating to PharmaStem's enforcement activities in seeking a post-trial injunction

- **2004 Pennsylvania Patent Infringement Action**
    - Brought by PharmaStem
    - Filed July 28, 2004
    - Asserted U.S. Patents Nos. 6,461,645 B1 ("'645 Patent") and 6,569,427 B1 ("'427 Patent")
    - CorCell raised issues relating to PharmaStem's enforcement activities as counterclaims to PharmaStem's claims of patent infringement

- **2004 Delaware Antitrust Action**
    - Brought by CorCell et al.
    - Joined by CorCell on October 15, 2004
    - CorCell raised issues relating to PharmaStem's enforcement activities (including the same claims asserted in the 2004 Pennsylvania Action as counterclaims) as specific causes of action

Further details regarding each of the actions and CorCell's claims are set forth in the sections discussing each action, below.

**B.    THE 2002 DELAWARE PATENT INFRINGEMENT ACTION**

PharmaStem filed the first Delaware action in 2002 against CorCell and a number of its competitors, alleging infringement of the '681 and '553 Patents. These two patents are not at issue in this case. PharmaStem prevailed at trial in Delaware, winning a jury verdict of willful infringement against CorCell and several of its competitors. In September of 2004, however, the Court in the 2002 Delaware Action reversed the jury's finding of infringement regarding the '553 Patent, and ordered a retrial regarding the extent of CorCell's infringement of the '681 Patent.[1]

As set forth in CorCell's answer to this complaint, while various post-trial motions in the 2002 Delaware Action were still pending, CorCell and the other defendants brought a motion for injunctive and remedial relief against PharmaStem for allegedly sending letters to obstetricians

---

[1] Presumably, CorCell and its competitors brought the 2004 Delaware action hoping to obtain favorable rulings from the same court which partially overturned the jury verdict in PharmaStem's favor.

3

regarding the outcome of the trial. Counterclaims, ¶13. An injunction was granted before PharmaStem had an opportunity to be heard. In fact, the Court in the 2002 Delaware Action granted the preliminary injunction, which the defendants had drafted, a few days after the motion was filed and before PharmaStem had an opportunity to oppose the motion or be heard on it. PharmaStem subsequently filed a motion to dissolve the Delaware Court's Order granting the preliminary injunction, as PharmaStem believes that the injunction was improperly granted, which is still pending before the Delaware Court.

### C.    THE 2004 DELAWARE TORT/ANTITRUST ACTION

As set forth in greater detail below, PharmaStem filed the instant suit against CorCell on July 28, 2004. *See* Docket No. 1 (Complaint). More than two months later, and after answering PharmaStem's complaint and setting forth counterclaims in this Court, CorCell joined a recently filed *separate* action in Delaware, the 2004 Delaware action, alleging antitrust and tort violations stemming from PharmaStem's alleged communications to obstetricians. It is this 2004 Delaware Action in which PharmaStem seeks to enjoin CorCell's participation, as it has already brought the same claim before this Court. *See* Exh. 1 to PharmaStem's Motion for an Injunction (CorCell's Amended Delaware complaint).

In the 2004 Delaware Action, CorCell asserted claims against PharmaStem that are either identical to or rely largely upon on the same facts as CorCell's counterclaims in this case.[2] *See* Counts VI, VIII, IX of Exh. 1 to PharmaStem's Motion for an Injunction (CorCell's Amended Delaware Complaint); Docket No. 9 (CorCell's Answer and Counterclaims). Like CorCell's counterclaims in this case, the key to CorCell's claims in the 2004 Delaware Action is whether medical care providers who collect umbilical cord blood for unlicensed cord blood banks, such as CorCell, can be liable for infringement of one of PharmaStem's patents. In the 2004 Delaware Action, CorCell specifically pled that obstetricians cannot be held liable for patent infringement and that PharmaStem could not have a good faith belief that obstetrician liability exists under PharmaStem's asserted patents. *See* Exh. 1 to PharmaStem's Motion for an Injunction (CorCell's

---

[2] To the extent any additional causes of action have been raised in the 2004 Delaware Action, they should have been brought as compulsory counterclaims in this case.

