IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHARMASTEM THERAPEUTICS, INC., | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civil Action No. 2:04-CV-03561-RK |
| CORCELL, INC., MOLLY McBRIDE, M.D. and CARLO M. CROCE, M.D. | : | |
| Defendants. | : | |
| CORCELL, INC., | : | |
| Counterclaim-Plaintiff, | : | |
| v. | : | |
| PHARMASTEM THERAPEUTICS, INC., NICHOLAS DIDIER, and STEMBANC, INC., | : | |
| Counterclaim-Defendants. | : | |

## ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS AS TO THE COUNTERCLAIMS AGAINST STEMBANC, INC.

AND NOW, this _____ day of _____, upon consideration of Defendant/Counterclaim-Plaintiff CorCell, Inc.'s, Defendant Molly McBride, M.D.'s, and Defendant Carlo M. Croce, M.D.'s Motion to Stay Proceedings and accompanying memorandum of law, Plaintiff/Counterclaim-defendant PhamaStem Therapeutics, Inc.'s and Counterclaim-defendant Nicholas Didier's response thereto, and Third-party counterclaim-defendant Stembanc, Inc.'s response thereto, it is hereby ORDERED that Defendants' Motion to Stay Proceedings is DENIED as to the proceedings related to the counterclaims asserted against Stembanc, Inc.

-2-

Alternatively, Defendants' Motion to Stay Proceedings is DENIED as to Stembanc's Motion to Dismiss.

By: _____
Kelly, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHARMASTEM THERAPEUTICS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civil Action No. 2:04-CV-03561-RK |
| CORCELL, INC., MOLLY McBRIDE, M.D. | : | |
| and CARLO M. CROCE, M.D. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| CORCELL, INC., | : | |
| Counterclaim-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PHARMASTEM THERAPEUTICS, INC., | : | |
| NICHOLAS DIDIER, and STEMBANC, | : | |
| INC., | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| Counterclaim-Defendants. | : | |

**COUNTERCLAIM-DEFENDANT STEMBANC INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

## **Preliminary Statement**

Third-party counterclaim defendant Stembanc, Inc. ("Stembanc") opposes Defendant/counterclaim plaintiff CorCell, Inc.'s ("CorCell"), defendant Molly McBride, M.D.'s ("McBride"), and defendant Carlo M. Croce, M.D.'s ("Croce") (collectively, "Defendants") request for a stay of all proceedings in this action. Defendants contend the stay is necessary because they have filed a request for transfer pursuant to the Multi-District Litigation procedures of 28 U.S.C. § 1407 ("MDL Motion"), but Defendants' motion for a stay ("Stay Motion") offers no argument explaining why the transfer request necessitates a stay of CorCell's counterclaims against Stembanc. Those counterclaims are unlikely to be coordinated or transferred and a stay as to those claims would waste judicial resources. Moreover, a stay would prejudice Stembanc but denial of a stay would not harm Defendants at all. Accordingly, Stembanc requests that this Court separate and exclude from any stay order the proceedings related to CorCell's counterclaims against Stembanc.

The party requesting a stay must demonstrate that the stay will promote judicial efficiency and that the harm that a denial of the stay would cause outweighs the harm that might flow from granting the stay. Despite this burden, Defendants' Stay Motion offers no argument whatsoever concerning CorCell's counterclaims against Stembanc ("Tort Claims"). On that basis alone, the request for a stay should be denied as to the Tort Claims.

Had Defendants addressed the Tort Claims, however, it would have become clear that a stay as to those claims is not warranted. The Tort Claims are likely to be separated from any transfer order issued by the Judicial Panel on Multi-District Litigation because those claims involve distinct factual and legal issues. Forcing CorCell to litigate the Tort Claims in a timely fashion would therefore not risk inconsistent rulings or duplicative judicial efforts. Furthermore,

a stay of the Tort Claims would subject Stembanc to unnecessary litigation and expense while a denial of the stay would simply force CorCell to litigate its claims.

If this Court does issue a stay as to the Tort Claims, then Stembanc respectfully requests that Stembanc's Motion to Dismiss be resolved before any stay is issued. Ruling on the motion to dismiss would promote judicial economy by eliminating extraneous issues and parties and would not prejudice Defendants.

