IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 2:04-CV-03561-RK ) ) |
| CORCELL, INC., MOLLY McBRIDE, M.D. and CARLO M. CROCE, M.D. | ) ) ) |
| Defendants. | ) ) |
| CORCELL, INC., | ) ) |
| Counterclaim-Plaintiff | ) ) |
| vi. | ) ) |
| PHARMASTEM THERAPEUTICS, INC., NICHOLAS DIDIER and STEMBANC, INC., | ) ) ) |
| Counterclaim-Defendants. | ) |

## ORDER

AND NOW, this ___ day of _____, 2004, upon consideration of Pharmastem Therapeutics, Inc.'s Motion for an Injunction and CorCell, Inc.'s Opposition thereto, it is hereby ORDERED and DECREED that Pharmastem Therapeutics, Inc.'s Motion is DENIED.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 2:04-CV-03561-RK |
| CORCELL, INC., MOLLY McBRIDE, M.D. and CARLO M. CROCE, M.D. | ) |
| Defendants. | ) |
| CORCELL, INC., | ) |
| Counterclaim-Plaintiff | ) |
| v. | ) |
| PHARMASTEM THERAPEUTICS, INC., NICHOLAS DIDIER and STEMBANC, INC., | ) |
| Counterclaim-Defendants. | ) |

FILED NOV 10 2004

**DEFENDANT CORCELL'S MEMORANDUM OF
LAW IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY AND PERMANENT INJUNCTION**

**INTRODUCTION**

Plaintiff PharmaStem Therapeutics, Inc. ("PharmaStem") has asked this Court to enjoin defendant Corcell, Inc. ("Corcell") from pursuing the claims that Corcell has made in an action filed in the District of Delaware, *ViaCell, Inc., et al. v. PharmaStem Therapeutics, Inc.*, Civil Action No. 04-1335-GMS. As PharmaStem presents the case, Corcell is guilty of forum shopping, by bringing suit in Delaware on essentially the same claims it has raised in this action as counterclaims, risking inconsistent adjudications, duplicative efforts of the litigants and an

562903_1

unnecessary waste of judicial resources. In reality, it is PharmaStem that has commenced a multiplicity of actions designed to avoid the one district court that has intimate familiarity with the technology involved in the patents asserted in this case, and which has already made a preliminary injunction ruling on some of the conduct that underlies Corcell's claims against PharmaStem. It is PharmaStem's actions, not Corcell's, that have created the very risks that it complains of here.

Accordingly, PharmaStem's motion must be denied.

## STATEMENT OF FACTS

PharmaStem brought the first of the related series of lawsuits in Delaware in February, 2002. *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.*, No. 02-CV-0148-GMS, asserting infringement of its two U.S. Patents 5,004,681 ("the '681 Patent") and 5,192,553 ("the '553 Patent"). That case proceeded to trial in October, 2003. After a jury verdict finding the patents valid, enforceable and infringed, the parties filed post-trial motions. While those motions were pending, PharmaStem embarked upon a publicity campaign designed to coerce and intimidate obstetricians from collecting umbilical cord blood for their patients who were customers of the defendant cord blood banks, including Corcell. That campaign was initiated with a letter dated June 1, 2004. The defendants, including Corcell, sought interim relief from Judge Sleet in the District of Delaware, who found that PharmaStem's June 1 letter contained false and misleading statements concerning the law of infringement and the proceedings before the Delaware court. On July 2, 2004, the Delaware court issued a preliminary injunction against further false and misleading statements directed to obstetricians.

PharmaStem's response to this action of the Delaware court was to commence a series of actions in district courts around the country, in each case suing a private umbilical cord blood

bank that had not agreed to license PharmaStem's patents, and joining in each case one or more physicians, medical groups or health care facilities. The addition of these defendants, such as Drs. Molly McBride and Carlo M. Croce who were sued in this case, was intended to lend a patina of legitimacy to PharmaStem's threats to impose infringement liability on health care providers for merely collecting cord blood at the request of their patients, an act that cannot reasonably be alleged to infringe any of PharmaStem's patents. The new suits raised only U. S. Patents Nos. 6,461,645 ("the '645 Patent") and 6,569,427 ("the '427 Patent"), which issued after commencement of the 2002 Delaware action.

