## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHARMASTEM THERAPEUTICS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Civil Action No. 2:04-CV-03561-RK** |
| v. | ) | |
| | ) | |
| CORCELL, INC., MOLLY McBRIDE, M.D. | ) | |
| and CARLO M. CROCE, M.D. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| CORCELL, INC., | ) | |
| | ) | |
| Counterclaim-Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHARMASTEM THERAPEUTICS, INC., | ) | |
| NICHOLAS DIDIER and STEMBANC, INC., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

## DEFENDANT CORCELL'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS

### INTRODUCTION

Defendant CorCell, Inc. ("CorCell") respectfully requests this Court to deny Plaintiff

PharmaStem Therapeutics, Inc.'s ("PharmaStem's") Motion to Dismiss CorCell's counterclaims.

CorCell's counterclaims represent a current controversy between CorCell and PharmaStem, and

are therefore ripe for consideration by this Court. Each one of CorCell's counterclaims are fully

supported by the pleadings and sufficiently puts PharmaStem on notice of the claims against it

and the material facts supporting those claims.

560963_1

PharmaStem has improperly attempted to show that CorCell will not prevail after trial on any of its claims. It has not shown that the pleadings of CorCell are insufficient to survive a motion to dismiss for failure to state a claim. Accordingly, PharmaStem's motion must be denied.

### STATEMENT OF FACTS

PharmaStem is the assignee/owner of U.S. Patents 5,004,681 ("the 6681 Patent"), 5,192,553 ("the '553 Patent"), 6,461,645 ("the '645 Patent"), 6,569,427 ("the '427 Patent") and 6,605,275 ("the '275 Patent"). *See* Answer of Defendants To Plaintiff's Complaint and Counterclaim of Corcell, Inc., ¶ 8 (hereinafter "CorCell Counterclaim"). On February 2002, PharmaStem filed suit in the United States District Court for the District of Delaware against CorCell and several other companies, alleging infringement of the '681 and '553 patents. ("the Delaware Action"). *Id.* ¶ 9.

After a jury trial in the Delaware Action, a verdict was entered in favor of PharmaStem and against CorCell and the other companies, finding the patents valid and infringed, awarding damages to PharmaStem. *Id.* at ¶ 10. Post trial motions were timely filed, including a motion by PharmaStem for entry of a permanent injunction and motions by CorCell and the other defendants for judgment as a matter of law or for a new trial. *Id.* at ¶ 11. On September 15, 2004, a Memorandum Opinion was issued in the Delaware Action finding in favor of CorCell and the other defendants on the claim of infringement of the '553 Patent, and granting their motion for a new trial on the issue of infringement and damages with respect to the '681 Patent. *See* Memorandum Opinion, attached hereto as Exhibit 1. *Id.*

Starting June 1, 2004, Nicholas Didier, on behalf of PharmaStem (collectively "PharmaStem") sent to approximately 25,000 obstetricians and hospitals letters containing false and misleading statements including, but not limited to, the following:

> Patent infringement occurs when a person or institution practices all or part of a patented process. In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party.

*See Id.* at ¶ 12. The Honorable Gregory M. Sleet of the District of Delaware, upon being notified of PharmaStem's actions, issued an Order for Injunctive Relief on July 2, 2004 in response to a motion filed by CorCell and the other defendants in the Delaware Action, finding that "PharmaStem's June 1, 2004 letter to Obstetricians ("the PharmaStem Letter") contains false and misleading statements concerning the Court's rulings to date." *Id.* at ¶ 13. Judge Sleet, who presided over the Delaware Action, in particular found, in pertinent part, that:

