UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHARMASTEM THERAPEUTICS, INC., a
Delaware corporation,

        Plaintiff,

v.

CORCELL, INC., a Delaware corporation,
MOLLY MCBRIDE, MD, an individual, and
CARLO M. CROCE, MD, an individual,

        Defendants.

CORCELL, INC., a Delaware corporation,

        Counterclaim-Plaintiff,

v.

PHARMASTEM THERAPEUTICS, INC.,
NICHOLAS DIDIER and STEMBANC, INC.,

        Counterclaim-Defendants.

Civil Action No.:2:04-CV-03561-RK

**NICHOLAS DIDIER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CORCELL, INC.'S COUNTERCLAIMS**

## I. PRELIMINARY STATEMENT AND SUMMARY OF THE ARGUMENT

CorCell, Inc. ("CorCell") has pleaded counterclaims for federal unfair competition, intentional interference with contractual or other economic relationships, and trade libel/commercial disparagement against PharmaStem Therapeutics, Inc. ("PharmaStem"), Nicholas Didier, and Stembanc, Inc. *See* Counterclaims *passim* (Docket Entry #9). This motion is concerned with the assertion of CorCell's counterclaims against Mr. Didier in his personal and individual capacity. As shown herein, CorCell fails to plead sufficient jurisdictional allegations to hale Mr. Didier into court in Pennsylvania; fails to plead sufficient allegations to establish subject matter jurisdiction over its counterclaims; and, fails to state a cause of action.

## II. STATEMENT OF RELEVANT FACTS

The relevant facts are set forth in the sections below.[1]

## III. ARGUMENT

### A. DISMISSAL OF CORCELL'S COUNTERCLAIMS IS WARRANTED UNDER THE APPLICABLE LEGAL STANDARD.

When deciding a motion to dismiss, a court need not credit "bald assertions" or "legal conclusions," nor should it accept "unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d. Cir. 1997); *IMCS, Inc. v. D.P. Tech. Corp.*, 264 F.Supp.2d 193, 196 (E.D.Pa. 2003). Yet, as demonstrated below, bald assertions, legal conclusions, and unwarranted inferences are exactly, and pivotally, all that CorCell offers in an improper attempt to add the spectre of personal liability to Mr. Didier's involvement in the present case.

---

[1] For further background, Mr. Didier incorporates Plaintiff PharmaStem Therapeutics, Inc.'s Motion to Dismiss CorCell, Inc.'s Counterclaims for lack of subject matter jurisdiction and for failure to state a cause of action, filed October 13, 2004 (Docket Entry No. 16) by reference as if fully set forth herein.

1

NICHOLAS DIDIER'S MOTION TO DISMISS CORCELL'S COUNTERCLAIMS

B.   **CORCELL PLEADS NO SET OF FACTS UPON WHICH THE COURT MAY EXERCISE *IN PERSONAM* JURISDICTION OVER MR. DIDIER.**

1.   **CorCell's Jurisdictional Pleadings Are Facially Defective.**

CorCell fails to plead *any* specific contacts between any of the counterclaim-defendants and the forum state. *Cf.* Counterclaims ¶¶ 12, 14, 17, 18, 20, 21, & 24, *and* Exhs. A, C, D, E, & F, thereto. While CorCell pleads that "a substantial number of the communications that underlie some of the claims asserted in these Counterclaims were directed to recipients in this district," Counterclaims ¶ 5, as the only support for exercise of personal jurisdiction over any of the counterclaim-defendants, its factual allegations, even those made only upon information and belief, do not go so far.

CorCell makes no specific allegations that the subject matter of its counterclaims, *i.e.*, the alleged PharmaStem communications (defined below), are actually directed at the forum state. In its general allegations, CorCell alleges only that Mr. Didier, "on behalf of PharmaStem," sent the so-called "PharmaStem June letter" "to over 25,000 obstetricians," Counterclaims ¶ 12; that Mr. Didier "caused copies of the [so-called PharmaStem 'Press Release'] to be mailed to thousands of obstetricians," Counterclaims ¶ 14; that Mr. Didier sent settlement offer letter(s) to twelve defendant physicians in the Central District of California,[2] Counterclaims ¶ 17; that Mr. Didier "began to send thousands of [the so-called PharmaStem 'Amnesty Agreements'] to physicians who had not been sued," Counterclaims ¶ 18; that, "upon information and belief, ...[Mr.] Didier... [made] threats by telephone to an unknown number of obstetricians... that nay [sic] doctor who refused to sign the Amnesty Agreement would be sued by PharmaStem for patent infringement," Counterclaims ¶ 20; and, that PharmaStem issued other press releases over the Internet, Counterclaims ¶¶ 21 & 24 (collectively, the "PharmaStem communications"). Nor does CorCell *specifically identify* any PharmaStem communications that are likely to be found to have been directed at the forum state given a reasonable opportunity for jurisdictional discovery,

---

[2] As a separate and independent matter, PharmaStem's settlement communications with defendants in connection with other litigations are protected under Fed. R. Evid. 408.

as required by Rule 11 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 11 (the allegations and other factual contentions of CorCell's counterclaims must have evidentiary support, "or *if specifically so identified*, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery")(emphasis added). Thus, CorCell's jurisdictional pleadings, especially as to Mr. Didier, are fatally defective on their face. Additionally, as discussed below, such jurisdictional defects are incurable.

