no proper interpretation of any claim of the PharmaStem Patents would an obstetrician be liable for patent infringement based merely on collecting umbilical cord blood at the time of delivery and providing it to the patient for the patient's shipment to a private cord blood bank." Counterclaims ¶ 23. Indeed, it is obvious that CorCell's counterclaims hinge entirely on the assumption that CorCell's bald legal conclusion is correct, without which, CorCell would have no basis to assert that the PharmaStem communications are false, misleading, wrongful, or libelous and disparaging. However, the issue of obstetrician liability is also quite obviously the very infringement issue upon which PharmaStem seeks trial and adjudication in the present litigation; and, thus, very much remains a "live" and unsettled question.

It is undeniable that the underlying infringement issue is a matter of first impression in the courts, that has never before been tried or otherwise adjudicated. Accordingly, CorCell's counterclaims are hopelessly hypothetical and unripe under Article III's "case or controversy" requirement. U.S. Const., Art. III. Obviously, if obstetrician liability is found or settled, then CorCell's counterclaims will become moot. Only if obstetrician liability is not found, will the question even ripen as to whether the PharmaStem communications regarding such potential liability are actionable. Thus, CorCell has not, and cannot, overcome the presumption that "federal courts lack jurisdiction unless the contrary appears affirmatively from the record ... [by] clearly alleg[ing] facts that invoke the court's jurisdiction." *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d. 1998), citing *Renne v. Geary*, 501 U.S. 312, 316 (1991). For this separate and independent reason, the Court should dismiss CorCell's counterclaims in their entirety, pursuant to Fed. R. Civ. P. 12(b)(1). See *Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 174 (3d. Cir. 2001)("[T]he existence of a case and controversy is a prerequisite to all federal actions."); *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992)(basic rationale behind the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"); *Presbytery of New Jersey v. Florio*, 40 F.3d 1454, 1463 (3d. Cir. 1994)("where intervening

events remove the possibility of harm, the court must not address the now-speculative controversy").

    2.    **CorCell's Reliance On The Honorable Judge Sleet's Order Is Misplaced.**

CorCell relies heavily upon Judge Sleet's Order ("Delaware Order"), in *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.*, C.A. No. 02-148-GMS (D.Del. filed Feb. 22, 2002)("Delaware action"), in order to support its premature legal conclusion that, under no theory, can obstetricians or other obstetrical service providers be held liable for infringement of the patents in suit. *Cf.* Counterclaims ¶¶ 8-14, 23, & 24, *and* Exh. B, thereto. However, the Delaware Order is inapposite to the present litigation and cannot cure the fatal defects in CorCell's counterclaims.

    a.    **The Delaware Order is inapposite to the present case.**

Looking to CorCell's use of the Delaware Order, it is apparent that CorCell primarily relies upon it, in relevant part, to the extent it supposedly interprets the law of contributory infringement under 35 U.S.C. § 271(c). Counterclaims ¶¶ 13, 14, 23, & 24, *and* Exh. B, thereto (purportedly enumerating the so-called "missing elements" from PharmaStem's theories of obstetrician liability). Yet, CorCell's reliance upon the Delaware Order for such purposes is misplaced for numerous reasons. As a preliminary matter, none of Judge Sleet's orders or rulings are premised on the consideration of the issue of *obstetrician* liability presented in the current litigation or of the patents asserted in this litigation. Obstetricians who collected cord blood for unlicensed banks were never sued in the Delaware action. Secondarily, none of Judge Sleet's dicta or holdings are binding authority upon this Court as to the law of contributory infringement.

However, more importantly, even if Judge Sleet's interpretation of the law of contributory infringement under 35 U.S.C. § 271(c) were binding and correct, which PharmaStem disputes, it still would not preclude potential liability for patent infringement on the part of obstetricians who collect cord blood for unlicensed banks, as other species of indirect infringement exist. Clearly

theories of liability for, *inter alia*, inducement of infringement under 35 U.S.C. § 271(b) are readily available to, and have been plead by, PharmaStem. Thus, CorCell's arguments, directed in their entirety to the contention that obstetricians cannot be liable for ***contributory*** infringement of the patents in suit under 35 U.S.C. § 271(c) are, ultimately, neither here nor there.