Amended Delaware Complaint), ¶42 ("under no proper interpretation of any claim of the PharmaStem Patents would an obstetrician be liable for patent infringement based merely on collecting umbilical cord blood at the time of a delivery. PharmaStem does not hold a good faith belief that such conduct by physicians could provide a basis for infringement liability.")

**D.    THIS PATENT INFRINGEMENT ACTION**

As set forth more fully in PharmaStem's Motion for an Injunction, more than two months *before* CorCell filed the 2004 Delaware Action, PharmaStem brought this suit alleging Patent infringement by CorCell and two provider defendants of patents which had not been asserted in the 2002 Delaware Action, on theories which were not before that Court. Shortly thereafter, and well before filing the 2004 Delaware Action, CorCell filed an Answer and Counterclaims in this case against PharmaStem and its CEO and President, Nicholas Didier. These counterclaims were for: federal unfair competition pursuant to 15 U.S.C. § 1125 (a) ("Section 43(a) of the Lanham Act"), intentional interference with contractual or other economic relationships, and trade libel/ commercial disparagement. *See* Counts I, II, III of CorCell's Counterclaims. CorCell's counterclaims in this case are largely based on PharmaStem's alleged conduct of enforcing or threatening to enforce its patents against health care providers, and its settlement agreements with such providers, and its agreements not to sue providers for patent infringement in exchange for the providers' agreement not to work with unlicensed cord blood banks, such as CorCell.[3]

PharmaStem initially moved to dismiss CorCell's counterclaims in this case on the basis that they had been raised in the *2002* Delaware Action when CorCell sought a post-trial injunction there. As that motion has not yet been decided, however, out of an abundance of caution assuming the ongoing *existence* of CorCell's counterclaims in this case, PharmaStem moved to enjoin CorCell from pursuing its *new* claims in the 2004 Delaware Action in the instant motion. As described in PharmaStem's initial briefing in support of its motion, and as further set forth below, the interests of justice demand that either CorCell's counterclaims in this case be

---

[3] PharmaStem's Motion To Dismiss CorCell's Counterclaims provides a more detailed discussion of these claims.

5

dismissed (for any of the number of reasons as set forth in PharmaStem's Motion to Dismiss) and/or that CorCell be precluded from pursuing its largely identical claims in the 2004 Delaware Action.

### III.   ARGUMENT

**A.   CORCELL'S COUNTERCLAIMS IN THIS CASE SHOULD BE DISMISSED AND/OR CORCELL SHOULD BE ENJOINED FROM PURSUING ITS LARGELY IDENTICAL CLAIMS IN THE 2004 DELAWARE ACTION.**

CorCell has tried to confuse this Court regarding PharmaStem's straightforward Motion to Dismiss and Motion for an Injunction. These two motions are not in conflict. As set forth below and in PharmaStem's Motion to Dismiss CorCell's counterclaims, PharmaStem's position has consistently been simply that CorCell should not be permitted to both have its Pennsylvania cake, and eat its Delaware cake too. PharmaStem maintains that this Court should dismiss CorCell's counterclaims in their entirety because, among other reasons, CorCell already sought relief for the gravamen of these claims when it sought an injunction during the pendency of post-trial motions in the 2002 Delaware Action. If, however, this Court decides *not* to dismiss CorCell's counterclaims on these or other grounds, PharmaStem has *also* moved the Court, via the instant motion, to enjoin CorCell from pursuing these claims in the *2004* Delaware Action. There is nothing contrary about these positions. PharmaStem's arguments are predicated on the fact that CorCell has brought similar, if not identical, claims (1) in the 2002 Delaware Action, (2) here, in the above captioned case, and (3) yet again, in the newly-filed 2004 Delaware Action. There is necessary overlap in these arguments, because CorCell's has brought overlapping claims in three cases in two jurisdictions.