## Statement of Facts

Stembanc is an Ohio corporation with its principal place of business in Chardon, Ohio. It provides collection, processing, and cryopreservation services for stem cells obtained from the umbilical cord and placental blood of a newborn child for the future potential benefit of the child (autologous banking) or for first-degree relatives, such as a sibling or parent. CorCell is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania and purports to be "in the business of private banking of umbilical cord blood." Answer and Counterclaims at 6 ¶¶ 1, 7; Complaint for Patent Infringement And Demand For Jury Trial ("Complaint") at 1 ¶ 2. McBride is purportedly a medical doctor licensed to practice in Pennsylvania. See Complaint at 2 ¶ 3. Croce is the Director of the Kimmel Cancer Institute and Kimmel Cancer Center at the Thomas Jefferson University in Philadelphia and a member of the Scientific and Medical Advisory Board of CorCell. See id. at 2 ¶ 4. PharmaStem Therapeutics, Inc. ("PharmaStem") is a Delaware corporation with its principal place of business in Larchmont, New York, and is the owner of U.S. Patents Nos. 5,004,681 B1 (the "'681 Patent"); 5,192,553 (the "'553 Patent"); 6,461,645 B1 (the "'645 Patent"); and 6,569,427 B1 (the "'427 Patent"), among others. In 2003, Stembanc obtained a license to practice the teachings contained in PharmaStem's patents.

PharmaStem has brought six actions for infringement of its patents against various parties, including CorCell, and is the defendant in an antitrust suit premised on the misuse of one or more of those patents (collectively, "Patent Litigations"). The Patent Litigations are outlined in the MDL Motion, which Defendants have attached to their Notice of Filing of Motion to Transfer for Consolidation and Coordination of Proceedings in a Single Forum ("Notice of MDL Motion") (filed on October 28, 2004). For the convenience of the Court, however, a brief summary of each action comprising the Patent Litigations follows.

<u>PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.</u>, Civ. Case No. 02-148 GMS (D. Del.), filed on February 22, 2002 ("Delaware Action"). PharmaStem brought the Delaware Action for infringement of the '681 and '553 Patents against various defendants, including CorCell. Neither McBride, Croce, nor Stembanc is a party to the Delaware Action.

<u>PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.</u>, Civ. Case No. 04-11673 RWZ (D. Mass.), filed on July 28, 2004 ("Massachusetts Action"). PharmaStem brought the Massachusetts Action for infringement of the '645 and '427 Patents. Neither CorCell, McBride, Croce, nor Stembanc is a party to the Massachusetts Action.

<u>PharmaStem Therapeutics, Inc. v. Cryo-Cell International, Inc., et al.</u>, Civ. Case No. 04-01740 JSM TGW (M.D. Fla.), filed on July 28, 2004 ("Florida Action"). PharmaStem brought the Florida Action for infringement of the '645 and '427 Patents. The defendants have answered and asserted counterclaims against PharmaStem and Nicholas Didier ("Didier"). Neither CorCell, McBride, Croce, nor Stembanc is a party to the Florida Action.

<u>PharmaStem Therapeutics, Inc. v. CureSource, Inc., et al.</u>, Civ. Case No. 04-00921 GLT AN (C.D. Cal.), filed on August 2, 2004 ("Central California Action"). PharmaStem brought the Central California Action for infringement of the '681, '645 and '427

Patents. Neither CorCell, McBride, Croce, nor Stembanc is a party to the Central California Action.

ViaCell, Inc., et al. v. PharmaStem Therapeutics, Inc., Civil Action No. 04-1335-GMS (D. Del.), filed October 5, 2004 ("2004 Delaware Action"). Plaintiffs, including CorCell, brought the 2004 Delaware Action against PharmaStem alleging, inter alia, violations of the federal anti-trust laws, federal unfair competition, unfair trade acts pursuant to Massachusetts and Florida statutory law, and common law torts. Neither, McBride, Croce, nor Stembanc is a party to the 2004 Delaware Action.

PharmaStem Therapeutics, Inc. v. Cord Blood Registry, Inc., et al., Civil Action No. 04-3072 JSW (N.D. Cal.), filed July 28, 2004 ("Northern California Action"). PharmaStem brought the Northern California Action for infringement of the '645 and '427 Patents against Cord Blood Registry, Inc. ("CBR") and Sutter Health, Inc. The defendants have answered. CBR has asserted counterclaims against PharmaStem and Didier and they have filed motions to dismiss. CBR also purported to join Stembanc and Archibald A. Grabinski ("Grabinski"), CEO of Stembanc, as third-party counterclaim defendants. Stembanc and Grabinski have moved to dismiss all claims against them, CBR filed its oppositions on November 19 and November 22, and a hearing is scheduled for January 7, 2005. Neither CorCell, McBride, nor Croce is a party to the Northern California Action.