While PharmaStem has asserted that it brought these suits in widespread jurisdictions only because some of the defendants could not have been sued in Delaware, it is clear that is precisely the reason why some of the defendants were chosen. There is no reason why PharmaStem could not have brought its case to validate its supposed theory of infringement by doctors by including one or more of the Delaware doctors whom it has threatened, including Dr. McBride. To the contrary, the strategy was selected to avoid Judge Sleet and to complicate the process of pursuing an efficient and fair adjudication of the issues under PharmaStem's related patents, including the '645 and '427 patents asserted in this case, as well as to fragment the adjudication of PharmaStem's patent misuse and anticompetitive conduct in threatening enforcement of its patents beyond their scope.

On September 15, 2004, Judge Sleet entered his decision on post-trial motions in No. 02-CV-0148-GMS, vacating the judgment entered on the jury verdict, entering judgment as a matter of law in defendants' favor on infringement of the '553 patent and ordering a new trial on the '681 patent. Of particular significance was Judge Sleet's ruling (consistent with the jury instructions at trial and the July 2, 2004 order) that a defendant could not be liable for

contributory infringement of the '553 patent, PharmaStem's method patent for the use of cord blood by providing a service; rather, contributory infringement of that patent would require the sale or offer for sale of cord blood. The clear implication of that holding is that physicians and other health care providers, who plainly do not sell cord blood or offer it for sale, cannot be liable for contributory infringement of the '427 patent, another method patent for the use of cord blood. Nevertheless, PharmaStem continued to issue statements and send correspondence designed to intimidate obstetricians to refuse to collect cord blood for their patients who are customers of the "unlicensed" cord blood banks.

When PharmaStem questioned Judge Sleet's jurisdiction to deal with those portions of its campaign of intimidation that were ostensibly based on patents other than the two that were before him, the defendants felt it necessary to commence a new action before Judge Sleet, Civil Action No. 04-1335-GMS, and to seek preliminary injunctive relief in that case against PharmaStem's anticompetitive conduct. PharmaStem's response was to file motions in this court, and in the Middle District of Florida (against Cryo-Cell International, Inc.) and the District of Massachusetts (against ViaCell, Inc.) seeking to preclude the pursuit of that action. In Florida and in Massachusetts, PharmaStem sought temporary restraining orders to prevent Cryo-Cell and ViaCell from participating in the injunction hearing before Judge Sleet on November 3, 2004. Both courts denied the requested TROs.

Judge Sleet conducted a hearing in Delaware on November 3, 2004 on (1) the motion of ViaCell, in which Corcell has joined, for a preliminary injunction against PharmaStem, (2) the motion of Corcell and the other defendants in Delaware to hold PharmaStem in contempt of the July 2, 2004 order, and (3) the motion of PharmaStem for a preliminary injunction against

Corcell and the other defendants in that case. The Court has taken those matters under advisement.

Corcell and the other defendants in PharmaStem's infringement cases have jointly filed a Motion to Transfer for Consolidation and Coordination of Pretrial Proceedings in a Single Forum with the Judicial Panel on Multidistrict Litigation, *In re: PharmaStem Therapeutics Patent Litigation,* MDL No. 1660. Should the Panel agree with Corcell and the other moving parties, the entire controversy involving PharmaStem's patents, and its misuse of those patents, will be coordinated before Judge Sleet in the District of Delaware. At a case management conference on November 9, 2004, Judge Moody of the Middle District of Florida stayed all proceedings in that case for 120 days to allow time for the Judicial Panel on Multidistrict Litigation to act on the Motion now before it to consolidate all of the related cases for pretrial proceedings before Judge Sleet. Judge Moody directed that, if the Panel has not voted within that time, PharmaStem could re-present its motion for an injunction. *See* Middle District of Florida, Tampa Division, Clerk's Minutes – Civil General, attached hereto as Exhibit 1.

## ARGUMENT

PharmaStem's extraordinary motion for injunctive relief is without any substantial basis, and should be denied.

### A.  PharmaStem Has Failed To Show A Likelihood Of Success On The Merits of Its Position

It is somewhat ironic that PharmaStem has now come before this Court, seeking to enjoin Corcell from pursuing its claims in the 2004 Delaware case, since in moving to dismiss Corcell's counterclaims, it argued that these matters should be pursued in Delaware.