> 1.     PharmaStem's June 1, 2004 letter to Obstetricians (the "PharmaStem Letter") contains false and misleading statements concerning this Court's rulings to date. In particular, the Court finds the following statements in this PharmaStem Letter false and misleading:
>
> A. "Patent infringement occurs when a person or institute practices all or part of a patented process." The Court finds this statement is misleading because it is black letter law that in order to prove contributory infringement of a method patent, the <u>entire</u> patented process must be performed. By suggesting that infringement would occur when only part of a process in performed, the letter is misleading.
>
> B. "In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party." The Court finds this statement misleading for at least the following reasons. <u>First</u>, the sentence states that "the Court ruled" with respect to the "case" of "umbilical cord blood collection by an Obstetrician." This Court never made any rulings regarding conduct by obstetricians. There were no such allegations advanced in the trial of this matter. <u>Second</u>, the sentence leaves out several important elements that must be proved to show contributory infringement. The missing elements include:

(1) that there must be a <u>sale</u> or <u>offer to sell</u> by the party that is accused of contributory infringement,

(2) that the party accused of contributory infringement must be "acting in concert or working together" with the other parties whose combined conduct performed each and every element of the patented process, and

(3) that, under §271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements of the contributory infringement statute.

The Court finds that without these elements, the statement is misleading. Judge Sleet granted an injunction against further false or misleading communications directed to obstetricians. The injunction was granted, in part, because the PharmaStem June letter made no mention of the sale or offer to sell requirement, the "acting in concert or working together" requirement, or that the sale of a service cannot satisfy §271(c) of the Patent Act. *Id.*

In spite of Judge Sleet's order, PharamStem, after filing a separate infringement action against CorCell, disseminated a press release (the "Press Release") that contained similar false and misleading statements to those found to be false and misleading by Judge Sleet. Once again, PharmaStem caused copies of the press release to be mailed to thousands of obstetricians. *Id.* at ¶14.

PharmaStem's second wave of suits comprised five separate suits, including this action, in which PharmaStem sued a private cord blood bank and one or more health care providers, i.e., individual physicians (as in this case), group medical practices and a hospital. *Id.* at ¶ 15. In each of these cases, PharmaStem made a boilerplate allegation of infringement of the '427 patent against both the defendant private cord blood bank and at least one health care provider. *Id.* at ¶ 16. Shortly after initiating suit in the Central District of California against CureSource, Inc., and twelve physicians, Didier sent a letter to the defendant physicians, offering to "settle" with them

by agreeing not to enforce any of PharmaStem's five patents against them if the doctors would agree not to collect cord blood or provide any service for or "in connection with" any of the private cord blood banks not licensed by PharmaStem, and further agree not to market or offer any service of the defendant cord blood banking companies. *Id.* at ¶ 17; *See also Id.*, Exhibit D.

On August 20, 2004, PharmaStem sent another letter and an amnesty agreement to obstetricians (the "Amnesty Agreement") that contained similar false and misleading statements. PharmaStem insisted that the obstetricians sign the Amnesty Agreement to avoid legal action by PharmaStem, and that the obstetrician only work with PharmaStem's licensees. In disregard of the findings and final orders of the Delaware District Court, the letter of August 20, 2004, states the following: "It is PharmaStem's position, as asserted in the recent lawsuits, that obstetricians are liable for patent infringement if they collect cord blood or market services for unlicensed cord blood banks." *Id.* at ¶ 18. The Press Release and the letters of August 18 and August 20, 2004 letter failed to correct the earlier misrepresentations, failed to disclose the inaccuracy of the earlier misrepresentations, and failed to disclose the rulings of the Delaware District Court. *Id.* at ¶ 19.

As a follow-up to their letter campaign, Didier then proceeded to make threats by telephone to an unknown number of obstetricians, using the false pretense of presenting himself as an agent of one of the defendant cord blood banks, to get direct access to the physician. Once connected to the physician, Didier explained that any doctor who refused to sign the Amnesty Agreement would be sued by PharmaStem for patent infringement. *Id.* at ¶ 20.