### 2. Mr. Didier's Alleged Conduct Does Not Suffice As "Minimum Contacts" With The Forum State.

While a certain amount of flexibility with respect to the assertion of personal jurisdiction over PharmaStem is understandable, given the fact that PharmaStem has obviously chosen to sue in this district, with respect to Mr. Didier—who is not a plaintiff to this action—CorCell may not so facilely "extrapolate precepts of liability into precepts of jurisdiction without offending traditional notions of fair play and substantial justice." *See Ruger v. Superior Court*, 118 Cal.App.3d 427, 434 (Cal. Ct. App. 1981)("[I]t is unreasonable under due process standards that Ruger should personally answer as a defendant in actions brought in this state against his corporate employer. No matter how egregious his alleged conduct, plaintiffs cannot here extrapolate precepts of liability into precepts of jurisdiction without offending traditional notions of fair play and substantial justice.").

At all times pertinent, Mr. Didier has been a resident of New York and has acted solely in his capacity as a corporate officer and employee of PharmaStem; and not in his personal or individual capacity. *Cf.* Counterclaims ¶¶ 3, 12, 14, 17, 18, 20, 21, & 24, *and* Exhs. A, C, D, E, & F, thereto. CorCell does not allege that Mr. Didier has had "continuous and systematic" contacts with the forum state sufficient to establish general jurisdiction over his person in Pennsylvania. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). Thus, the only other avenue available to exercise personal jurisdiction over Mr. Didier is specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *see also Burger King Corp.*

*v. Rudzewics*, 471 U.S. 462, 475 (1985)(there must be "some act by which an out-of-state defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws"). The burden of proof is on CorCell to establish sufficient minimum contacts under the circumstances. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

With respect to specific jurisdiction, even if any of the PharmaStem communications were directed to recipients in Pennsylvania, such acts alone would not suffice to establish personal jurisdiction over PharmaStem, much less Mr. Didier. In the context alleged here, the Federal Circuit has previously addressed the issue of whether such communications without more can establish personal jurisdiction over the sender.[3] The answer is a clear "No." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)("patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement"); *Silent Drive*, 326 F.3d at 1202 (same); *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)(same); *Akro*, 45 F.3d at 1548 (same); *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998)(same). Indeed, as the Federal Circuit ruled in *Red Wing*:

> an offer for a license within a cease-and-desist letter does not somehow convert that letter into something more than it was already. An offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship. Treating such hybrid cease-and-desist letters differently would also be contrary to fair play and substantial

---

[3] In cases intimately involved with the substance of the patent laws, the law of the Federal Circuit applies in determining whether a district court properly exercises jurisdiction. *All-Luminum Prod., Inc. v. Salibra*, 2002 WL 32345936 at *1 n. 2 (E.D.Pa. 2002)(internal quotations omitted), citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995); *see also Lawman Armor Corp. v. Simon*, 319 F.Supp.2d 499, 502 (E.D.Pa. 2004)("*Lawman II*")("The Federal Circuit directs district courts to examine three factors when deciding whether the exercise of personal jurisdiction over an out-of-state defendant satisfies due process in a patent case: (1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether the assertion of personal jurisdiction is 'reasonable and fair.'"), citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003).

4

> justice by providing disincentives for the initiation of settlement negotiations.

Red Wing, 148 F.3d at 1360-61 (citations omitted); see also Akro, at 1548 ("[W]arning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement."); accord Lawman II, 319 F.Supp.2d at 504-05 (out-of-state defendant's ultimately unsuccessful attempts to negotiate licenses for a patent, in the form of exchanged letters, telephone calls, and emails, with two Pennsylvania companies did not amount to minimum contacts).

Significantly, in Lawman II, the district court noted that "[t]he evidence that defendant's contacts with [the Pennsylvania companies] have not borne fruit distinguishes this case from cases in which the Federal Circuit has found general jurisdiction," in concluding that it did not have personal jurisdiction over the defendant. Lawman II, at 505. Thus, except for the fact that PharmaStem chose to sue the Pennsylvania defendants in their home state, even PharmaStem would not be subject to specific jurisdiction in Pennsylvania for publicizing its patents alone. The contacts between Mr. Didier and the forum state are even more attenuated than those of PharmaStem. As a result, CorCell neither has, nor could, plead minimum contacts with the forum state sufficient to confer specific jurisdiction over Mr. Didier's person. For this reason alone, CorCell's counterclaims against Mr. Didier should be dismissed in their entirety, pursuant to Fed. R. Civ. P. 12(b)(2).

C. **CORCELL LACKS STANDING TO COUNTERSUE MR. DIDIER.**

 1. **CorCell's Argument That PharmaStem's Marketplace Activity In Support Of Its Patents Are Wrongly Directed At Obstetricians Who Collect Cord Blood For Unlicensed Banks, Because They Do Not Infringe PharmaStem's Patents Is Circular And, Therefore, Hypothetical.**

Once more, bald assertions, legal conclusions, and unwarranted inferences are, pivotally, all that CorCell offers in support of its arguments for standing to countersue Mr. Didier. Each of CorCell's counterclaims stands or falls with the truth or falsehood of its *ipse dixit* that "[u]nder