        b.    **The Delaware Order should not be afforded great weight.**

Furthermore, with all due respect to the Honorable Judge Sleet, the Delaware Order should not be afforded great intrinsic weight. The defendants in the Delaware action, including CorCell, (collectively, "Delaware defendants") moved to restrain and enjoin PharmaStem's marketplace activities in support of its patents on June 30, 2004. *See* accompanying Request for Judicial Notice ("Req. Jud. Not."), Exh. 1, at Delaware Docket No. ("Del. D.I.") 516. The Delaware defendants simultaneously moved for an expedited briefing schedule, requesting that PharmaStem's answering brief be due by July 14, 2004. *See* Req. Jud. Not., Exh. 1, at Del. D.I.s 525 & 526. For reasons unknown to PharmaStem or Mr. Didier, Judge Sleet granted and entered the Delaware defendants' T.R.O. and preliminary injunction on July 2, 2004, only two days after their motions were filed, and before PharmaStem had a reasonable opportunity to be heard. *See id.*, Exh. 1, at Del. D.I.s 554 & 555. For reasons unknown to PharmaStem or Mr. Didier, Judge Sleet also entered the Delaware defendants' proposed order without modification. *Compare id.*, Exh. 2, *to* Counterclaims, Exh. B. PharmaStem filed its opposition to the Delaware defendants' motion, seeking dissolution of the preliminary injunction, on July 7, 2004. *See* Req. Jud. Not., Exh. 1, at Del. D.I. 528.

On August 4, 2004, the Delaware defendants moved for contempt in connection with one of the early PharmaStem communications (also alleged by CorCell in the present action) for violating the Delaware Order. *See id.*, Exh. 1, at Del. D.I. 535. Judge Sleet held a hearing on the contempt motion on August 6, 2004, at which CorCell was present. *See id.*, Exh. 1, at Del. D.I. 539 (second item entry); Exh. 3, Transcript ("Tr.") at 3:12-23.

When PharmaStem finally had a real opportunity to be heard that its marketplace activities in support of its patent rights are perfectly legal, Judge Sleet held "that it is my view at

this stage of this discussion that PharmaStem is *probably not in contempt* of the Court's July 2 order." See id., Exh. 3, Tr. at 25:15-19 (emphasis added). Significantly, Judge Sleet further held that "it would be, I think, prudent for the Court to consider this as a *motion to amend the July 2 order rather than to find PharmaStem in contempt of that order.*" See id., Exh. 3, Tr. at 25:20-24. Judge Sleet subsequently directed the parties toward working out an informal resolution: "So I'm interested in knowing what, if anything, you can conceive among you that you can do about this release that will accommodate *PharmaStem's right to announce, in good faith, the existence of lawsuits and its intent to protect its intellectual property rights* while at the same time not interfering with this Court's process and interfering with the ability of potential customers out there, obstetricians and patients, to collect cord blood in an appropriate way." See id., Exh. 3, Tr. at 27:13-20. In conclusion, Judge Sleet reiterated, "[a]nd, again, I want to remind [the Delaware defendants, including CorCell], that I am not inclined to a finding of contempt under the circumstances... I may be inclined to a different type of order or request." See id., Exh. 3, Tr. at 34:24-35:2.[4]

In light of Judge Sleet's determinations at the August 6, 2004 hearing in connection with the Delaware Order, this Court should not afford the Delaware Order, standing alone, great weight.[5] For the same reasons, CorCell's arguments, heavily reliant upon the Delaware Order

---

[4] Judge Sleet continues to hold PharmaStem's motion to dissolve the Delaware Order in abeyance. See Req. Jud. Not., Exh. 3, Tr. at 35:11-14. Should the Delaware defendants actually succeed in proving that PharmaStem is in contempt of any lawful order, PharmaStem may, at that time or for any other reason, seek an emergency appeal of any injunction in force.

[5] Moreover, Judge Sleet has previously held, in a published decision, that when federal or state tort claims are asserted against a patent holder for marketplace activity in support of its patent, the claimant also is *required* to establish that the patent holder acted in bad faith. *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F.Supp.2d 489, 504-06, n. 8 (D.Del. 2003)(Sleet, J.)(overturning jury verdict of unfair competition, in connection with patent holder's marketplace activity in support of its patent, for lack of affirmative evidence that patent holder sought, in bad faith, to enforce an unenforceable patent, even though evidence supported the jury's verdict that the patent was unenforceable due to inequitable conduct). Although falsity of the marketplace communication, or disregard for it, is "required" in the bad faith inquiry, such falsity or disregard, without more, is not *sufficient* to sustain a finding of bad faith. *ISCO*, 279 F.Supp.2d at 505 (citations omitted). Indeed, "[t]he law recognizes a presumption that the assertion of a duly granted patent is made in good faith ... [and] this presumption is overcome only by

taken out of context, are unavailing, at best; and, extremely misleading, at worst. Indeed, it is unconscionable that CorCell, being well aware of the circumstances discussed above, would so blatantly mislead this Court by casting a false light on the import and status of the Delaware Order. Plainly, a determination of the force and weight of the Delaware Order benefits greatly from the addition of Judge Sleet's subsequent commentary thereon. For this separate and independent reason, CorCell's counterclaims are arguably made in bad faith, and should be dismissed in their entirety.