**1.   CorCell's Counterclaims Should Be Dismissed In Their Entirety Because CorCell Sought Jurisdiction Over These Claims In The 2002 Delaware Action.**

As set forth PharmaStem's its Motion to Dismiss CorCell's counterclaims, CorCell's counterclaims should be dismissed because, among other reasons, "CorCell should be precluded or estopped from bringing its three counterclaims to this action because, of its own volition, it sought and achieved the Delaware district court's jurisdiction over the much of the same subject matter." Docket No. 16 (Motion to Dismiss) at 19. This statement was made to support the

6

dismissal of CorCell's counterclaims in this case because CorCell had already elected to seek injunctive relief in the 2002 Delaware Action on the same issues it later raised here as counterclaims. *Id.* Dismissing these counterclaims on these grounds is justified and within this Court's power because, as part of its general power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)("As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation."). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).

By selectively misquoting from PharmaStem's briefing, CorCell has tried to make it appear that PharmaStem sought to have CorCell's claims dismissed on the grounds that it brought them in the *2004* Delaware Action, but that is simply not true. *See* Docket No. 38 (CorCell's opposition to PharmaStem's Motion for an Injunction) at 5-6. PharmaStem has argued that (among other reasons) because CorCell brought these claims already in the 2002 Delaware Action, it should be precluded from bringing them again here. PharmaStem has separately maintained that in the event that this Court does *not* dismiss CorCell's counterclaims in this action on these or other grounds, CorCell should be precluded from pursuing its *2004* Delaware claims by way of the injunction sought in the instant motion.

  **2.**  **CorCell Should Be Precluded From Pursuing Its Claims In The 2004 Delaware Action Because Those Claims Should Be, And In Some Cases Have Been, Plead As Compulsory Counterclaims To This Action.**

CorCell has presented *identical* claims of federal unfair competition and intentional interference to two different courts. A comparison of CorCell's complaint in the Delaware action and CorCell's counterclaims in this case reveals that the allegations are nearly identical verbatim. *See* Counts VI, VIII, IX of Exh. 1 to PharmaStem's Motion for an Injunction (CorCell's Amended Delaware Complaint); Docket No. 9 (CorCell's Answer and Counterclaims). CorCell fails to address this issue in its opposition, presumably because it cannot. There is no justification for these claims going forward in two courts at the same time.

7

The only claim in CorCell's 2004 Delaware Action which is not largely identical to a counterclaim CorCell earlier raised in this case is CorCell's antitrust allegation. However, like CorCell's counterclaims in this case, the key to CorCell's antitrust allegation in the 2004 Delaware Action is whether medical care providers who collect umbilical cord blood for unlicensed cord blood banks, such as CorCell, can be liable for infringement of one of PharmaStem's patents. That is why, in that case, CorCell specifically pled that obstetricians cannot be held liable for patent infringement and that PharmaStem could not have a good faith belief that obstetrician liability exists under PharmaStem's asserted patents. *See* Exh. 1 to PharmaStem's Motion for an Injunction (CorCell's Amended Delaware Complaint), ¶42 ("under no proper interpretation of any claim of the PharmaStem Patents would an obstetrician be liable for patent infringement based merely on collecting umbilical cord blood at the time of a delivery. PharmaStem does not hold a good faith belief that such conduct by physicians could provide a basis for infringement liability.") If, as PharmaStem maintains, obstetricians can be held liable and PharmaStem holds this belief in good faith, then the antitrust claims must fail. Obstetrician liability is squarely before this Court.