PharmaStem Therapeutics, Inc. v. CorCell, Inc., et al., Civil Action No. 04-03561 RK (E.D. Pa.), filed on July 28, 2004 ("Pennsylvania Action"). PharmaStem brought the Pennsylvania Action for infringement of the '645 and '427 Patents against CorCell, McBride, and Croce. The defendants have answered and asserted counterclaims against PharmaStem and Didier. CorCell also purportedly named Stembanc as a third-party counterclaim defendant

without obtaining leave of court. Stembanc has moved to dismiss all claims against it and that motion is currently pending before the Court.

As noted above, Stembanc has been purportedly named as third-party counterclaim defendant in the Northern California Action and in the instant lawsuit, although in neither case did the counterclaimants obtain leave to join Stembanc. In both actions, the counterclaims involving Stembanc are based on a handful of statements that Stembanc allegedly made. In the Northern California Action, CBR alleged violation of section 43(a) of the Lanham Act ("Section 43(a)") and asserted five claims that purportedly sound under California's common law. See Exhibit A at 18-21 ¶¶ 36-59 (CBR Answer and Counterclaims). In this action, CorCell alleged a Section 43(a) violation and asserted two claims under Pennsylvania's common law. See Answer and Counterclaims at 14-16 ¶¶ 28-46. All of these claims are meritless because the statements on which they are based are not actionable as a matter of state and federal law.

Stembanc has attempted to resolve CorCell's claims without further litigation, but CorCell has refused even to discuss withdrawing the claims, despite requests for such discussions. See Exhibits B & C (Letters Regarding Dismissal). Consequently, Stembanc has been forced to file a motion to dismiss CorCell's counterclaims for failure to state a claim on which relief may be granted.

On October 26, 2004, after Stembanc had filed its motion to dismiss in this action and after Stembanc and Grabinski had filed their motions to dismiss in the Northern California Action, Defendants and other parties involved in the Patent Litigations filed the MDL Motion requesting the transfer of the Patent Litigations to the United States District Court for the District of Delaware for coordinated pre-trial proceedings before Judge Sleet. See Notice of MDL Motion. The MDL Motion did not discuss CorCell's counterclaims against Stembanc in this

action ("Tort Claims") nor did it address the claims asserted against Stembanc and Grabinski in the Northern California Action. See id. One month after filing the MDL Motion, Defendants filed the instant request for a stay of all proceedings in this action ("Stay Motion") pending resolution of the MDL Motion. On November 22, 2004, Stembanc filed an Opposition to the MDL Motion, requesting that the Judicial Panel on Multi-District Litigation ("Panel") separate and sever from any transfer order all claims asserted against Stembanc and Grabinski because those claims involve distinct issues of law and fact and transfer would unnecessarily burden Stembanc and Grabinski.[1] See Exhibit D (Opp. to MDL Motion). On November 30, the parties who had joined in the MDL Motion filed a joint reply. See Exhibit E (Reply In Support of MDL Motion). The reply again failed to address either the Tort Claims asserted against Stembanc in this action or the claims lodged against Stembanc and Grabinski in the Northern California action, except in passing in one footnote. See Exhibit E at 8 n.8.

### Standards Governing Motion to Stay

In deciding whether or not to issue a stay, the Court must "weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248 at 254-55 (1936). The decision to grant or deny a stay is within the discretion of the Court, but the courts in this circuit have held the following factors are to be considered: "(1) whether the stay will simplify issues and promote judicial economy; (2) the balance of harm to the parties; and (3) the

---

[1] Defendants' statement that "Stembanc has asked that the claims against it be transferred to Ohio or California" mischaracterizes Stembanc's argument in its Opposition to the MDL Motion. Stay Motion at 4. Stembanc's Opposition requested that the claims against it and Grabinski be separated from any transfer order and only if those claims are to be transferred, that they be transferred to either the Northern District of Ohio or Northern District of California. See Ex. D (Opp. to MDL Motion).