On October 13, 2004, PharmaStem filed its motion to dismiss Corcell's counterclaims in this action. In its supporting memorandum, PharmaStem urged this Court to dismiss Corcell's

tort claims against PharmaStem, arguing that "Corcell should be precluded or estopped from bringing its ...counterclaims to this action because, of its own volition, it sought and achieved the Delaware district court's jurisdiction over the same subject matter.... Here, the operative facts are exactly the same as those at issue in the other court. The relevant parties are also the same. There was nothing preventing Corcell from seeking the relief sought *in this case in the Delaware Action*." PharmaStem's Motion to Dismiss and Memorandum of Law at 15 (italics added for emphasis).

Now, on October 29, 2004, PharmaStem argues that the claims asserted by Corcell in Delaware are compulsory counterclaims that must be brought in this action, and asks this Court to enjoin Corcell from pursuing them in Delaware. In support of the motion for an injunction, PharmaStem asserts in virtually identical words: "Here, the operative facts are exactly the same as those at issue in the other court. The relevant parties are also the same. There was nothing preventing Corcell from seeking the relief sought *in the Delaware Action in this case* when it filed its counterclaims." PharmaStem Memorandum of Law in Support of its Motion for Preliminary and Permanent Injunction at 8, n.5 (italics added for emphasis). Note the flip-flop in the italicized conclusions drawn in the respective memoranda.

Accepting the irony of this motion, Corcell was not required to bring its claims from the Delaware action in this case. Corcell's claims in the Delaware case do not constitute compulsory counterclaims. The allegations made by Corcell in the Delaware case, although related to the allegations presented in this case, relate specifically to the misuse of PharmaStem's patents, and not to issues of invalidity of the '645 and '427 patents that are asserted in the complaint in this action. It is well settled law that claims based on patent misuse are not compulsory counterclaims under Federal Rule of Civil Procedure 13(a) in a patent infringement action.

562903_1        6

*Mercoid Corporation v. Mid-Continent Inv. Co.*, 320 U.S. 661 (1944); *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 703 (2nd Cir. 2000); and *Rixon, Inc. v. Racal-Milgo, Inc.*, 551 F. Supp. 163, 184 (D. Del. 1982). This exception to Rule 13(a) is especially true in this case where the Delaware court specifically addressed some of the issues presented in the Delaware case in a previous proceeding. Also, it is the misuse of the '553 and '681 patents that were the subject of the initial Delaware litigation, not just the '427 and '645 patents, that is at issue in Delaware.

Corcell's Delaware claims include a claim under the antitrust laws based on PharmaStem enforcing or threatening to enforce its patents against providers beyond their scope, and its publication and execution of the Amnesty Agreements with providers, wherein the provider is required to agree not to work with unlicensed cord blood banks, such as Corcell, without regard to the limitations of the patents. Corcell's claims are based on PharmaStem's misuse of its patent rights. Therefore, the inquiries in the Delaware case and this case are not identical; PharmaStem's claims of infringement by Corcell of the '645 and '427 patents are not at issue in the Delaware case. The inquiry in the Delaware case relates to whether PharmaStem has misused it patent rights by attempting to expand the scope of its '553 and '681 patents in a manner violative of federal antitrust laws and other state laws. As the *Critical-Vac* court explained, "antitrust violations based on patent misuse . . . are likely to involve factual issues distinct from those involved in patent infringement litigation between the parties." *Critical-Vac*, 233 F.3d at 703. As such, the claims in the Delaware case involve issues distinct from those involved in this case. Therefore, the claims in the Delaware case are not compulsory counterclaims to this case. The cases relied on by PharmaStem to support is argument regarding the compulsory nature of Corcell's allegations in the Delaware case are inapposite to the present

case. None of the cited cases present issues related to a patent owner's misuse of its patent rights, and, therefore, cases applicable to the exception to Rule 13(a). *See Transamerica Occidental Life Ins. Co., v. Aviation Office of America, Inc., International Ins. Co.*, 292 F.3d 384 (3rd Cir. 2002); and *Servian v. Health Data Sciences Corp.*, 1992 WL 1747051 (E. D. Pa. 1992).

Further, PharmaStem's reliance on *Small v. Wageman*, 291 F.2d 734 (1st Cir. 1961) setting forth the "first filed" rule is misplaced. *Wageman* specifically addresses cases filed in separate jurisdictions, wherein each action, and the issues involved, are identical in both jurisdictions, again inapposite to the facts presented in this case. *See Small v. Wageman*, 291 F.2d at 735. As noted above, the gravamen of the recently-filed Delaware action is patent misuse, not infringement and validity. Indeed, PharmaStem should not be entitled to claim the benefit of the "first filed" rule when it first invoked the jurisdiction of the Delaware court to enforce its patents against Corcell in 2002.