Still further in disregard for Judge Sleet's findings, PharmaStem has sponsored links are such internet sites as Google.com and Yahoo.com in which PharmaStem identifies CorCell, and claims that it is an "unlicensed bank," without reference to PharmaStem's purported patents,

thereby misleading individuals to believe that CorCell was not a state licensed blood bank. This is further compounded by the fact that the sponsored link further states, "Why Take The Risk?." *Id.* at ¶ 21.

PharmaStem has issued these statements in bad faith, for the clear purpose of damaging CorCell's business and creating false implications with the consuming public and obstetricians. *Id.* at ¶ 22. Even after Judge Sleet's decision, PharmaStem and Didier have continued to issue false and misleading statements. In particular, on September 20, 2004, PharmaStem issued a press release which mischaracterizes the Court's ruling as well as defendants' positions in the case, e.g., PharmaStem states that the Court "agreed with the defendants" based upon an argument that families who bank with the defendants could be liable for infringement; in fact, the basis for the Court's decision was that the defendants did not sell or offer to sell cord blood. Defendants did not argue that families are liable for infringing PharmaStem's patents; parents do not sell or offer to sell cord blood, and therefore cannot be liable. This is but the latest false implication designed to deter patients from seeking medical services without regard to the narrow limitations of PharmaStem's patents. *Id.* at ¶ 24.

As a result of the actions of Counterclaim-defendants, some physicians have declined to collect cord blood for customers of CorCell and have ceased to recommend CorCell's services. Customers of CorCell have been prevented from fulfilling their contracts with CorCell, and others have been dissuaded from contracting with CorCell at all, because of the actions of Counterclaim-defendants. Of course, such a response was exactly what PharmaStem, Didier and Stembanc wanted to achieve. *Id.* at ¶ 26.

Accordingly, CorCell's First through Third counterclaims are ripe for consideration and plead sufficiently enough to survive PharmaStem's motion to dismiss.

## ARGUMENT

**A.    This Court Has Subject Matter Jurisidiction**

Dismissal under Federal Rule of Civil Procedure 12(b)(1) is not proper in this case.  In order for the dismissal of a case to be proper under rule 12(b)(1), a claim must be shown to be "immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial or frivolous." *Nevyas, M.D. v. Morgan*, 309 F.Supp. 2d 673, 676 (E. D. Pa. 2004).  PharmaStem has not, and cannot, argue any of these in its motion to dismiss.  CorCell's has brought its First through Third counterclaims in response to PharmaStem's campaign of making baseless threats of infringement against physicians in an effort to orchestrate a boycott of CorCell and the other cord blood banks that have not signed licenses with PharmaStem.

Accordingly, PharmaStem's motion for dismissal under rule 12(b)(1) should be denied.

**B.    CorCell's Counterclaims Are Ripe For Consideration By This Court**

"To satisfy Article III's case or controversy requirement, an action must present (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution.  *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 410 (3rd Cir. 1992).  In the present case, CorCell's counterclaims meet Article III's requirements.

The sufficiency of CorCell's injuries as a result of PharmaStem's action is clear and uncontroverted by PharmaStem.  CorCell has lost, and continues to lose, business from current and potential customers due to the false and misleading statements made by PharmaStem in letters sent to obstetricians, and published on websites relating to its patents.

PharmaStem, by continuing to disregard the specific findings of Judge Sleet regarding the false and misleading nature of PharmaStem's statements, and filing baseless infringement claims, has made the issues regarding CorCell's First through Third Counterclaims ripe for judicial decision. PharmaStem's bringing of the present infringement action itself demonstrates the justiciability of CorCell's counterclaims. Whether or not the Court ultimately finds that CorCell or the Defendant physicians infringe PharmaStem's '427 patent does not determine whether the counterclaims are sufficiently mature. The claims made by CorCell are directly related to PharmaStem's misuse of the '427 patent, as well as its other patents, regardless of whether the patents are valid or infringed by CorCell. This case itself provides an appropriate forum for litigating the issues that include CorCell's claims.