### D. CORCELL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Separately and independently from CorCell's lack of standing, Mr. Didier's alleged marketplace activities in support of its patents are *per se* inactionable. *See Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1344-55 (Fed. Cir. 1999)(patentee's allegedly false representations of patent infringement not actionable under federal or state unfair competition or tort law). The Federal Circuit has held that a clear case of patentee bad faith exists when "the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent." *Zenith*, 182 F.3d at 1354. By contrast, a patentee does not commit unfair competition when it makes representations that ultimately prove to be inaccurate, provided they make them in good faith. *Golan v. Pingel Enter.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002). Indeed, "[t]he law recognizes a presumption that the assertion of a duly granted patent is made in good faith ... [and] this presumption is overcome only by affirmative evidence of bad faith." *C.R. Bard*, 157 F.3d at 1369 (internal citations omitted). Thus, "a patentee acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights 'even though he may misconceive what those rights are.'" *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998)(internal citations omitted). Accordingly, the

---

affirmative evidence of bad faith." *ISCO*, at 505, quoting *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998)(internal citations omitted). Thus, "a patentee acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights 'even though he may misconceive what those rights are.'" *Id.*, at 505 (internal citations omitted).

PharmaStem communications fall well within scope of marketplace activities in support of its patents that are *per se* inactionable under federal, state, or common law sounding in tort. *See Golan*, 310 F.3d at 1370-71 ("federal patent law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith."), quoting *Zenith*, at 1353.

Here, PharmaStem's, and by implication Mr. Didier's, alleged conduct is protected not only by the patent laws, but also, with respect to the state law counterclaims, by privilege. *See, e.g., Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530-32 (3d. Cir. 1998)(Pennsylvania courts recognize privilege for tortious interference claims where accused tortfeasor does not employ "wrongful means," defined as "independently actionable conduct"). Furthermore, liability under the relevant provision of the Lanham Act requires, *inter alia*, a "false or misleading ***representation of fact***." 15 U.S.C. § 1125(a)(1)(emphasis added). "Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999), citing *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-32 (3d Cir. 1990); *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 488-89 (D.C. Cir. 1996). Accordingly, statements of potential obstetrician liability for infringement of the patents in suit are necessarily opinion statements not actionable under the Lanham Act. *See* 15, U.S.C. § 1125(a); *Groden v. Randum House, Inc.*, 62 F.3d 1045, 1051 (2d Cir. 1995). As a result, even if all of CorCell's allegations, including the most rankly speculative, against PharmaStem could be imputed to Mr. Didier, they still utterly fail to state any legally cognizable cause of action against him. Here, given the uncontroverted fact that Mr. Didier is but an agent of PharmaStem, CorCell's counterclaims against him in his personal and individual capacity have even less

purchase, if that were possible.[6] *See, e.g., United States Liab. Ins Co. v. Haidinger-Hayes*, 1 Cal.3d 586, 595 (Cal. Spme. Ct. 1970)("Liability imposed upon agents for active participation in tortious acts of the principal have been mostly restricted to cases involving physical injury, not pecuniary harm, to third persons."), quoting Rest.2d Agency, §§ 352, 354, Appendix, Reporter's Notes, § 354, p. 600. For this separate and independent reason, CorCell's counterclaims should be dismissed in their entirety, pursuant to Fed. R. Civ. P. 12(b)(6).

To summarize, CorCell's counterclaims are not warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. Moreover, the jurisdictional allegations do not have evidentiary support, and CorCell has failed to specifically identify which jurisdictional allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Thus, CorCell's counterclaims warrant dismissal pursuant to Fed. R. Civ. P. 12(b)(1), (2), & (6). Lastly, given CorCell's egregiously misleading citation to the Delaware Order—knowingly taken out of context, despite its attorneys' intimate familiarity with the circumstances surrounding the Delaware Order and Judge Sleet's comments at the August 6, 2004 hearing in connection thereto, the burden must shift to CorCell to rebut the presumption that its counterclaims are being presented for improper purposes, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

## IV. CONCLUSION

For all of the above reasons, Nicholas Didier respectfully requests the Court to dismiss with prejudice CorCell's counterclaims against Mr. Didier in their entirety, and for what other relief the Court may deem just and proper.

---

[6] CorCell's failure to sufficiently plead causes of action against PharmaStem is set forth in greater detail in PharmaStem's Motion to Dismiss CorCell's Counterclaims, incorporated by reference as if fully set forth herein. (Docket #16 at 11-19.)

DATED: October 28, 2004

By: _____
Michael D. LiPuma, Atty. I.D. #74790
Law Office of Michael LiPuma
Two Penn Center, Suite 200
Philadelphia, PA 19102
Attorneys for Plaintiff
PharmaStem Therapeutics, Inc.

OF COUNSEL:
PAUL J. ANDRE, Bar No. 196585
LISA KOBIALKA, Bar No. 191404
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350