**B. PHARMASTEM WILL BE IRREPARABLY HARMED IF THIS COURT DOES NOT ENJOIN CORCELL FROM PURSUING ITS CLAIMS IN THE 2004 DELAWARE ACTION.**

Any ruling regarding provider liability in this case will directly impact CorCell's claims against PharmaStem in the 2004 Delaware Action, as CorCell has specifically alleged in the Delaware case that there can be no provider liability for any of PharmaStem's Patents. Similarly, any ruling regarding provider liability in the 2004 Delaware Action will directly impact CorCell's counterclaims in this case. There can be no question that allowing CorCell to maintain largely identical actions in two jurisdictions is manifestly unfair to PharmaStem after it obtained relief on these same claims in an entirely different action. It provides CorCell multiple opportunities to prevail on the same claims before different Courts in three different actions. Thus, PharmaStem asks the Court to utilize its equitable powers to enjoin CorCell from pursuing its Delaware action and require it to bring its claims in this patent case. *See Small v. Wageman,* 291 F.2d 734 (1st Cir. 1961)("the power of one federal district court to enjoin a party from

8

undertaking to litigate the same question with the same opponent in another federal district court has most often been exercised in patent and copyright litigation.")

## C. THE PUBLIC INTEREST FAVORS ENJOINING CORCELL FROM PURSUING ITS CLAIMS IN THE 2004 DELAWARE ACTION.

Here, too, it is beyond dispute that having multiple Courts examine the same claims against a defendant is against the public interest. It is indisputable that both this Court and the Court presiding over the 2004 Delaware Action must both decide whether physicians can be held liable for patent infringement. In fact, CorCell specifically pled in the 2004 Delaware Action that PharmaStem *could not* have a good faith belief that physicians could be liable for infringement of its patents for the collection and shipment to an unlicensed cord blood bank of umbilical cord blood stem cells for future therapeutic use. *See* Exh. 1 to PharmaStem's Motion for an Injunction (CorCell's Amended Delaware Complaint), ¶42. CorCell has, by its clear hope that the Delaware Court will decide claims that appropriately belong here (if, in fact, they belong anywhere) set up a situation which invites inconsistent verdicts, further consuming judicial resources and rewarding CorCell's forum shopping. CorCell's actions are contrary to PharmaStem's right to have its claims heard in the jurisdiction in which it files its case, and as such, an unnecessary and inappropriate consumption of judicial resources, in clear derogation of the public interest.

To the extent that CorCell relies upon the motion it and the other infringing cord blood banks have brought before the Judicial Panel on Multidistrict Litigation ("JPML") as somehow precluding this effect, it is wrong. As CorCell is certainly aware, transfer by the JPML only pertains to discovery and pretrial issues. Cases transferred by the JPML must be remanded to the District Court in which they were filed for trial. *See* 28 U.S.C. § 1407. Thus, regardless of the outcome of the motion before the JPML, the public interest will be harmed if CorCell is allowed to continue pursuing claims in the 2004 Delaware Action which, (1) it has already brought in this action, and (2) it sought and obtained relief for in the 2002 Delaware Action, and (3) it should have brought in this action as compulsory counterclaims but raised again as new claims in the 2004 Delaware Action. The public interest in consistent verdicts and economical use of judicial

9

resources favors granting CorCell's motion to enjoin CorCell's participation in the 2004 Delaware Action.

## IV.    CONCLUSION

For all of the reasons set forth above, PharmaStem respectfully requests that this Court enter an Order as set forth in the [Proposed] Order attached to PharmaStem's motion for injunctive relieve enjoining CorCell from taking further action in Civil Action No. 04-1334-GMS in the District Court for the District Of Delaware.

DATED: November ___, 2004

By: _____
Michael D. LiPuma, Atty. I.D. #74790
Validation Code: ML445
Law Office of Michael LiPuma
Two Penn Center, Suite 200
Philadelphia, PA 19102
Attorneys for Plaintiff
PharmaStem Therapeutics, Inc.

OF COUNSEL:
PAUL J. ANDRE, Bar No. 196585
LISA KOBIALKA, Bar No. 191404
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350