length of the requested stay." SmithKline Beecham Corp. v. Apotex Corp., et al., Civ. A. No. 99-CV-4304, 2004 WL 1615307 *7 (E.D. Pa. 2004); accord Gold et. al. v. Johns-Manville Sales Corp., et al., 723 F.2d 1068, 1075-76 (3d Cir. 1983) (applying same factors in affirming denial of stay). Moreover, when it appears that "there is even a fair possibility that the stay . . . will work damage to some one else," the moving party "must make out a clear case of hardship or inequity in being required to go forward . . . ." Landis, 299 U.S. at 255. Pendency of a transfer motion before the Judicial Panel of Multi-district Litigation ("JPML") does not alter those requirements or suspend proceedings in the district court. See Rule of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML Rules") 1.5 ("[t]he pendency of a motion . . . before the Panel concerning transfer . . . of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court"); Grider v. Keystone Health Plan Central, Inc., No. Civ. A. 2001-CV-05641, 2004 WL 1047840 *1 n.1 (E.D. Pa.. 2004) ("[W]e conclude that the fair and efficient adjudication of this matter is better served by continuing to proceed with this matter on its current schedule until such time as the MDL Panel makes its determination on defendants' request for transfer. Thus, we deny defendants' motion for stay").

## Argument

### I. THE TORT CLAIMS SHOULD NOT BE STAYED

Defendants bear the burden of establishing that a stay is warranted. Despite this burden, Defendants make no argument explaining why the proceedings related to the Tort Claims against Stembanc should be stayed. On that basis alone, therefore, Defendants have failed to establish that they are entitled to a stay of those proceedings. If Defendants had addressed the Tort Claims, however, it would have become clear that none of the arguments

Defendants proffer in support of their request for a stay applies to the those claims. The Tort Claims present issues of fact and law distinct from the Patent Litigations that are the true subject of Defendants' MDL Motion and stay request. Consequently, directing CorCell to prosecute the Tort Claims would not risk inconsistent rulings or duplicative judicial efforts. Furthermore, Stembanc would be prejudiced by a stay, whereas Defendants have identified no harm that they would suffer from being forced to proceed on the Tort Claims.

A.  **Defendants Have Not Shown A Stay is Necessary For the Tort Claims**

It is well-settled that the moving party must establish the need for a stay and make out a clear case that the balance of hardships weighs in favor of the stay. See Landis, 299 U.S. at 255. The pendency of a request for transfer pursuant to the Multi-District Litigation procedures of 28 U.S.C. § 1407 does not alter this burden. See JPML Rule 1.5.

Despite this clear requirement, Defendants simply do not address in the Stay Motion why a stay with respect to the Tort Claims is necessary. Instead, Defendants give a lengthy procedural account detailing the various actions comprising the Patent Litigations and identifying which patents PharmaStem has asserted in each. See Stay Motion at 2-5. Defendants argue a stay is necessary to prevent inconsistent rulings that might result if various district courts conduct parallel claim construction on PharmaStem's patents, but Defendants do not explain how proceeding with the Tort Claims against Stembanc would produce inconsistent rulings. See id. at 6. Finally, the motion concludes with a cursory paragraph distinguishing McBride's Motion to Dismiss with Stembanc and Didier's motions to dismiss. See id. at 7. Aside from mentioning the Tort Claims against Stembanc in passing, therefore, Defendants' Stay Motion simply does not address the distinct issues involved in the Tort Claims nor the hardships a stay would pose for Stembanc. Accordingly, Defendants have failed to meet their burden of establishing the

necessity of a stay, and on that basis alone, their motion should be denied as to any proceedings related to the Tort Claims. See e.g. SmithKline Beecham, 2004 WL 1615307 *9 (staying proceedings on two patents but not against the rest of the proceedings because "the litigation between SmithKline and Apotex involves patents other than the '723 and '944 Patents, we see no need to stay that litigation and expect that it will go forward").[2]

### B. A Stay of the Tort Claims Against Stembanc is Unwarranted

If Defendants had actually addressed the Tort Claims, however, it would have become clear that none of the arguments Defendants have offered in favor of a stay applies to those claims.