PharmaStem's argument that Corcell forum shopped is baseless. Corcell brought its claims in the forum that PharmaStem first selected to litigate the enforcement of its patents, and a court that has already issued an injunction against false and misleading statements by PharmaStem directed to obstetricians, the Delaware court. As stated above, PharmaStem has avoided bringing this action in the forum already familiar with patents related to those at issue in this case, trying to avoid Judge Sleet and complicating the fair adjudication of the '645 and '427 patents.

PharmaStem has not shown a likelihood of success on the merits of its procedural argument. Therefore, this Court should not grant injunctive relief.

**B.     PharmaStem Will Not Be Irreparably Harmed**

PharmaStem's arguments regarding the irreparable harm that it will suffer if Corcell is allowed to continue to assert the claims made in the Delaware case are ludicrous. PharmaStem in effect argues that it has the right to create a risk of inconsistent adjudications of all issues relating to the interpretation of the '427 patent, and that the possibility that the District of Delaware might grapple with those issues somehow causes it irreparable harm. PharmaStem merely claims a right to avoid the forum that is already familiar with patents related to those at issue in this case, which would likely make the adjudication of issues related to those patents in Delaware less complicated and more fair. As Judge Moody noted in the Middle District of Florida case, the relevant patent claims should be construed by a single judge. *See* Exhibit 1.

PharmaStem has chosen to proceed in this manner. Therefore, any arguments PharmaStem makes complaining about the result of its strategy should be given little or no weight. Accordingly, PharmaStem has not shown any harm absent an injunction, let alone irreparable harm.

### C. The Granting Of An Injunction Would Have An Adverse Effect On The Public Interest

The Court in granting an injunction in this case would be validating PharmaStem's strategy of complicating the process of pursing an efficient and fair adjudication of the issues under the '645 and '427 patents. PharmaStem cannot argue that it was in the public's interest, or in the judicial interest of efficiency, to pursue infringement actions in widespread jurisdictions to avoid the one forum that has already decided issues involving related patents. Accordingly, granting an injunction in this case would be adverse to the public interest.

An injunction against proceedings in another federal court is an unusual, extreme remedy. *Mai Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 986-87 (10th Cir. 1992). This is not such an extreme case.

562903_1                                    9

## CONCLUSION

For all the foregoing reasons, Defendant Corcell respectfully requests that the Court deny PharmaStem's Motion for an Injunction enjoining Corcell from pursuing Civil Action No. 04-1335-GMS in the District of Delaware.

Respectfully submitted,

James J. Rodgers (PA. No. 21635)
Validation Code/No.: JR797
Evelyn McConathy (68299)
Darryl W. Shorter (87554)
Dawn Zubrick   (90732)
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7143

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendant CorCell's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction and Permanent Injunction has been served via U.S. Mail in a properly addressed envelope with sufficient postage thereon to effect delivery, addressed to:

> Michael D. LiPuma
> Law Office of Michael LiPuma
> Two Penn Center, Suite 200
> Philadelphia, PA 19102

Date: 11/10/04

Daryl W. Shorter

# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CLERK'S MINUTES - CIVIL GENERAL**

CASE NO. 8: 04-cv-1740-T-30TGW        DATE  November 9, 2004

TITLE  Pharmasten Therapeutics, Inc. vs. Cryo-Cell International, Inc., et al.

TIME  8:45 - 9:10 a.m.        TOTAL  25 minutes

Honorable  James S. Moody, Jr.        Deputy Clerk  Sara Boswell

Court Reporter  Sherrill Jackson        Courtroom  13A

| Attorney(s) for Plaintiff(s) | Attorney(s) for Defendant(s): |
|---|---|
| Charles Carlson | Charles Ketchey |
| Lisa Kobialka | Jim Rogers |
| Paul Andre | |

**PROCEEDINGS:   STATUS CONFERENCE**

Petition has been filed by defendants to have MDL take case for discovery purposes.

Court will approve the case management deadlines proposed by counsel. The Court will stay the case for 120 days. If no resolution comes from the MDL panel, the parties are instructed to file the appropriate motion for preliminary injunction. The Court will set an injunction hearing if the motion is filed.

The Court believes that one court should construe the patents to maintain judicial economy.