PharmaStem itself has brought the interpretation of its patents into this litigation. The counterclaims relate directly to PharmaStem's misrepresentations to obstetricians and customers of CorCell, claims related to those heard on a preliminary basis by the District Court in Delaware, which enjoined PharmaStem from continuing to disseminate communications similar to those at issue in this case.

PharmaStem has attempted to enforce its patents against CorCell and against physicians who collect cord blood for CorCell's customers, making the issues presented by each counterclaim relevant and ripe for consideration. Accordingly, CorCell's Counterclaims are ripe for consideration by this Court

### C.       Standard For a 12(b)(6) Motion

In determine the propriety of granting a motion to dismiss, the court must "determine whether, under any reasonable reading of the pleadings, the [counterclaim] plaintiffs may be entitled to relief, and [the court] must accept as true the factual allegations in the complaint and

all reasonable inferences therefrom." *Nami v. H. Fauver*, 82 F. 3d 63, 65 (3rd Cir. 1996). "The complaint will be deemed to have alleged sufficient facts if it adequately put the [counterclaim] defendants on notice of the essential elements of the [counterclaim] plaintiff's cause of action." *Id.   Accord Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.* 627 F. Supp. 856 (E. D. Pa. 1985). *See Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1283 (S.D. Fla. 2001) ("The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.") *See also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Each of CorCell's Counterclaims meets this threshold.

**D.    CorCell Is Entitled To Offer Evidence To Support Its Counterclaims**

The basis of PharmaStem's argument in support of its motion to dismiss is that the statements made by PharmaStem are "lawful" and "true." Also, PharmaStem argues that CorCell does not prove each element of each counterclaim. PharmaStem's argument, though, will not address the correct issue. "In considering a Rule 12(b)(6) motion, [the court does] not inquire whether the [counterclaim] plaintiff will ultimately prevail, only whether the claimant is entitled to offer evidence to support the claims." *Nami*, 82 F. 3d at 65. *See also In re K-Dur Antitrust Litigation*, No. 01-1652, 2004 U.S. Dist. LEXIS 19804, *25 (D. N. J. September 29, 2004) ("The issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."). "Additionally, a plaintiff need not allege the existence of every element of his or her claim as long as the allegations plead facts sufficient to provide the defendant with fair notice of the transaction and to set forth the material points necessary to sustain recovery." *K-Dur Antitrust Litigation*, 2004 U.S. Dist. LEXIS 19804, at *25. *See also Conley*, 355 U.S. at 47.

1.     **CorCell Has Sufficiently Plead Its Federal Unfair Competition [§43(a) Lanham Act] Claim**

PharmaStem's argument regarding CorCell's claim of a Lanham Act violation is clearly without merit. The threshold question for the court to decide is whether CorCell has alleged facts sufficient to put PharmaStem on notice of the material claims alleged, not whether CorCell will prevail on its claims. Contrary to Plaintiff's assertion, CorCell's counterclaim pleads each of the elements of a Lanham Act violation. CorCell has alleged that PharmaStem has made false and misleading statements to the effect that CorCell's services infringe PharmaStem's patents and that physicians infringe those patents simply by collecting umbilical cord blood. CorCell has pleaded that there has been actual deception as well as a tendency to deceive a substantial portion of the intended audience, i.e., the physicians to whom amnesty agreements have been tendered and consumers of defendant's services. PharmaStem's only answer is to claim that its "statements have not been misleading or false, but rather have either been true or its opinion." Leaving aside the plain fact that this assertion involves issues of disputed fact, it ignores Judge Sleet's finding that at least of some of PharmaStem's statements have in fact been false and misleading. It is, therefore, ludicrous for PharmaStem to argue that its statements have not impacted CorCell's ability to compete or have not detracted from CorCell's good will. CorCell alleges, and will prove, that PharmaStem's statements have been intended to and have had precisely those effects.