#### 1. Proceeding on the Tort Claims would promote judicial efficiency

Defendants argue that "[a]bsent a stay in this action, there is a significant concern for inconsistent rulings on pending motions to dismiss counterclaims against PharmaStem, Didier, and Stembanc" and Defendants raise the possibility of parallel claim construction of PharmaStem's patents by various district courts. See Stay Motion at 6. These concerns simply

---

[2] Moreover, Defendants ought not be granted leave to raise any new arguments regarding the Tort Claims on reply. Such "sandbagging" would severely prejudice Stembanc, as recognized by Judge Sleet, the very judge to whom Defendants seek to transfer the Patent Litigations. See Rockwell Technologies, LLC v. Spectra-Physics Lasers, Inc., No. 00-589 GMS, 2002 WL 531555, at *3 (D. Del. 2002) ("Rockwell's tactic of reserving new arguments for its reply brief amounts to impermissible 'sandbagging'") (citations omitted); see also, Sitka Sound Seafoods, Inc. v. N.L.R.B., 206 F. 3d 1175, 1181 (D.C. Cir. 2000) ("[O]nly in [appellant's] reply brief does it actually argue the point. As a result the [appellee], in its brief, understandably does not respond to the argument. In order to prevent 'this sort of sandbagging of appellees and respondents, we have generally held that issues not raised until the reply brief are waived'") (citations omitted); Lentini v. California Center For the Arts, Escondido, 370 F. 3d 837, 843 n.6 (9th Cir. 2004) ("For the first time in their reply brief, the appellants argue directly that the Center did not violate the ADA. . . .We decline to consider this argument because the appellee has not been given the opportunity to respond").

do not apply to the Tort Claims against Stembanc, however, because the Tort Claims involve distinct factual and legal issues.

That the Tort Claims present distinct issues cannot seriously be disputed. Stembanc is a licensee of PharmaStem's and has a license to practice the teachings contained in PharmaStem's patent portfolio. PharmaStem has never alleged, nor could it allege, that Stembanc infringed any of those patents. Obviously, as a licensee, Stembanc has not alleged that any of PharmaStem's patents is invalid or unenforceable. Therefore, none of the patent issues dominating the Patent Litigations involve Stembanc at all.

Furthermore, the Tort Claims do not overlap with the causes of action brought against PharmaStem in the Florida, Northern California, and 2004 Delaware Actions based on PharmaStem's alleged patent misuse and false advertising. Stembanc is a licensee of PharmaStem's patents. There is no allegation in any of the complaints in any of the cases subject to the MDL Motion suggesting that Stembanc is responsible for PharmaStem's statements or actions. As for the 2004 Delaware Action, Stembanc has never been named as a party to that action -- even after the plaintiffs amended the complaint -- and nowhere in the 143 paragraphs of the complaint dedicated to PharmaStem's statements and actions is Stembanc mentioned. See Exhibit F (Amended Complaint in the 2004 Delaware Action).

Finally, to the extent the Tort Claims against Stembanc in this action present any common issue with the claims against Stembanc in the Northern California Action, the overlap does not warrant a stay. First, many of the statements that CBR, in the Northern California Action, accuses Stembanc of making differ from the statements that CorCell, in this action, accuses Stembanc of making. Second, five of the six claims against Stembanc in the Northern California action purportedly sound in the common law of California. See Exhibit A at 18-21 ¶¶

36-59 (CBR Answer and Counterclaims). Conversely, two out of three of CorCell's Tort Claims against Stembanc purportedly sound in Pennsylvania law. See Answer and Counterclaims at 14-16 ¶¶ 28-46. In fact, the only claim in common between the Northern California Action and the Tort Claims in this action is a claim for false advertising under section 43(a) of the Lanham Act. There is, however, little risk that the two Lanham Act claims would result in inconsistent rulings because the law is absolutely clear, both in the Third Circuit and in the Ninth Circuit, that Stembanc's statements are not subject to liability under the Lanham Act. See, e.g., Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F. 2d 222, 232 (3d Cir. 1990); Coastal Abstract Service, Inc. v. First American Title Ins. Co., 173 F. 3d 725, 731 (9th Cir. 1999).