As to PharmaStem's argument that CorCell lacks standing to bring a Lanham Act claim, CorCell clearly alleges that PharmaStem has acted for the purpose of injuring CorCell's business, and furthering the business of PharmaStem's licensees, which are unquestionably direct competitors of CorCell. PharmaStem is an thus indirect, but actively interested, participant in the market in which CorCell is engaged. There can be no question that CorCell

adequately alleges harm to its competitive interest as a result of PharmaStem's false and misleading statements. In this case, the court does not have to stretch the facts as plead to determine that PharmaStem is a competitor for the purposes of liability under the Lanham Act.

Moreover, the harm plead by CorCell is specifically the harm that the Lanham Act was written to protect against. *See Conte Bros. Automotive, Inc. v. Quaker State – Slick 50, Inc.*, 165 F.3d 221 (3rd Cir. 1998)("[T]he focus of the Lanham Act is on commercial interests that have been harmed by a competitor's false advertising, and in securing to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not."); and *Nevyas*, 309 F. Supp. 2d at 679.

While PharmaStem correctly quotes the law as protecting its right to make statements regarding patent liability where made in good faith, it ignores the allegations of bad faith contained in CorCell's counterclaims. Simply because none of the cases recently brought by PharmaStem have been resolved by final judgment, PharmaStem argues that its statement of its position cannot be false. To the contrary, where PharmaStem could not possibly have a good faith belief in the position it articulates, its statements cannot be protected and can be the subject of Lanham Act liability. PharmaStem has not merely stated its position on a possible future event, but rather has made statements on the present state of legal liability, and false statements at that. The facts as plead demonstrate that PharmaStem's statements, already found to be false and misleading by a federal court, were meant to dissuade third parties from using the services of CorCell in violation of § 43(a) of the Lanham Act. *See Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609 (D.R.I. 1976). The cases relied upon by PharmaStem in this portion of its argument are summary judgment cases, *e.g.*, *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360,

1370-71 (Fed. Cir. 2002); *Zenith Elecs. Corp v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999), not cases decided under Rule 12(b)(6), and thus are entirely inapposite.

Accordingly, CorCell has sufficiently plead its § 43(a) Lanham Act claim.

### 2. CorCell Has Sufficiently Plead Its Claim For Interference With Contractual and Business Relationships

PharmaStem attempts to argue that CorCell's tortious interference claim should be dismissed because PharmaStem will ultimately prevail, rather than focusing solely on the facts pleaded. On a motion to dismiss for failure to state a claim, the ultimate success of the claim is not the issue. The issue is whether CorCell has sufficiently plead the claim in its counterclaim, and CorCell has done so.

CorCell has plainly alleged the elements of a claim for tortious interference. PharmaStem again attempts to jump the gun by arguing that the evidence will ultimately show that its conduct was subject to a privilege. However, because this is a motion to dismiss, CorCell is entitled to the benefit of all reasonable entrances from its allegations. While PharmaStem asserts, "PharmaStem was not attempting to interfere in CorCell's business relationships or disparage CorCell," this is precisely what CorCell alleges.

PharmaStem also alleges that its conduct is a step removed from the alleged interference. Because PharmaStem's conduct was designed, *inter alia*, to prevent its customers from performing their contracts with CorCell for the collection of cord blood (by inducing physicians to refuse to collect the blood, thus making performance impossible), CorCell has adequately alleged interference with its contracts. Moreover, PharmaStem's conduct is plainly designed to dissuade consumers from dealing with CorCell as well as to induce physicians to steer patients away from CorCell and toward PharmaStem's licensees.

The sufficiency of CorCell's allegations plead facts as supporting its interference claim is clear, and the claim, therefore, should not be dismissed.