Because the Tort Claims involve distinct issues, there is no risk that proceeding on those claims would result in inconsistent rulings or duplicative efforts. In fact, allowing the Tort Claims to proceed in this Court would promote judicial economy because this Court is best equipped to resolve questions of Pennsylvania law -- the law that will govern the Tort Claims even if the Panel transfers those claims to Delaware, as Defendants have requested. See, e.g., Gulf Oil v. Gilbert, 330 U.S. 501, 509 (1947), superceded by statute on other grounds ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself"); Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 54 F. Supp. 2d 1042, 1048 (D. Kan. 1999) ("[n]o great judicial economy will be realized from a delay . . . [t]he Court is well versed in both Kansas and federal law, while the transferor [sic] court would need to apply the law of different states to different claims"); Kohl v. American Home Products, Corp., 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999) ("uniformity in the handling of the diet drug cases [consolidated under MDL Procedures] will

not be compromised by deciding a unique question wholly dependent on the law of the State of Arkansas").[3]

### 2. The balance of hardships weighs against staying the Tort Claims

Defendants do not address the hardships that a stay of the Tort Claims would impose on Stembanc. Instead, Defendants' only argument regarding prejudice is that "there is no prejudice to PharmaStem caused by the stay." Stay Motion at 6. As explained above, Defendants' failure to address the hardship imposed on Stembanc is grounds to deny its Stay Motion as to the Tort Claims. Although CorCell may wish to ignore Stembanc – the third-party that CorCell improperly sued –the law requires consideration of Stembanc's interests. In fact, staying the Tort Claims would impose substantial burdens on Stembanc by forcing Stembanc to litigate numerous issues not substantively connected to CorCell's claims against it. For example, while Stembanc's Motion to Dismiss has been pending before this Court, Stembanc has already been forced to preserve its rights by opposing the MDL Motion and this Stay Motion. Furthermore, if this case were consolidated and transferred to Delaware, Stembanc would incur yet more expense -- for example, hiring local counsel and complying with Delaware local rules – all before Stembanc has a chance to proceed on any of the claims CorCell has asserted against it.

In contrast to the hardship imposed upon Stembanc, Defendants make no argument as to the hardships they might suffer if the claims are allowed to proceed. Nor could

---

[3] Defendants have attached a stay order issued in the Florida Action. See Stay Motion Ex. A. That stay is irrelevant to Defendants' instant request. First, as CorCell points out, the stay was issued because "[t]he Court believes that one court should construe the patents to maintain judicial economy." Stay Motion Ex. A at 3 (Clerk's Minutes); see Stay Motion at 4. That concern is irrelevant to the Tort Claims because they do not involve the construction of PharmaStem's patents. Second, neither Stembanc nor CorCell is a party to the Florida Action. Finally, the Florida Action involves only the plaintiff and defendants, not third parties. Conversely, in this action, CorCell has improperly asserted claims against Stembanc and will continue to harass Stembanc until those claims are defeated.

they. First, neither McBride nor Croce asserted counterclaims against Stembanc, and they will be unaffected if the Tort Claims are allowed to proceed. Second, because the Tort Claims present distinct issues, proceeding on those claims will not result in CorCell engaging in duplicative proceedings. In fact, CorCell is a party only in three of the actions that are subject to the MDL Motion: this action, the Delaware Action, and the 2004 Delaware Action. As discussed above, the Tort Claims do not raise issues that are being litigated in the Delaware Action or the 2004 Delaware Action. Moreover, the Delaware Action is unlikely to be consolidated in any event because it is already in post-trial proceedings; the Multi-District Litigation procedures permit coordination only for pre-trial proceedings. See 28 U.S.C. § 1407(a). Accordingly, CorCell will not be burdened by litigating the claims that it itself chose to bring against Stembanc well after the Delaware Action had already begun and before CorCell joined as plaintiff in the 2004 Delaware Action.[4]

## II. IF THE TORT CLAIMS ARE STAYED, THE MOTION TO DISMISS FILED BY STEMBANC SHOULD STILL BE RESOLVED

Even if the Court grants Defendants' Stay Motion in its entirety, the Court should first resolve Stembanc's Motion to Dismiss. It is well-established that motions to dismiss raising issues particular to the case should be resolved before issuing a stay. See Bellorini v.

---

[4] Defendants' citation to American Seafood, Inc. v. Magnolia Processing, Inc., Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762 (E.D. Pa. 1992) is inapposite to the Tort Claims. In American Seafood, the court noted that absent a stay, the defendants "may be forced to prosecute or defend similar motions [to dismiss and motions for class action certification] twice and the decisions of this Court and the Northern District may conflict." Id. at *2. That is not the case here. As explained above, the Tort Claims present distinct questions of law and fact. CorCell is not asserting the Tort Claims against Stembanc in any other action, Stembanc is a third-party counterclaim defendant in only the Northern California Action, and the Tort Claims involve distinct questions of Pennsylvania law. Accordingly, unlike American Seafood, allowing the Tort Claims to proceed will not force Defendants to prosecute or defend similar motions and will not risk inconsistent rulings.