### 3. CorCell Has Sufficiently Plead Its Claim Of Trade Libel/Commercial Disparagement

PharmaStem's chief argument against CorCell's counterclaim for commercial disparagement is to again allege that whatever statements it made were true. Once again PharmaStem misunderstands the rule of a motion to dismiss. Moreover, it is clear that CorCell alleges that PharmaStem's statements that CorCell is not a licensed blood bank is intended to and did create the impression that CorCell lacked the necessary governmental licenses to operate. The question of the how such a statement was understood by the recipients is an issue of fact.

The facts plead by Corcell support its claims of trade libel/commercial disparagement. *See The Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 863 (E. D. Pa. 1985).

### E. This Court Should Consider CorCell's Counterclaims In This Action

PharmaStem's consideration of judicial economy is clearly disingenuous. PharmaStem has filed numerous actions on the same patents at issue in this case, against numerous defendants that clearly do not infringe its patents, in numerous jurisdictions. Also, PharmaStem's reliance on the jurisdiction of the Delaware District Court is ironic considering PharmaStem's repeated disregard for that court's findings.

PharmaStem's assertion that CorCell infringes the '427 and '645 patents have made these claims asserted by CorCell ripe for consideration in this Court. Arguably, CorCell's counterclaims are compulsory, which makes the propriety of asserting them in this action clear.

Even if they are not compulsory, PharmaStem's misuse of the patents on which it has sued in this case is the cause of CorCell's claims, and they are therefore, directly at issue.[1]

Moreover, the argument set forth in footnote 6 to PharmaStem's memorandum is frivolous. The injunctive relief granted against PharmaStem on July 2, 2004 in the Delaware Action was temporary, not a final judgment, and did not relate directly to the '427 and '645 patents that are at issue here. Thus there is no basis for arguing that CorCell's claims here are barred by res judicata.

Therefore, this Court should consider CorCell's counterclaims. If the Court grants PharmaStem's motion to dismiss on this discretionary ground, or on the ground of a lack of justiciable controversy, it must be without prejudice. Alternatively, if the Court should view CorCell's pleadings of any of its counterclaims to be deficient, leave to amend should be granted.

## CONCLUSION

For all the foregoing reasons, Defendant CorCell respectfully requests that the Court deny PharmaStem's Motion to Dismiss.

Respectfully submitted,

James J. Rodgers (21635)
Evelyn McConathy (68299)
Darryl W. Shorter (87554)
Dawn Zubrick    (90732)
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7143

---

[1] CorCell, joined by all of the remaining defendants in all of PhramaStem's infringement actions, have filed a motion before the Judicial Panel on Multijurisdictional Litigation to transfer and coordinate this action, along with the other oactions concerning the PharmaStem patents, before Judge Sleet in the District of Delaware. A copy of that motion will shortly be filed with this court, pursuant to the Rules of the JPML.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of CorCell's Opposition to

PharmaStem's Motion to Dismiss CorCell, Inc.'s Counterclaims has been served via U.S. Mail

in a properly addressed envelope with sufficient postage thereon to effect delivery, addressed to:

>       Michael D. LiPuma
>       Law Office of Michael LiPuma
>       Two Penn Center, Suite 200
>       Philadelphia, PA 19102


Darryl W. Shorter

560963_1                        15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 2:04-CV-03561-RK |
| v. ) | |
| ) | |
| CORCELL, INC., MOLLY McBRIDE, M.D. ) | |
| and CARLO M. CROCE, M.D. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| CORCELL, INC., ) | |
| ) | |
| Counterclaim-Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| PHARMASTEM THERAPEUTICS, INC., ) | |
| NICHOLAS DIDIER and STEMBANC, INC., ) | |
| ) | |
| Counterclaim-Defendants. ) | |

## ORDER

AND NOW, this ___ day of _____, 2004, upon consideration of Pharmastem Therapeutics, Inc.'s Motion to Dismiss CorCell, Inc's Counterclaims, and CorCell, Inc.'s Opposition thereto, it is hereby ORDERED and DECREED that Pharmastem Therapeutics, Inc.'s Motion is DENIED.

BY THE COURT:

_____
J.

561182_1