Bridgestone/Firestone, Inc., 236 F. Supp. 2d 670, 676 (W.D. Tex. 2001) ("Here, the issues raised by Plaintiffs' Motion to Remand are unique to this case and would benefit little from coordinated discovery under the MDL panel"); Federal Judicial Center, Manual for Complex Litigation at 221 (4th ed. 2004) ("[w]hen notified of the filing of a transfer [pursuant to 28 U.S.C. § 1407]. . . matters such as motions to dismiss or to remand, raising issues unique to the particular case, may be particularly appropriate for resolution before the Panel acts on the motion to transfer"). Because the Motion to Dismiss filed by Stembanc raises matters of Pennsylvania law particular to this action, that motion should be resolved before any stay issues. In addition, prompt resolution of the motion would foster judicial economy by weeding out extraneous parties and issues. See, e.g. Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 54 F. Supp. 2d 1042, 1048 (D. Kan. 1999) ("No great judicial economy will be realized from a delay. The parties will not save time, for they have already briefed the remand issue. The Court is well versed in both Kansas and federal law, while the transferor [sic] court would need to apply the law of different states to different claims"). Prompt resolution of the motion would also protect Stembanc from further unnecessary expense. The Tort Claims are without merit. Despite Stembanc's requests for informal resolution, CorCell has refused even to discuss withdrawing the claims. See Exs. B & C. It strongly appears that CorCell is more interested in harassing Stembanc than in pursuing legitimate claims. Therefore, Stembanc needs the protection of a quick resolution.

      In fact, Defendants essentially concede that Stembanc's Motion to Dismiss should be resolved because they request that this Court resolve the Motion to Dismiss filed by McBride even if a stay issues. See Stay Motion at 7. They argue that "[t]here was never any proper basis for bringing Dr. McBride before this Court," and "[a] ruling in her favor on this issue . . . will dismiss her from the only action in which she has been named, and free her from the burden of

this litigation." Id. The same applies to Stembanc. Defendants' attempt to distinguish McBride from Stembanc by claiming Stembanc has also been sued in the Northern California Action and therefore "may remain in the litigation" even if this Court grants Stembanc's Motion to Dismiss is without merit. Id. The claims against Stembanc in the Northern California Action are also subject to a motion to dismiss, and if both motions to dismiss are granted, Stembanc would be relieved from the Patent Litigations altogether. That two parties have chosen to harass Stembanc with meritless claims should not influence this Court's resolution of Stembanc's Motion to Dismiss. In fact, Defendants concede that the parties have yet to complete supplemental briefing on McBride's Motion to Dismiss, whereas Stembanc's Motion to Dismiss has been fully briefed since November 12, 2004, making a stay as to that motion <u>less</u> appropriate than a stay as to McBride's motion. <u>See</u> Stay Motion at 5.

### Conclusion

For the foregoing reasons, Defendants' Motion to Stay should be denied as to the Tort Claims, or, alternatively, Stembanc respectfully requests that this Court resolve its Motion to Dismiss before any stay issues. Stembanc respectfully requests oral argument in accordance with <u>Local Rules of Civil Procedure</u> 7.1(f).

Respectfully submitted,

_____
Larry R. Wood, Jr. (Pa. ID NO. 72138)
Kathleen A. Mullen (Pa. ID NO. 84604)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

OF COUNSEL:
Samuel B. Shepherd, Esquire

-16-

QUINN EMANUEL URQUHART
 OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000

Dated: December 8, 2004

## CERTIFICATE OF SERVICE

I, Kathleen A. Mullen, hereby certify that on December 8, 2004, a true and correct copy of the foregoing Counterclaim Defendant Stembanc, Inc.'s Memorandum of Law in Opposition to Defendant's Motion to Stay was served via hand delivery upon the following:

Michael D. LiPuma, Esquire
Two Penn Center
Suite 200
Philadelphia, PA  19103

James J. Rodgers, Esquire
Dilworth Paxton LLP
1735 Market Street
Philadelphia, PA  19103

_____
KATHLEEN A. MULLEN